**FILED**

AUG – 7 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# In the District Court of the United States
## For the District of Columbia

§
**Robert A. McNeil,** 701 N. Hwy 281 §
**Plaintiff** Suite E #193 §
Marble Falls, Tx §
78654 §
**V.** (713) 806-5199 §

Case: 1:15-cv-01288
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 8/7/2015
Description: FOIA/ Privacy Act (I)

**Commissioner, Internal Revenue** → 1111 Constitution Avenue, NW, Washington, DC 20224
**& United States Attorney General,** → DOJ, 950 Pennsylvania Avenue, Washington, D.C. 20530
**Defendants** §

---

## ORIGINAL COMPLAINT, with AFFIDAVIT and EVIDENCE appended

---

**Preliminary Statement**

1. In cases involving those whom the Treasury Department's Internal Revenue Service labels "income tax non-filers", IRS uses the "Automated Substitute for Return" (ASFR) record-falsification scheme to circumvent
   a.) citizens' protected 4th, 5th and 13th Amendment rights,
   b.) IRS' apparent lack of authority to perform substitute *income tax* returns, and
   c.) restrictions written into the "Individual Master File" (IMF) software.

2. Employees of IRS enter false information in one part of the Defendant IRS' computer system to induce the appearance a substitute 1040A return was requested by a victim, and that one was supposedly executed by IRS, when neither event happens.

3. IRS attorneys and technicians of IRS' computer system of records know it is being abused to defraud individual victims and U.S. courts. Further, attorneys of the Defendant Attorney General knowingly use records falsified by the ASFR scheme, take deliberate steps to conceal it, and are involved in a conspiracy against rights by deliberately using falsified records as the foundation of civil and criminal cases against those who do not surrender their protected Fifth Amendment right by voluntarily filing a "1040" income tax return.

4. The scheme is renewed annually in cases involving those the government labels 'non-filers'. In such cases, IRS systematically falsifies the "Individual Master File" (IMF) record it maintains, concerning each victim, using the ASFR scheme.

5. Specifically, the IMF module/record of any so-called "non-filer" for each tax year is made to falsely reflect that IRS supposedly performed a "Substitute For Return" (SFR) on a specified "Return Received Date" at *the supposed request of the victim*, despite the facts **no such election was made, nor was any substitute for 1040 income tax return performed on any date claimed in the IMF record.**

**RECEIVED**

AUG 06 2015

Clerk, U.S. District and
Bankruptcy Courts

6.      Later, IRS conceals its database/software manipulations by creating false "self-authenticating" paper certifications for use in court by U. S. attorneys, who are imputed by law to know of Treasury's ASFR record falsification scheme.

7.      IRS Collections staff used documents created pursuant to the layered fraud scheme to damage Plaintiff.  Moreover, since Plaintiff will never waive his rights protected by the Fifth Amendment, and since IRS has falsified the IMF record it maintains concerning Plaintiff for each successive year in the same manner outlined below, it can reasonably be inferred IRS will continue circumventing Plaintiff's Fourth, Fifth and Thirteenth Amendment rights by resort to the scheme.

8.      The Department of Justice Tax Division, by and through Principal Deputy Assistant General for Policy and Planning Caroline Ciraolo, takes active steps to conceal, defend and prolong the unarguably criminal record falsification scheme.  For example, during the course of an appeal concerning the false return scheme (*Ellis v. Commissioner & Attorney General*, No. 15-5035, DC Cir.), she offered the Court of Appeals flatly incorrect and misleading Tax Court *hearsay* concerning the operation of IRS' Automated Substitute For Return program, when she stated: "In cases where no return is filed, the master file is opened by the entry SFR", despite the FACTS easily available to her from her access to the Commissioner that **no direct entries** can be made in the master file "batch entry" software, that no such entry opens a master file, and that the phrase "SFR 150" only appears in the Individual Master File software module of a so-called "non-filer" after certain manipulations identified below have been made between the Commissioner's related AIMS and IMF databases, without which manipulations the IMF software will prevent pretended "deficiency" amounts from being entered in to the targeted annual module. (Details, *infra*.)

9.      It should be noted, Plaintiff does not seek to enjoin any **lawful** assessment or collection activity of the government, absurd claims to the contrary by Tax Division attorneys under the Department of Justice's authority notwithstanding.

**Jurisdiction and Venue of the Court**

10.     Jurisdiction and venue of the Court is based on 5 USC §702, 28 USC §1331, and the Court's equitable power.

11.     Plaintiff Robert McNeil is a United States citizen.

**Extraordinary Circumstances, 2 Primary Goals of Suit**

12.     The acts of which complaint is made constitute unarguable violations of 18 USC §§4, 241 and 1001 as well as Plaintiff's due process rights.  He is the victim of government-sponsored criminal activity, i.e., the Defendants' creation and use of falsified records concerning him. His explicit allegations: that IRS falsified its records pursuant to the ASFR scheme to defraud Plaintiff, that IRS is currently falsifying its records pursuant to the ASFR scheme to justify attacking Plaintiff, that IRS will likely continue to use the scheme if not enjoined, (and that by

using the scheme IRS and the DoJ defraud every level of courts of the United States, (tax courts and others), presents extraordinary circumstances.

13.   No other avenue exists to accomplish the two primary goals of this suit: to (I.) compel the Commissioner to cease falsifying IRS internal records and external-facing certifications, and to (II.) compel IRS and the DoJ to cease using falsified IMF records to damage victims such as Plaintiff.  Resort to equitable remedy is appropriate and Plaintiff's only remedy.

**Judicial Notice Requested – Claim not Precluded**

14.   The **Court is respectfully requested to notice** its own records in 1:14-CV-471, *Ellis V. Commissioner, et al.,* wherein the plaintiff raised a core claim similar to that raised herein:

>   IRS manipulates and falsifies its internal and external records concerning so-called "non-filers" to reflect the Service supposedly performed a substitute 1040 income tax return at its' victims request on certain claimed dates showing a "0.00" amount due, when no such things occurs, (no request, no SFR); that such fraud is necessary to allow the IMF software to permit later entry of pretended "deficiencies" computed by IRS on "Income Tax Examination Change" forms, despite the fact no substitute 1040 return exists in such cases which could possibly be changed.

>   Importantly, however, The Honorable Judge Amy Berman Judge dismissed the case after creating allegations she attributed to plaintiff, which he did not make, and upon which she based dismissal, while ignoring those he DID make.  The **Court is also requested to notice** that in the ongoing appeal of that dismissal to the United States Court of Appeals for the D.C. Circuit, 15-5035, AAUSAG Ciraolo improperly created and substituted yet another (her own) version of that plaintiff's allegations, while also refusing to address his.[1]  Hence, since the factual allegations of IRS' record falsification scheme raised herein have NEVER been addressed and decided by any court, this case is NOT "claim precluded".

**Standing**

15.   The scheme to falsify IMF records (or IMF's successor system "Customer Account Data Engine", ("CADE 2") and certifications in regard to Plaintiff is an ongoing violation of both his protected right to due process of law and the Administrative Procedures Act, (APA).  IRS seized monies belonging to Plaintiff by using records falsified pursuant to the scheme of which complaint is made.

---

[1]   See "Brief for the Appellee" in 15-5035, filed 17 July 2015, Pg. 5, "Ellis' Complaint… Allegations", which are Ciraolo's recitation of tax court hearsay concerning IRS internal procedures, (the hearsay procured by fraud on tax courts is not only flatly wrong, it directly contradicts IRS actual procedures), **which she fraudulently and boldly attributes to the plaintiff *as his allegations*,** then suggests dismissal based thereon.  Should that appeal be wrongly decided by the Circuit on the basis of pretended, substitute "allegations" Judge Berman and the DoJ created, which contradict IRS ACTUAL procedures of which complaint was meticulously made, such outcome would not preclude determination of this case.

16.   However, it MUST be clearly noted, as mentioned above, Plaintiff does NOT seek to block ANY collection activity by any IRS/Treasury employee, whether one currently under way or one which may be executed at any time in the future.  **No judicial relief is requested from any collection or assessment activity authorized by Congress**.  He seeks ONLY to block the Treasury's record falsification scheme and any use of such records by the government, which was never, and can never be authorized by Congress.

17.   Individual Treasury/IRS employees are free to make any use of IRS' falsified records they wish commensurate with their personal liability, and Plaintiff is seeking no protection from this Court whatsoever from such activities.  Hence, this case does not violate provisions of the Anti-Injunction Act, (AIA).[2]

**Statement of Facts**

18.   IRS uses a scheme to bypass his exercise of the right secured to him by the Fifth Amendment, which protects him from being compelled to provide the Government evidence which might be used against him, such as a sworn "1040".  The scheme is annually repeated by IRS against him each year.  The Department of Justice is fully aware of and complicit in the scheme, uses tainted documentation produced by it, is actively concealing it to prolong it (as noted in ¶. 8 and 14, *supra*, ¶. 62, *infra*), and profits from it by securing unjust convictions.

19.   As a side note, it appears that neither Congress nor the Secretary has authorized the Commissioner to execute substitutes for "1040" **income** tax returns in cases involving "non-filers", fraudulent claims to the contrary by the Defendants notwithstanding.  **But, the issue of whether the Commissioner has authority to perform substitute income tax returns is not dispositive of the case, and is** utterly tangential.   The core of this case is simple: the Commissioner falsifies his internal and external records and deliberately uses same to bypass the exercise of constitutionally protected rights of victims such as Plaintiff, and justify extortion from his victims.  Hence, to justify the injunctive relief he seeks, Plaintiff does not have to prove WHY IRS falsified its computer records concerning him, or the mechanism HOW IRS falsified them; only THAT the Commissioner falsified records concerning him, used them to justify theft of Plaintiff's property, and will likely continue so doing unless enjoined.

20.   Although the details surrounding the scheme's commencement will be developed in discovery, it appears it commences with IRS' presumption, created in Treasury Regulation §301.6211-1(a), that in cases where "**no return** is made", that "the amount shown as the tax by the taxpayer upon the **return**" "shall be considered as zero".  That convoluted presumption exceeds the scope of 26 USC §6211 which makes no mention of instances "where no return is

---

[2] An appeal currently pending in the Circuit Court of Appeals for the District of Columbia Circuit, *Ellis v. Commissioner*, et al, 15-5035, the appellant attributed as error the dismissal of his case upon the Court's finding Congress supposedly precluded from court review by passage of the AIA the felony acts of which Plaintiff complains in this case, despite the obvious fact Congress has no power to immunize criminal conduct proscribed by Congress at 18 USC §1001, (such as IRS' institutionalized falsification of its internal/external records). Hence the AIA is of no arguable application to this case.

made". [3]  Discovery will prove all the various underlying presumptions/legal pretexts IRS uses to justify commencing cases against those it labels "non-filers".

21.     IRS' Individual Master File (IMF) [4] software system of records has stringent built-in safeguards to protect citizens.  Changes are made in the IMF databases only by using three digit coded transaction numbers assigned to each type of entry.  Every possible "transaction code" is described and documented in the "IRS Processing Codes and Information Manual", a.k.a. "Document 6209".  Various transactions can be used to open an annual module concerning a targeted victim.

22.     Whether IRS initiates it scheme by building on the unlawful presumptions of §301.6211 that a zero return (0.00) was filed by a victim, or uses other presumptions which discovery will reveal, IRS, in every case involving so-called "non-filers", utilizes the IMF adjunct database known as the "Audit Information Management System" (AIMS)[5] to memorialize in the IMF concerning any given year the pretended "facts" that a request by or agreement was made with a victim for IRS to execute a "1040A", and that a zero amount was shown due on the phantom return, thus bypassing the stringent IMF software safeguards.

23.     AIMS does not have the same restrictive protections as those built into the IMF software, and entries made in AIMS can cause changes in the IMF database.  The IRS record-falsification scheme uses those two features of AIMS to circumvent the restrictive program parameters of the IMF system.

24.     26 USC §6014 gives IRS authority to compute 1040A returns at the request of taxpayers.

---

[3] IRS possesses statutory authority to **amend/change** any and every return submitted, in cases when an incorrect entry is made on a submitted return by the filer.  However, when no 1040 is filed, the ASFR record-falsification program appears to use this regulation to begin the process of falsifying the IMF record, resulting in the appearance in the computer system that a return was filed which IRS is authorized by statute to amend.  This record falsification enables IRS to bypass the software protections built into the IMF system, (or successor systems such as "CADE 2"), which systems require either a return submitted by a filer, or a substitute created upon the request of a person, before allowing entry of alleged "deficiency amounts due" in the IMF system every tax year.

[4] "Individual Master File" or "IMF" records are kept by IRS concerning individuals and other entities.  One of the uses of the IMF is to direct the enforcement activities of the Commissioner's delegates, who take actions against persons pursuant to that record.  (See 1996 Internal Revenue Manual MT 3000-353, pg. 30(55)0-4 Section 2, "Concept of Individual Master File".)  Thus, the IMF must be **absolutely accurate**.

[5] IRS' AIMS database is an adjunct computer workspace related to the IMF software wherein "Examinations" staff creates/holds/memorializes working records concerning IMF accounts.  The AIMS database does not have the extensive protections written into the IMF software, which only allows "batch" entries, after numerous checks are run on each proposed "transaction". Each type of approved transaction has a unique "transaction number" assigned to it. The Commissioner's "AIMS Reference Guide" provides the proof of the precise transaction number ("424") and Push Code ("036") he uses to fraudulently cause the baseless term "SFR 150" to appear in a "non-filer's" IMF  module.

25.  In order to be able to later enter a supposed "deficiency amount due" in an IMF "module" each year for those whom IRS labels as "non-filers",[6] IRS improperly uses software procedures (likely those created to process §6014 requests by "taxpayers"), despite the fact no request is made to IRS by non-filers to compute an amount due.

26.  More specifically, particular entries made in the AIMS database each year result in falsifying the permanent IMF record of "non-filers" to reflect that the individual supposedly requested a 1040**A** return (which is the form IRS can execute upon a taxpayer's request pursuant to §6014) be executed by IRS, and that IRS supposedly performed a substitute return on a specified "return received date", despite the fact *no such request is made, nor was any substitute 1040 income tax return computed* on the date the term "SFR 150" was inserted via AIMS into the IMF module.

27.  The AIMS/IMF database interplay results in FIVE pieces of information entering the annual IMF "module" assigned to a victim such as Plaintiff: a.) the term "SFR 150",[7] b.) an "amount due" of "0.00" (memorializing the unsupported presumption created via Treasury Regulation §301.6211) c.) a "RET RCVD DT" (the certain pretended "return received date"), d.) a unique "document locator number", and e.) two certain "transaction code" numbers.

28.  Despite the fact no "substitute for return" ("SFR") had been prepared on the "return received date" given, each IMF module is falsified to reflect one existed.

29.  IRS used the AIMS database to falsify the IMF record concerning Plaintiff for almost every year since 2002.  IRS annually similarly falsifies the IMF records of all individuals exercising their Fifth Amendment right.  [Stopping **the criminal act itself** of falsifying in any manner, including the manner disclosed, any IRS database reasonably associated with Plaintiff is one of the two focal points of this suit.]

30.  Approximately two weeks after the date when an employee of IRS' Collections Division imports the orphan, baseless term "SFR 150" via AIMS into an IMF module which IRS maintains for all "non-filer" victims, Collections "transfers" the "case" to IRS' Examinations Division to further the ASFR record falsification scheme.

---

[6] Plaintiff has never claimed, and will never claim, to be a "non-filer", although he does claim to exercise his constitutionally-protected rights and will never voluntarily waive them.  Said differently, the DoJ and Service will have to use IRS' falsified records to back up their claim he is a "non-filer", since Plaintiff makes no such claim herein nor anywhere else.

[7] For the information of the Court, in IRS argot, a transaction numbered "150" in an IMF reflects the filing of a return by a person, but the phrase "SER 150" means IRS supposedly prepared a "substitute for return".  The IMF software, which has multiple built-in validation checks and was created with restrictions mirroring constitutional protections, requires that for any given year a return of some sort must first be completed.  This explains IRS' need to use the 1040A procedure to give the computer the idea a 150 return was completed even when one was not, i.e., utilizing the AIMS database to enter the baseless but critical code-term "SFR 150" into a targeted IMF module.  Only after the initial fraudulent AIMS/IMF transaction is made, will the software allow "additions to tax", or "deficiency" amounts as pretended "changes".

31.    Another IRS employee then performs IRS' **initial** deficiency analysis concerning alleged amounts due concerning any given year/module.

32.    The data is computed by the employee on a Form 4549, an "Income Tax Examination Changes" form, which is only to be used pursuant to 26 USC §6651 ("Additions to the tax") by IRS auditors to show the changes – "adjustments" to income made in cases involving employment, excise and partnership taxes.

33.    By using a "Changes" Form 4549, the employee was ostensibly "changing" something, despite the fact no previous return or assessment existed which could have been "changed".

34.    The only previous amount in the IMF which the employee could have been "changing" was the "0.00" "amount due" placeholder interpolated earlier therein by Collections using the AIMS database.

35.    The employee often appends a "6020(b) Certification[8] to the "Changes" Form 4549, wherein she states Treasury Delegation Order 182 authorizes them to perform "substitute returns", although she carefully refrains from swearing, stating or claiming anywhere she actually performed a substitute **1040 income** tax return.

36.    IRS exam function employees appear to unlawfully exceed their authority by extending the power granted them to perform/execute substitute employment, excise and partnership returns to their computation of substitute *income* tax returns, despite no election having been made by an income tax victim.  (It is not necessary to prove the authority of IRS to perform SFR 1040 income tax returns, since they don't perform any, but make their records appear they do. THAT fraud is ALL Plaintiff needs to allege and prove to succeed in this case, as he does in the attached Affidavit with Evidence appended thereto.)

37.    The unauthorized data computed on the Form 4549, (no SFR exists to "change"), is then memorialized in the annual IMF module assigned to victims such as Plaintiff by entrance of a transaction code "300", a.k.a. a "TC 300", plus other entries to record purported interest due and penalties due.

38.    A TC 300 is defined by IRS as a transaction that indicates an "Additional Tax or Deficiency Assessment" was performed.

39.    As noted above, restrictions built into the IMF software will prevent the entry of any claimed deficiency amounts due via a TC 300 transaction, unless a TC 150/SFR 150 is previously entered.

---

[8] A properly completed Form 13496, a.k.a. an "SFR 6020(b)" is apparently mandatory in cases against a person who supposedly failed to file a 1040 return.  In Tax Court cases, the DoJ attorney invariably begins her Pretrial Memorandum for the Court with the utterly false, baseless statement: "Petitioner X did not file a tax return for the taxable year 2005.  Respondent prepared a substitute for return on X's behalf per I.R.C. §6020(b)."   When tax court judges discover that no SFRs exist upon which their court MUST base jurisdiction in cases involving "non-filers", no more such cases will come before them.

40.    As also noted above (see Footnote 7) a transaction code "150" reflects the filing of a return; a transaction code "SFR 150" is supposed to reflect the filing of a substitute for return.

41.    No substitute 1040 income tax return exists at the time the term "SFR 150" is entered into the module IRS maintains concerning victims such as Plaintiff.

42.    The Form "4549 Changes", which Exams employees "adopt" as a so-called "substitute for return package" by appending thereto Forms 13496 ("6020(b)") and Form 866 (Explanation of Items), are completed and memorialized in the IMF record **many weeks** after the term "SFR 150" is fraudulently inserted via AIMS into the targeted module.

43.    Later, another IRS employee will create yet another fraudulent "Certification", (a "Form 4340"), which form (or similar) IRS provides to the DoJ to prevent cross-examination of IRS employees/experts concerning the ASFR scheme should litigation arise, thus facilitating fraudulent convictions. The certification claims it is an official transcript of the record contained in the IMF. But the certifier only claims the data provided was on file in IRS records, not that the data itself was ACCURATE.

44.    The Form 4340 Certification created by IRS for any IMF module/year would confuse and mislead any fact finder, since the Form falsely indicates multiple different dates as possibly when a substitute 1040 income tax return was performed. Specifically, the document is so ambiguous it can be read variously as certifying that a 1040 Substitute For Return deficiency assessment may have been performed on either 1.) the date when the baseless term "SFR 150" was interpolated via AIMS into the IMF module by the Collections Division, or 2.) on the date when the module was referred by Collections to Examinations, or 3.) on the date when the "Examination Change" deficiency data was entered into the IMF via the TC 300. But no Substitute 1040 Income Tax Return was performed on any date, let alone those shown in the Certification.

45.    Neither the Examinations employee who created the deficiency data, nor the date on which she unlawfully exceeded the authority granted her and computed her Form 4549 "changes", (the initial deficiency calculation performed regarding the module), are referenced in 4340 Certifications prepared for use to deceive United States judges.

46.    By using fraudulent "self-authenticating" 4340 Certifications, IRS and DoJ collaboratively prevent cross-examination of IRS experts regarding the underlying IMF fraud and imaginary SFR's, the unauthorized execution by IRS of substitute **income** tax returns, "changes" made to presumed but phantom "zero" returns, etc., all in violation of 18 USC §§4, 1001 and 241.

47.    The module/case is made to show it was then transferred by Examinations back to IRS Collections Division, which had previously initialized the AIMS/IMF ASFR database fraud. The ASFR record fraud scheme is now complete, opaque and unassailable by its intended victims, (Plaintiff and the courts), ready for Collections' use as the basis for issuing colorable, fraudulent, liens and levies, and ready for DoJ use should the IRS and DoJ find it opportune in either tax court or a criminal prosecution.

48.    In 2007, IRS Revenue Officer Roger Caris used falsified 4340 Certifications as the basis for issuing liens and a so-called levy to the company with which Plaintiff contracted.

49.    The company then converted to IRS use, without court order, property belonging to Plaintiff, pursuant to the fraudulent lien and levy issued by Mr. Caris.

50.    Plaintiff's business relationship with the company was forever changed from that moment forward.

51.    IRS continues to falsify its IMF records each successive year in the manner shown, and uses the falsified records by sending notices and threats via the United States mail.

52.    No IRS personnel has given any indication Treasury/IRS would cease using falsified IMF records to damage Plaintiff. Inference can be drawn Treasury/IRS will continue using those records to attack Plaintiff.

53.    **But it must be noticed that Plaintiff seeks NO relief whatsoever from this Court concerning the collection activities of any Treasury Dept. employee.** They are free to use falsified government records in any manner they think best commensurate with their personal liability.

54.    On March 11, 2014, Assistant Attorney General for the Tax Division Ms. Kathryn Keneally, and United States Attorney for the District of Columbia Mr. Robert C. Machen, Jr., with their subordinates, filed a brief in the Court of Appeals for the District of Columbia Circuit in regard to a then-pending appeal.  (Cause No. 13-5181.)

55.    In its Brief, the United States gave this Court the full benefit of its opinion concerning Treasury's ASFR IMF record-falsification scheme, but showed not a scintilla of outrage.

56.    The United States was aware of the IRS ASFR IMF record fraud scheme previous to the filing of Plaintiff's case.

57.    DoJ attorneys have committed multiple, deliberate acts to conceal the scheme, in violation of 18 USC §4, as shown below. Attorneys in the DoJ are participating in a conspiracy with attorneys in IRS against those exercising their right protected by the Fifth Amendment, in violation of 18 USC §241.[9]

58.    In a brief in Cause 13-5181 (*Ellis v. Commissioner*) in the Court of Appeals for the District of Columbia, the United States provided false and misleading information to that Court. **For example**, the Government falsely stated: "An IRS master file (IMF) is opened by the filing of a tax return." (Brief, pg. 5, 1.)  IRS knows IRS master files are also opened when no tax return of any sort exists.

59.    **For another example**, the United States deceitfully inferred that §6020(b)(1) provides authority to execute substitute *income* tax returns, (Brief, pg. 5, ¶. 1), but failed to provide the

---

[9] Those involved will tacitly invite this Court to ignore their scheme.

TDO explicitly delegating from the Secretary to the Commissioner authority to execute substitute *1040 income* tax returns.

60.   The United States, moreover, knows that, when prosecuting criminal cases, IRS has altered IMF modules for "non-filers" using inapposite, unauthorized AIMS/IMF database manipulations resulting in criminal falsification of those modules.

61.   **For another example**, the United States falsely claimed in 13-5181 that the Anti-Injunction Act "precludes any suit to enjoin *any* activity that is intended to or may culminate in the collection of taxes". (Brief, pg. 16, ¶2) (Emphasis added)[10] Congress had no power to exempt the criminal acts by IRS staff of which Plaintiff is complaining from review by courts, when passing the Anti-Injunction Act.

62.   In an appeal ongoing at the date of the filing of this case, (Circuit Court of Appeals, District of Columbia, *Ellis v. Commissioner & Attorney General*, No.15-5035), AAUSAG Ms. Caroline Ciraolo, leader of the DoJ's Tax Division, repeated the same disinformation her predecessor had filed in support of, and to prolong, the underlying IMF falsification scheme. For example, (as noted above in ¶¶ 8, 14 Ms. Ciraolo in her Brief on Appeal, Pg. 5, cited false and misleading Tax Court hearsay concerning IRS internal record-keeping procedures, (despite her direct access to the Commissioner for information concerning his internal processes). She fraudulently claimed to the Circuit Court: "[T]he master file is opened by the entry SFR, meaning Substitute for Return". Contrary to that false and duplicitous hearsay, the master file software will not allow direct entry of information, (it is a 'batch entry' system). Although multiple means may be used to open annual modules (but not by entry of the phrase SFR 150!), the IMF software will only allow entry into a module the phrase "SFR 150" after the manipulations detailed above, despite the fact no Substitute 1040 income tax return occurred on the dates claimed in the IMF and certificates created later based thereon.[11]

63.   The injunctions requested by Plaintiff in this case, if granted, will provide tremendous redress and relief from the ongoing violation of Plaintiff's rights.

64.   A ruling terminating the scheme would a.) clothe Plaintiff with standing, if it should ever become necessary (although it is **NOT** requested in this case) to eliminate fraudulent liens imposed in Texas pursuant to the scheme, and it would b.) justify to the world the enormous cost he has paid to end IRS' virtually inconceivable record-fraud scheme.

---

[10] No cite was provided by the government for that proposition, probably because those which should have been cited do not use the word "any" after the word enjoin.  It is beyond cavil that criminal acts cannot be committed to justify later assessment or collection activities.

[11] Such deliberate misrepresentations to the Circuit Court of Tax Court hearsay concerning IRS internal procedures, which hearsay was procured by IRS fraud on tax courts, and which misrepresentations are committed to conceal and prolong operation of the underlying IRS record falsification scheme, appears to constitute commission of misprision of felony, under the direct authority and with direct approval of Acting Assistant United States Attorney General Caroline Ciraolo.

65.   Ending the scheme would also relieve Plaintiff from IRS' ongoing threat to continue falsifying its records systems, and to continue using them, either with or without the complicit DoJ to damage him.

66.   Resolution of this case in Plaintiff's favor will have zero arguable impact on any Congressionally-authorized pre-assessment, assessment or collection activity of the IRS. Neither the criminal acts of falsifying federal records and using such records (in conjunction with the DoJ) to defraud United States Courts and damage victims are assessment or collection activities shielded by the Anti-Injunction Act.[12] In other words, correct resolution of this suit in Plaintiff's favor would not prevent IRS from performing every single substitute for return, assessment, and collection activities, authorized by law.

**Causes of Action**

**First Cause of Action**
Violation of 5 USC §702

67.   Plaintiff incorporates by reference the allegations in Paragraphs 1-66, above.

68.   The Administrative Procedure Act ("APA") mandates that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof". IRS maintenance of falsified records concerning Plaintiff has adversely affected him, and he is entitled to judicial review of that ongoing fraud, since he seeks only non-monetary relief.

69.   The Commissioner created and uses both an unlawful presumption that a zero return was filed by Plaintiff, and employs an "automated" record-falsification program to circumvent the exercise by him, a United States citizen, of his Fifth Amendment right. IRS deliberately creates falsified, 'self-authenticating" certifications for use by the DoJ in courts.

70.   IRS used the scheme to deprive Plaintiff of property in violation of his Fourth Amendment right in 2002, 2003, 2004, 2005, 2006, 2008, 2009, 2010 and 2011, has threatened by mailings sent to him via U.S. Mails it will continue using falsified records to damage him definitely into the future (facilitated by the complicit DoJ), as such violations have been its usual and customary response to Plaintiff's exercise of his protected Fifth Amendment right.  (But Plaintiff seeks no relief whatsoever from this Court concerning any ongoing or future collection activity by the Defendants.)

**Second Cause of Action**
Violation of Plaintiff's Fifth Amendment Procedural and Substantive Due Process Right

71.   Plaintiff incorporates by reference the allegations in Paragraphs 1-66, above.

---

[12] The policy behind the AIA is "to protect the government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement interference" from courts. Thus the Act shields only legitimate "assessment" and "collection" activities from judicial review, not felonies.

72.   IRS unlawfully circumvents exercise by Plaintiff of his Fifth Amendment right to not be compelled to provide evidence which might be used against him by the acts of (A.) falsifying records and certifications pursuant to the ASFR program, by (B.) using the falsified records as false evidence he owes a purported liability to the Treasury, by (C.) using falsified records to arrogate to IRS Plaintiff's property, and by (D.) colluding with the DoJ to create for presentation to United States courts falsified certificates to conceal underlying records IRS falsified concerning Plaintiff. Such acts violate Plaintiff's right to substantive and procedural due process of law.

73.   Further, no person…shall be deprived of life, liberty or property without due process of law. Procedural due process requires the right to know opposing evidence and the right to cross-examine adverse witnesses. Yet the Commissioner apparently created a fraudulent presumption, and absolutely falsifies and encodes his records concerning Plaintiff, then creates "self-authenticating certificates" to assist the DoJ to conceal the scheme while preventing Plaintiff from cross-examining IRS employees directly participating in the ASFR fraud. Such scheme violates Plaintiff's procedural due process right.

**PRAYER FOR RELIEF**[13]

Good cause having been shown, and pursuant to the accompanying Affidavit and evidence submitted herewith by Plaintiff, he respectfully requests the Court:

74.   Enjoin IRS from presuming, in any case involving 1040 income taxes, that a zero amount due was shown on an imaginary return pursuant to any regulation, including §301.6211, or making any other improper assumptions/presumptions concerning Plaintiff as justification for falsifying IRS internal records;

75.   Enjoin the Commissioner, his representatives, agents, employees, attorneys, those persons in active concert or participation with him, from directly or indirectly:

   a.   Falsifying/manipulating, in the future, **any computer system of records** such as the IMF, NMF, AIMS, BMF, CADE2, (for examples), which might be or become associated with Plaintiff, by using any procedure associated with requests to IRS to perform a substitute for return at the request of a victim, when no such election was made, which precise act the Commissioner's employees committed, resulting in damage to Plaintiff;

   b.   Falsifying/manipulating, in the future, **any computer system of records** to show IRS supposedly filed a substitute for return on a certain date, when no such substitute for return was actually prepared on that date, which precise act IRS committed, resulting in

---

[13] Please note Plaintiff has requested relief which **will** impact him, such as asking for amendment of the IMF record concerning him. But he is NOT asking to enjoin any lawful information-gathering, assessment or collection of taxes authorized by law. A U.S. District Court has inherent jurisdiction to enjoin the core crimes of which complaint is made, since the acts of which complaint is made not only damage individuals such as Plaintiff, but defraud United States courts. **Nothing can deprive this Court of its inherent power to stop a government scheme to subvert the judicial process.**

damage to Plaintiff;

c. Making or inferring in **any single or series of "certifications"** that might reasonably be, or become, associated with Plaintiff, the false claims that a Substitute For Return was supposedly prepared on a date when it was not, which act the Commissioner may perform to damage Plaintiff, as he has concerning others;

d. Creating "self-authenticating" certifications concerning records he maintains regarding Plaintiff to prevent IRS employees or expert witnesses from being cross-examined during tax court or district court cases regarding any system of IRS records, any individual income tax return, or any issue related thereto, which precise act the Commissioner commits routinely;

e. **Knowingly using any falsified system of records** which might be, or might reasonably become, associated with Plaintiff, **for any purpose whatsoever**, which precise act the Commissioner committed, resulting in damage to Plaintiff;

f. Creating or using a "dummy", blank pretended return to form the basis for later pretension of making "changes" thereto, to circumvent the Defendants' lack of authority to perform substitute 1040 income tax returns;

76. Enjoin the Attorney General of the United States, her representatives, agents, employees, attorneys, those persons in active concert or participation with her, from directly or indirectly:

a. Using any fraudulent "self-authenticating" IRS document to prevent the cross-examination of IRS witnesses concerning 1.) authority of IRS to take any action, 2.) authority of any individual IRS employee to take any action, or 3.) accuracy of internal records maintained by IRS concerning individuals and the individual income tax;

b. Instructing United States Attorneys to conceal exculpatory evidence in IRS files concerning so-called non-filers, by using "self-authenticating", but falsified, documents, provided by IRS;

c. Falsely stating or inferring in any document submitted, or to be submitted, to a United States Court, in cases involving "income tax non-filers", the false claim that the authority Congress delegated to the Secretary at §6020(b) extends beyond its limitation to employment, excise and partnership taxes;

d. Submitting in any case before a United States Court, whether judicial or administrative, hearsay concerning IRS internal procedures which was procured by fraud of the IRS on United States tax court judges, which hearsay contradicts IRS actual internal practices;

77. Enjoin any artifice, scheme, device, sham, presumption or procedure by IRS or DoJ as part of any conspiracy to bypass the rights of individuals in connection with income taxes, in violation of 28 USC §241;

77.   Grant Plaintiff such other relief, including court costs and cost of researching the scheme, as is just and equitable.

It is respectfully submitted,

*[signature: R.A. McNeil]*

/s/Robert A. McNeil
701 N. Hwy 281 Suite E #193
Marble Falls, Texas 78654

### Verification/Declaration

Comes now Robert A. McNeil, declaring under penalty of perjury, pursuant to 28 USC §1746, that the facts stated in the foregoing ORIGINAL COMPLAINT, in his Affidavit attached hereto, are absolutely true and correct, and that the documents appended to his Affidavit are true and correct copies of originals in his control, So HELP ME GOD.

*[signature: R.A. McNeil]*

/s/ Robert A. McNeil

*[signature: R.A. McNeil]*   *[signature: Notary]*   8-4-15

**Robert A. McNeil**          **Notary**          **Date**

**My Commission expires:** April 16, 2018

ASHLEY REUTEBUCH
MY COMMISSION EXPIRES
April 16, 2018

## CERTIFICATE of SERVICE

This is to certify that a copy of the foregoing ORIGINAL COMPLAINT, with Affidavit and Evidence Appended, was served via Certified United States Mail on <u>August 4, 2015</u> to:

United States Attorney General
Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Commissioner, IRS
Office of Procedure and Administration
1111 Constitution Ave. NW, Room 5503
Washington, D.C. 20224

U.S. Attorney for the District of Columbia
Civil Process Clerk
555 Fourth Street, NW
Washington, D.C. 20530

U.S. District Court for the District of Columbia
Office of the Clerk of the Court
333 Constitution Ave., NW
Washington, D.C. 20001


/s/ Robert A. McNeil

# AFFIDAVIT
## of
# ROBERT A. McNEIL
# IN SUPPORT
## of
# ORIGINAL COMPLAINT

Comes now Affiant, Robert A. McNeil, over the age of 21, of sound mind and with personal knowledge of the facts related herein, swearing under the pains and penalty of perjury that the following facts are true and correct to the best of my knowledge and belief:

- I am a forensic auditor/accountant with more than 40 years of experience examining the financial records of some of the world's largest corporations.

- I have expertise in identifying, investigating, documenting and presenting instances of fraud, and recommending policies and procedures to stop it.

- I have received evidence from IRS and determined that IRS manipulates their databases and documents to create "deficiencies" pretended to be owed in regard to 'non-filers' of the income tax, etc.

- I am prepared to present said evidence of record fraud to the Court in person and testify, as necessary.

- I believe the Fifth Amendment to the Constitution for the United States protects my right not to be compelled by the Government to provide evidence which can be used against me. A sworn 1040 income tax return is evidence.

- I will not voluntarily waive any right secured to me by the Constitution, including those protected by the Fifth Amendment.

- The Internal Revenue Service (IRS) maintains a so-called Individual Master File record (IMF) concerning me, which is annually re-falsified in the precise manner described below.

- **Each year separately** that I exercise my Fifth Amendment right, IRS circumvented that right in the manner shown below with respect to the year 2006.

- I know that IRS HAS authority, pursuant to 26 USC §6014, to execute income tax returns on behalf of taxpayers who 'elect' such assistance. The form associated with such election is a "1040A".

- On or about August 11, 2008, an employee of IRS' "Collections function" initiated the scheme by improperly using procedures created only for instances when a person elects for IRS to perform an income tax return (a "1040A") for that person. [See **Exhibit A "IMF MCC Transcript-Complete"** for 2006 tax year, which IRS Disclosure Officer Klaudia Villegas provided me on September 17, 2013, pursuant to my August 2, 2013 Freedom of Information Act Request, ("FOIA"). [See **Exhibit B, pg. 1, Item a, "Villegas Letter"**]

- Specifically, on July 23, 2008, the Collections employee made two initial entries in a database related to the IMF, known to the IRS as the Audit Information Management System ("AIMS"), one transaction coded with the number "424R", the other a certain "push code" ("036") [See **Exhibit C, pg. 2,** view of IMF transcript produced by Command Code "TXMODA"]. This two-step procedure, begun in the AIMS database, results in overriding the protective program parameters of the 2006 IMF "module"/record that IRS maintains concerning me, and thus modifying the 2006 module, which was made to show: (a.) the term "SFR 150" with a related date which shows August 11, 2008, (b.) a purported Return Received Date on the contradictory date of July 23, 2008, and (c.) a specified Document Locator Number ("DLN") 49210-888-00000-8. [See **Exhibit A, pg. 1**]

- I know that the term "SFR 150" means, in IRS parlance, that a "substitute for return" (i.e., a "substitute 1040 income tax return") was supposedly filed on one or both of the contradictory dates reflected in the IMF with respect to that transaction.

- The "Law Enforcement Manual III", Sec. 3(27)(65)4.3, shows that a DLN with a "09" or "10" in the fourth and fifth digits reflects that the subject of the IMF transaction related to that DLN is supposedly a "1040A".

- Contrary to the falsified IMF record, however, I never elected for IRS to execute a 1040A income tax return, nor was one ever performed on any date shown in the falsified IMF.

- As mentioned above, on or about August 2, 2013, I submitted a Freedom of Information Act ("FOIA") Request to IRS [See **Exhibit F, pg. 3, Sec. 2(g)**] requesting "a copy of any document that the IRS relied upon whereby I granted consent (either express, verbal or by default) for anyone in the IRS to file a 1040 or 1040A return on my behalf, or admit that/those document(s) does/do not exist".

- On Sept. 17th, 2013 IRS' Disclosure Officer Villegas responded, but failed to identify any source of authority to perform either a 1040 or 1040A income tax return on my behalf. Instead she responded:

  "For items f and g, of your request, you requested supporting documents authorizing the IRS to file a 1040 or 1040A on your behalf. I have provided a copy of the examination files for tax year 2003, 2004, 2005, 2006, 2008, 2009 and 2010. To the extent you are seeking records that establish the authority of the Internal Revenue Service to assess, enforce, and collect taxes, the Sixteenth Amendment to the Constitution authorized Congress to impose an income tax. Congress did so in Title 26 of the United States Code, commonly known as the Internal Revenue Code (IRC)." [See **Exhibit B, pg. 1, "Villegas Letter"**]

  Thus, IRS did not provide any document authorizing IRS to file a 1040 or 1040A on my behalf.

- Also on July 23, 2008, as shown in the IMF record concerning me for 2006, a Collections employee concealed the initial 424/Push Code 036 transactions by initiating a "425" transaction [See **Exhibit A, pg. 2** ], which IRS defines in its "Processing Codes and Information Manual", a.k.a. "Document 6209", as supposedly "reversing a 424".

- I know that, in truth, nothing was actually "reversed", since the effect on the 2006 IMF by the AIMS-generated 424/036 transaction remained in the IMF for 2006, even after the 425 transaction occurred, i.e., the term "SFR 150" remained, the pretended "Return Received Date" remained, and the DLN 49210-888-00000-8 remained, etc.  The 425 transaction merely removed from view in the IMF transcript the "424" transaction, to make it more difficult to determine the sequence of the IMF fraud.

- In my August 2, 2013 Freedom of Information Act ("FOIA") Request to IRS, I also requested copies of any document associated with Document Locator Number 49210-888-00000-8 [See **Exhibit F, pg. 4, 2.i)**].  In Disclosure Officer Villegas' September 17, 2013 letter, she responded:

    "For item i, you asked for a copy of the documents identified by several Document Locator Numbers (DLN), for the tax year 2002 through 2009.  A document is not created for every DLN shown on a transcript.  In situations where taxpayers fail to file required income tax returns a document locator number is assigned to create a module on the Master File.  The DLN you requested was generated by our Automated Substitute for Return program.  This DLN is computer generated and there is no paper document associated with it.  Therefore, there are no documents responsive to your request." [See **Exhibit B, pg. 2, "Villegas Letter"**]

- Thus, IRS conceded NO substitute 1040 or 1040A income tax return was filed by IRS on either July 23, 2008, the purported Return Received Date, or on August 11, 2008, the date the "SFR 150" was pretended to have been done, as shown in the falsified IMF record IRS maintains concerning me for 2006.  The phrase "SFR 150" was computer generated and no document was associated with it justifying its entrance into the 2006 module.

- On or about July 13, 2009, many months after the phrase "SFR 150" appeared in the module for 2006, an "Examinations function" employee, identified as "Alicia McGlown, Memphis, Tennessee Operations Manager, Examination – Employee ID 0361000000" [See **Exhibit D, pg. 7**], performed IRS' initial assessment, which she computed on an "Income Tax Examination Changes" Form 4549, [See **Exhibit D, pg. 6-7**].  (Employees of the Treasury Bureau IRS would later fraudulently claim the amount computed and supposedly due on the Form 4549 was a liability that I allegedly owed the United States Treasury).

- The same person who executed the Form 4549 "Changes" attached thereto a Form 13496 "6020(b)" Certification, [See **Exhibit D, pg. 5**] wherein she falsely inferred Treasury Delegation Order 182 provides her authority to perform substitute <u>1040 income tax</u> returns.

- On or about May 17, 2010, IRS data entry staff entered the falsified liability, claimed on the Form 4549 executed by the Examinations employee on the "Change" form, into the IMF assigned me, using an IMF transaction numbered "300 - Additional Tax or Deficiency Assessment by Examination Div. or Collection Div." [See **Exhibit A, pg. 2**].  According to the IRS' "Processing Codes and Information Manual", a.k.a. "Document 6209", a TC 300 transaction cannot be physically entered into an annual module unless a "150" transaction of some sort was previously entered into that module.  [Please note another anomaly: **Exhibit E, pg. 1** indicates that the TC 300 was input by Employee No. 0361623815 on April 23, 2010, which is twenty-five (25) days earlier than the May 17, 2010 date the input supposedly occurred, as shown in both the IMF [**Exhibit A, pg. 2**], and confirmed by the TXMODA version of the IMF. [**Exhibit C, pg. 2**]

- IRS made the 2006 module (falsified in a very closely similar manner to almost every other annual module in the record that IRS maintains concerning me) reflect that I supposedly requested a return be executed by IRS on multiple contradictory dates claimed by IRS when I made no such request, and that the Service supposedly computed an "SFR 150" on certain claimed dates, when no substitute 1040 income tax return was computed by any authorized Treasury Dept. employee on any date, at any time.

- Before I learned of the IMF fraud, the Treasury Bureau IRS employees used the falsified IMF records to justify collection activities against me, and justified their theft of my property based on the fraudulent IMF records.

- Using the fraudulent IMF records, the Service damaged me financially by filing a fraudulent Notice of Federal Tax Lien (Serial Number 960767813) in the amount of $57,362.45, with the County Clerk, Harris County, Texas on September 24, 2013.  [See **Exhibit G, pg. 2** ]  Said notice states "...there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue."  [See **Exhibit G, pg. 4** ]

- On or about October 1, 2013, I went to the Harris County Clerk's office and requested a copy of the Federal Tax Lien purportedly filed in the public record.  The Clerk searched the public record and was unable to produce the Federal Tax Lien.  The only document filed in the public record was the **Notice** of Federal Tax Lien (Serial Number 960767813, emphasis added).  I requested and received a Certified Copy of the Notice of Federal Tax Lien, bearing the County Record Number 20130489386, filed on September 24, 2013.  [See **Exhibit H, pg. 1**]

- On or about October 8, 2013, and perplexed by the fact that no actual Federal Tax Lien could be found in the public record in Harris County, I sent a letter to the Texas Secretary of State requesting "a search of the public records for all documents related to a Federal Tax Lien filed against me by the Department of the Treasury – Internal Revenue Service." [See **Exhibit I, pg. 3** ]

- On or about October 11, 2013, I received a response from the office of John Steen, Texas Secretary of State.  Said response contained the results of the "search of the public records for all documents related to a Federal Tax Lien filed against me by the Department of the Treasury – Internal Revenue Service" and no Federal Tax Lien against me was found.  The Secretary certified that conclusion in **Exhibit J, pg. 3**.

- The Government Accountability Office (GAO), the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people.  GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions.  GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability.

- I am aware that the Government Accountability Office (GAO) has determined, in audits of multiple years, and, in particular, the audit of fiscal years 2007 and 2006, the following:

  > "IRS did not, in GAO's opinion, maintain effective internal controls over financial reporting (including safeguarding of assets) or compliance with laws and regulations, and thus did not provide reasonable assurance that losses, misstatements, and noncompliance with laws and regulations material in relation to the financial statements would be prevented or detected on a timely basis". [See **Exhibit K, pg. 2**]

- In Appendix I of the audit report, entitled "Material Weaknesses, Significant Deficiency, and Compliance Issues", GAO states:

  "During our audits of the Internal Revenue Service's (IRS) fiscal years 2007 and 2006 financial statements, we continued to identify four material weaknesses in internal controls. These material weaknesses have given rise to significant management challenges that have (1) impaired management's ability to prepare financial statements and other financial information without extensive compensating procedures, (2) limited the availability of reliable information to assist management in effectively managing operations on an ongoing basis, (3) reduced IRS's effectiveness in enforcing the Internal Revenue Code, (4) resulted in errors in taxpayer accounts, (5) increased taxpayer burden, and (6) reduced assurance that data processed by IRS's information systems are reliable and appropriately protected. The issues that we have identified and discuss in this report relate to IRS's controls over (1) financial reporting, (2) unpaid tax assessments, (3) tax revenue and refunds, and (4) information security." [See **Exhibit K, pg. 3**]

- In Appendix I "Unpaid Tax Assessments", GAO wrote:

  "During fiscal year 2007, we continued to find serious internal control issues that affected IRS's management of unpaid tax assessments. Specifically, we continued to find (1) IRS lacked a subsidiary ledger for unpaid tax assessments that would allow it to produce accurate, useful, and timely information with which to manage and report externally, and (2) errors and delays in recording taxpayer information, payments, and other activities." [See **Exhibit K, pg. 4**]

- In Appendix I "Unpaid Tax Assessments", footnote 6 states:

  "Unpaid tax assessments consist of (1) federal taxes receivable, which are taxes due from taxpayers for which IRS can support the existence of a receivable through taxpayer agreement or a favorable court ruling; (2) compliance assessments where neither the taxpayer nor the court has affirmed that the amounts are owed; and (3) write-offs, which represent unpaid tax assessments for which IRS does not expect further collections because of factors such as the taxpayer's death, bankruptcy, or insolvency." [See **Exhibit K, pg. 4**]

- Further, in Appendix I "Unpaid Tax Assessments", footnote 7 states"

  "IRS's master files contain detailed records of taxpayer accounts. However, the master files do not contain all the details necessary to properly classify or estimate collectibility for unpaid tax assessment accounts." [See **Exhibit K, pg. 4**]

- Continuing in Appendix I "Unpaid Tax Assessments", GAO writes:

    "Even though CDDB is capable of analyzing master file data weekly to produce tax debt information classified into the various financial reporting categories (taxes receivable, compliance assessments, and write-offs), this information contains material inaccuracies."

    "IRS's management of unpaid tax assessments also continued to be hindered by inaccurate tax records.  We continued to find errors and omissions in taxpayer records resulting from IRS's failure to record information accurately and timely.  Such errors directly affect the          accuracy of the classified tax debt information produced by CDDB.  Additionally, such errors in IRS records can cause frustration to taxpayers who either do not owe the debt or owe significantly lower amounts." [See **Exhibit K, pg. 5**]

- Continuing further in Appendix I "Unpaid Tax Assessments", GAO writes:

    "Furthermore, such processing errors and delays contribute to IRS's inability to timely release federal tax liens against taxpayers once taxpayers have fully satisfied or are otherwise relieved of their tax liability."  "…..This, in turn, causes undue hardship and burden to taxpayers who are attempting to sell property or apply for commercial credit." [See **Exhibit K, pg. 7**]

- Finally, in Appendix I "Unpaid Tax Assessments", GAO says:

    "Also, in order to ensure accurate financial reporting and to minimize undue burden on taxpayers, IRS faces a continuing challenge to address the factors that cause inaccuracies in taxpayer account records and to maintain the integrity of the account information going forward." [See **Exhibit K, pg. 8**]

- In Appendix I "Information Security", GAO states:

    "To effectively fulfill its tax processing responsibility, IRS relies extensively on computerized systems to support its financial and mission-related operations.  Effective information system controls are essential to ensuring that taxpayer and financial information is adequately protected from inadvertent or deliberate misuse, fraudulent use, improper disclosure, or destruction.  Ineffective system controls can impair the accuracy, completeness, and timeliness of information used by management and, in the absence of effective compensating procedures, increase the potential for undetected material misstatements in the agency's financial statements."

"Significant weaknesses in information security controls continue to threaten the confidentiality, integrity, and availability of IRS's financial processing systems and information. In fiscal year 2007, we identified further weaknesses in controls for protecting access to systems and information, as well as other information security controls that affect key financial systems—particularly IFS and IRACS. For example, sensitive information, including user IDs, passwords, and software code for mission-critical applications, was accessible on an internal Web site to anyone who could connect to IRS's internal network—without having to log in to the network. The information gained through this access could be used to alter data flowing to and from IFS. In addition, configuration flaws in the mainframe allowed users unrestricted access to all programs and data on the mainframe, including IRACS. Because this access was not controlled by the security system, no security violation logs would be created, reducing IRS's ability to detect unauthorized access. Weaknesses also existed in other areas, such as protecting against unauthorized physical access to sensitive computer resources and patching servers to protect against known vulnerabilities."

"IRS has made limited progress in resolving previously reported security weaknesses in the controls for its financial and tax processing systems and information." [See **Exhibit K, pgs. 9-10**]

- In Appendix I "Significant Deficiency", GAO writes:

  "In addition to the material weaknesses previously discussed, we identified a significant deficiency concerning weaknesses in IRS's internal controls over hard-copy tax receipts and taxpayer information." [See **Exhibit K, pg. 11**]

- In Appendix I "Compliance Issues", GAO states:

  "Our work on compliance with selected provisions of laws and regulations disclosed one instance of noncompliance that is reportable under U.S. generally accepted government auditing standards and OMB guidance. This instance relates to the release of federal tax liens against taxpayers' property. We also found that IRS's financial management systems do not substantially comply with the requirements of FFMIA." [See **Exhibit K, pg. 12**]

- In Appendix I "Release of Federal Tax Liens", GAO writes:

  "The Internal Revenue Code grants IRS the power to file a lien against the property of any taxpayer who neglects or refuses to pay all assessed federal taxes. The lien becomes effective when it is filed with a designated office, such as a courthouse in the county where the taxpayer's property is located. The lien serves to protect the

interest of the federal government and as a public notice to current and potential creditors of the government's interest in the taxpayer's property. For example, federal tax liens are disclosed in credit reports of individuals." [See **Exhibit K, pg. 13**]

- Please refer to my earlier findings on Page 9 of this document wherein I discovered that, in my case, no Federal Tax Lien could be located in the public records of Harris County or the State of Texas, but does show up in my credit report, significantly lowering my credit score and damaging my ability to obtain credit cards and loans.

- In Appendix I "Financial Management Systems' Noncompliance With FFMIA", GAO says:

"In fiscal year 2007, we continued to find that IRS's financial management systems did not substantially comply with the requirements of FFMIA. Specifically, IRS's systems did not substantially comply with FFMSR, federal accounting standards (U.S. generally accepted accounting principles), and the SGL at the transaction level. We found that IRS cannot rely solely on information from its general ledger to prepare its financial statements because the reported balance for taxes receivable, which accounted for over 83 percent of the assets reported by IRS on its balance sheet as of September 30, 2007, is the product of a complex statistical estimation process and is not supported by transaction detail or entered into IRACS. In addition, IRS (1) does not have an adequate audit trail from IRACS back to detailed records and transaction source documents for any of its material tax-related balances—tax revenues, tax refunds, and taxes receivable—and (2) cannot produce managerial cost information consistent with Statement of Federal Financial Accounting Standards No 4, *Managerial Cost Accounting Standards*.".…."IRS continues to rely on obsolete systems to process tax revenues, tax refunds, and unpaid tax assessments, including taxes receivable."

"Since IRS's systems do not substantially comply with FFMSR, U.S. generally accepted accounting principles, and the SGL, they also do not comply with OMB Circular No. A-127, *Financial Management Systems* (revised Dec. 1, 2004). In its Federal Managers' Financial Integrity Act of 1982 assurance statement to Treasury, IRS reported that its financial management systems did not substantially comply with the requirements of FFMIA in fiscal year 2007." [See **Exhibit K, pgs. 14-15**]

- Incredulously, in a letter to David M. Walker, Comptroller General, U.S. Government Accountability Office in Washington, D.C., dated November 5, 2007, Richard Spires, Deputy Commissioner, Department of the Treasury, Internal Revenue Service, wrote:

> "Thank you for the opportunity to comment on the draft report titled, *Financial Audit: IRS's Fiscal Years 2007 and 2006 Financial Statements*. We are pleased that the Internal Revenue Service (IRS) received an unqualified opinion on the combined financial statements for the eighth consecutive year. The unqualified opinion demonstrates that the IRS accurately accounts for approximately $2.7 trillion in tax revenue receipts, $292 billion in tax refunds, and $11 billion in IRS appropriated funds."

> "While challenges remain, the IRS has established its ability to consistently produce accurate and reliable financial statements." [See **Exhibit K, pgs. 16-17**]

- Under the IRS' well-documented record fraud scheme, the Service has stolen more than $9,000.00 of my property, and is continuing to use its record fraud scheme to harass and intimidate me with letters sent from multiple offices around the country, threatening to steal hundreds of thousands of dollars more. IRS also continues to file fraudulent Notice of Federal Tax Liens in the public record.

Affiant swears/affirms that the information presented in this affidavit is true and correct to the very best of his knowledge, and that the Exhibits are true and correct copies of original documents in Affiant's possession, so help me God.

Further Affiant sayeth naught.


Robert A. McNeil

STATE OF TEXAS
COUNTY OF BURNET

I, the undersigned Notary Public, do hereby affirm that Robert A. McNeil personally appeared before me on the 4ᵗʰ day of August, 2015, and signed the above Affidavit as his free and voluntary act and deed.



Notary Public

ASHLEY REUTEBUCH
MY COMMISSION EXPIRES
April 16, 2018

# Exhibit A

000038

PAGE NO-0017   TAX PERIOD 30 200512*CONTINUED

*IMF MCC TRANSCRIPT-COMPLETE*

EMP NO 79-316-52792
F13219-0009

ACCOUNT NO 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
NAME CONT- MCNE

08-07-2013
CYCLE-20133105
************************************************************************



* TAX PERIOD 30     200612 *           REASON CD-          MOD EXT CYC-201331

FS-1  TFRP-  CRINV-  LIEN-                    49247-517-00002-0   CAF-   FZ>T   -
TDA COPYS-9360                               TDI COPYS-
        INT TOLERANCE-  MATH INCREASE-   HISTORICAL DO-76 BWNC-   BWI-
MF MOD BAL-           57,362.45
ACCRUED INTEREST-      6,526.12  08192013         CSED-05172020
ACCRUED PENALTY-           0.00  08192013         RSED-04152010
FMS-3IA CD-0                                      ARDI-0              ASED-00000000
2% DT OFF IND-0

SFR  150 08112008                  0.00   05  200831
                                          49210-888-00000-8   CD-        SRC-0
RET RCVD DT-07232008               PREPARE IND-0  PREPARE TIN-
                                          TAX PER T/P-                    0.00
                                                    F/C-  AGI-       94,201.00
                                   FOREIGN-              FARM-  MF P-
                                   XRF-                   AEIC-          0.00
                                   NAI-          EXMPT-01 NRGY-          0.00
                                   LTEX-            TAXABLE INC-    85,751.00
                                   PENALTY SUPP-1000    SET-       14,322.00
                                             TOTAL WAGES-               0.00
*************************CONTINUED ON NEXT PAGE*************************

000039

PAGE NO-0018   TAX PERIOD 30 200612*CONTINUED

*IMF MCC TRANSCRIPT-COMPLETE*                EMP NO 79-316-52792
                                                   F13219-0009
ACCOUNT NO 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              08-07-2013
NAME CONT- MCNE                     CYCLE-20133105
*******************************************************************

```
                        MDP-        TOTAL INC TX-      0.00
                              EST TAX BASE-            0.00
                                    PR YR BASE-        0.00
                        SHORT YR CD-      ES FORGIVENESS %-  0
                        USVI-0
                        1ST SE-       93,607.00
                        2ND SE-           0.00
                        ACCT TYPE-
                        EFT-0
                        F8615-  UNAPPLD CR ELECT-
                                ES TAX PAYMENT-         0.00
                                   DIR DEP REJ RSN CD-00
                        PUTI-        0    SUTI-           0
                        PMEI-   93,607    SMEI-           0
                        PMTI-        0    SMTI-           0
```

```
 140 12032007            0.00   20075008 49249-337-00000-7
                                PRC-

 595 05122008---------------   20082108 49249-533-00731-8
                                COLCLOS-066              XREF-

 425 07232008---------------   20083108 49277-205-20000-8
                                SOURCE-25  ORG-5065  PROJ-277  RET REQ-0
                                PBC-297

 570 08112008---------------   20083108 49210-888-00000-8
                                COLCLOS-         CYCLES-

 420 07312008---------------   20083208 49277-213-00000-8
                                AIMS SC-25 PBC-297 SBC-00000 EGC-5065

 971 02042009---------------   20090708 49277-437-84544-9
                                XREF-                   971 CD-404
                                X-MFT-00 MEMO-              FTD ALRT-0

 170 05172010        1,546.13   20101808 49247-517-00002-0
                                PRC-     EST PNLTY WAIVED-        0.00
                                CSED-05172020

 160 05172010        7,350.98   20101808 49247-517-00002-0
                                PRC-

 300 05172010       32,671.00   20101808 49247-517-00002-0
```
****************************CONTINUED ON NEXT PAGE***********************

```
000040

PAGE NO-0019   TAX PERIOD 30 200612*CONTINUED

          *IMF MCC TRANSCRIPT-COMPLETE*          EMP NO 79-316-52792
                                                        F13219-0009
 ACCOUNT NO 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            08-07-2013
 NAME CONT- MCNE                   CYCLE-20133105
*****************************************************************************
                                  HC  DC10 870D      ASED05102013
                                                          PC9 AO
                                  CLAIM REJECT DT-
                                  ABSTRACT-878            93,607.00-
                                  ABSTRACT-895            93,607.00-
                                  ABSTRACT-889            14,322.00-
                                  ABSTRACT-888            94,201.00-
                                  ABSTRACT-886            85,751.00-
                                  CSED-05172020

  421 05172010---------------     20101808 49247-517-00002-0 X
                                  DISP CD-   SOURCE-

  336 05172010          7,626.60  20101808 49247-517-00002-0
                                  REFERENCE AMT-

  276 05172010          6,207.49  20101808 49247-517-00002-0
                                  PRC-

  971 05172010---------------     20101808 49277-517-00002-0
                                  XREF-                  971 CD-804
                                  X-MFT-00 MEMO-             FTD ALRT-0

  971 06122010---------------     20102508 63277-565-08911-0
                                  XREF-                  971 CD-611
                                  X-MFT-00 MEMO-             FTD ALRT-0

  971 07132010---------------     20102908 49277-595-54892-0
                                  XREF-                  971 CD-407
                                  X-MFT-00 MEMO-             FTD ALRT-0

  971 08092010---------------     20103108 28277-001-99999-0
                                  XREF-                  971 CD-060
                                  X-MFT-00 MEMO-             FTD ALRT-0

  971 02142011---------------     20110508 49277-999-99999-1
                                  XREF-                  971 CD-262
                                  X-MFT-00 MEMO-             FTD ALRT-0

  971 05092011---------------     20111708 49277-517-00002-0
                                  XREF-                  971 CD-804
                                  X-MFT-00 MEMO-             FTD ALRT-0

  276 05092011          1,960.25  20111708 49247-517-00002-0
                                  PRC-

  972 10102011---------------     20114008 28277-001-99999-1
********************CONTINUED ON NEXT PAGE********************
```

# Exhibit A

## pg. 4

000041

PAGE NO-0020   TAX PERIOD 30 200612*CONTINUED

                        *IMF MCC TRANSCRIPT-COMPLETE*          EMP NO 79-316-52792
                                                              F13219-0009
  ACCOUNT NO 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              08-07-2013
  NAME CONT- MCNE                     CYCLE-20133105
*******************************************************************************
                              XREF-                     971 CD-060
                              X-MFT-00 MEMO-             FTD ALRT-0

     971 11072011---------------    20114408 28277-001-99999-1
                              XREF-                     971 CD-060
                              X-MFT-00 MEMO-             FTD ALRT-0

     971 05072012---------------    20121705 49277-517-00002-0
                              XREF-                     971 CD-804
                              X-MFT-00 MEMO-             FTD ALRT-0

MF STAT-02 12032007     NOTICE AO-25    200750
MF STAT-03 12242007 6   NOTICE AO-25    200750
MF STAT-06 05122008            0.00     200821
MF STAT-21 05172010        55,402.20    201018
MF STAT-58 06212010        55,402.20    201023
MF STAT-21 05092011        55,402.20    201117
MF STAT-24 07262010        55,402.20    201028
MF STAT-22 09122011        57,362.45    201135
MF STAT-21 05072012        57,362.45    201217
MF STAT-24 09262011        57,362.45    201137
MF STAT-22 02252013        57,362.45    201306
*****************************

# Exhibit B

**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, DC 20224

**Exhibit B**

pg. 1

PRIVACY, GOVERNMENTAL
LIAISON AND DISCLOSURE

September 17, 2013

Robert McNeil
1302 Waugh Dr.  #498
Houston, TX 77019-3908

Dear Robert McNeil:

I am responding to your Freedom of Information Act (FOIA) request dated August 2, 2013 that we received on August 6, 2013.

You asked for various documents pertaining to you for tax years 2000 through 2012.

For item a, I have provided your Individual Master File (IMF) Complete transcripts.

For Item b, I have researched our records and found no records pertaining to Non Master File.  Therefore, there are no documents responsive to this portion of your request.

For item c, I have provided TXMODA for and TXMODN for tax years 2002, 2003, 2004, 2005, 2006, 2008, 2009, 2010 and 2011.  I have provided IMFOLT in lieu of TXMOD for tax years 2000, 2001 and 2007.

For item d, you asked for Business Master File for EIN 46-0827522.  Tax records are confidential and may not be disclosed unless specifically authorized by law.  You must provide the written consent of an individual authorized to act on behalf of the above EIN number before we can consider releasing the records you requested.

For item e, I have researched our records and found no records.  Therefore, there are no documents responsive to this portion of your request.

For items f and g of your request, you requested supporting documents authorizing the IRS to file a 1040 or 1040A on your behalf.  I have provided a copy of the examination files for tax year 2003, 2004, 2005, 2006, 2008, 2009 and 2010.  To the extent you are seeking records that establish the authority of the Internal Revenue Service to assess, enforce, and collect taxes, the Sixteenth Amendment to the Constitution authorized Congress to impose an income tax.  Congress did so in Title 26 of the United States Code, commonly known as the Internal Revenue Code (IRC).  The IRC may contain

**Exhibit B**

**pg. 2**

information responsive to portions of your request.  It is available at many bookstores, public libraries and on the Internet at www.irs.gov.

For item h, please visit our website at www.irs.gov  for additional information.

For item i, you asked for a copy of the documents identified by several Document Locator Numbers (DLN), for the tax year 2002 through 2009.  A document is not created for every DLN shown on a transcript.  In situations where taxpayers fail to file required income tax returns a document locator number is assigned to create a module on the Master File.  The DLN you requested was generated by our Automated Substitute for Return program.  This DLN is computer generated and there is no paper document associated with it.  Therefore, there are no documents responsive to your request.

Of the 362 pages located in response to your request, I am enclosing 359 pages.  I am withholding 16 pages in part and three pages in full for the following reasons:

- The withheld portions are the tax information of other taxpayers.  FOIA exemption (b)(3) requires us to withhold information that is specifically exempted from disclosure by another law.  The law supporting this exemption is Internal Revenue Code section 6103(a).

- FOIA exemption (b)(7)(C) exempts from disclosure personal information in law enforcement records that if released, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

- I deleted the Discriminant Information Function (DIF) score from the enclosed records.  Release of the DIF score would seriously impair IRS assessment, collection, and enforcement proceedings.  FOIA exemption (b)(3), supported by Internal Revenue Code section 6103 (b)(2) and (e)(7) exempts this information from release.  Disclosure of this information would also reveal law enforcement techniques, procedures and guidelines protected by FOIA exemption (b)(7)(E).

The redacted portions of each page are marked by the applicable FOIA exemptions.  This constitutes a partial denial of your request.  I have enclosed Notice 393 explaining your appeal rights.

We are providing your documents in electronic format.  The enclosed CD contains your documents and is encrypted.  The password to open the files is being mailed separately.  At this time there is no charge for the enclosed records.  If you determine you need me to provide a printed copy of the documents, please call Specialist, Nikki Konstantinidis, at the phone number shown below.  You will be charged $.20 per page after an allowance of 100 pages at no charge for printed documents.

**Exhibit B**

**pg. 3**

If you have any questions please call Disclosure Specialist, Nikki Konstantinidis, ID # 95-00358, at 213-576-3451 or write to: Internal Revenue Service, Disclosure Scanning Operation – Stop 93A, PO Box 621506, Atlanta, GA 30362.  Please refer to case number F13219-0009.

Sincerely,

 Klaudia Villegas
Disclosure Manager
Disclosure Office 13

Enclosure
  Responsive Records
  Notice 393

**Exhibit B**

## Information on an IRS Determination to Withhold Records Exempt From The Freedom of Information Act – 5 U.S.C. 552

**pg. 4**

### Appeal Rights

You may file an appeal with the Internal Revenue Service (IRS) within 35 days after we (1) deny you access to a record in whole or in part; (2) have made an adverse determination as to your category as a requester; (3) deny your request for a fee waiver or reduction; or (4) have advised you that no records responsive to your request exist. You may file an appeal within 10 days when a request for expedited processing has been denied.

Your appeal **must** be in writing, must be signed by you, and must contain:

> Your name and address,
> Description of the requested records,
> Date of the request (and a copy, if possible),
> Identity of the office and contact on the response letter, and
> Date of the letter denying the request (and a copy, if possible)

Mail your appeal to:    **IRS Appeals**
Attention: FOIA Appeals
M/Stop 55202
5045 E. Butler Ave.
Fresno, California  93727-5136

### Judicial Review

If we deny your appeal, or do not address an issue raised in your appeal within 20 days (excluding Saturdays, Sundays, or legal public holidays) after the date we receive your appeal, you may file a complaint in United States District Court in the district in which (1) you reside; (2) your principal place of business is located; (3) the records are located; or (4) the District of Columbia. A complaint may be filed within 10 days (excluding Saturdays, Sundays, or legal public holidays) after the date we receive your appeal if your appeal is from an adverse determination of a request for expedited processing. If you choose to file suit before receipt of a final determination by the Appeals office, the administrative appeals process may cease.

The rule for effecting service of judicial process upon the Internal Revenue Service is set forth in Federal Rule of Civil Procedure 4(i). In addition to service upon the United States, as set forth in Rule 4(i)(1), service must be made upon the Internal Revenue Service by registered or certified mail as set forth in Rule 4(i)(2)(A).

The address of the Internal Revenue Service is: Internal Revenue Service, Attention CC:PA, 1111 Constitution Avenue, N.W., Washington, D.C. 20224.

### Exemptions

The Freedom of Information Act, 5 U.S.C. 552, does not apply to matters that are:

(b)(1) • specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified under such executive order,

(b)(2) • related solely to the internal personnel rules and practices of an agency,

(b)(3) • specifically exempted from disclosure by statute (other than section 552b of this title), provided that the statute:

(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or

(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

**Note:** Internal Revenue Code sections 6103 and 6105 are statutes which qualify for exemption 3 treatment. Section 6103 protects the confidentiality of tax returns and information pertaining to a taxpayer collected by the IRS. Section 6105 protects information obtained from a foreign country under a tax treaty.

**Exhibit B**

**pg. 5**

(b)(4) • trade secrets and commercial or financial information obtained from a person and privileged or confidential,

(b)(5) • inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency,

(b)(6) • personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy,

(b)(7) • records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information:

    (A) could reasonably be expected to interfere with enforcement proceedings,

    (B) would deprive a person of a right to a fair trial or an impartial adjudication,

    (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,

    (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source,

    (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or

    (F) could reasonably be expected to endanger the life or physical safety of any individual.

(b)(8) • contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions, or

(b)(9) • geological and geophysical information and data, including maps, concerning wells.

**Exhibit B**

**pg. 6**

Robert McNeil
1302 Waugh Dr. # 498
Houston, TX 77019 - 3908

Internal Revenue Service
Disclosure Scanning Operation
Stop 93A
Post Office Box 621506
Atlanta, GA 30362-3006

Official Business
Penalty for Private Use, $300

**Exhibit B**

pg. 7



neopost
09/17/2013
US POSTAGE $01.52
ZIP 30012
041L12100079

Robert Allen McNeil
1302 Waugh Dr. #498
Houston, TX 77019-3908

Internal Revenue Service
Disclosure Scanning Operation
Stop 93A
Post Office Box 621506
Atlanta, GA 30362-3006

# Exhibit C



Employee #7931652792 Page 005 of 005 PAGE   001


TXMODA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   MFT>30   TX-PRD>200612   PLN-NUM>    NM-CTRL>MCNE
49247-517-00002-0<DLN                            BOD-CD>SB CLIENT-CD>V
                                 MF-XTRCT-CYC>20133105 SC-REASON-CD>6T
SC-STS>22  MOD-BAL>            57,362.45  CYC>201306
MF-STS>22  MOD-BAL>            57,362.45  CYC>20130605 TODAYS-DT>08/07/2013
                 LAST-NOTICE>DAS  ARDI-CD>1   PRIMARY-LOC>7625         ACS>3
-----------------------------                CL-LOC>25              PDC-IND>00
ASED>         FRZ>T    -    |          AIMS-CD>1 CL-ASGMT>25000602
CSED>05172020 INTL>        |     FMS-CD>3           MOD-YLD-SCR>0020755
RSED>04152010              |                    TDI-CYC>201322
-----------------------------
CS-CTRL-INFO>NO CASE CONTROLS
------------------------POSTED RETURN INFORMATION--------------------------
RET-RCVD-DT>07232008     MO-DELQ>05
FS>1   NUM-EXEMPT>01
AGI>     94,201.00
TXI>     85,751.00   PRIM-SE-INCM>      93,607
SET>   14,322
PMEI>     93,607
-------------------------------RETURN TRANSACTION---------------------------
      T/C  POSTED   TRANS-AMOUNT        CYC     T     DLN
      150  08112008              0.00  20083108    49210-888-00000-8   SFR

Employee #7931652792 Page 001 of 005 PAGE   002

```
TXMODA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    MFT>30   TX-PRD>200612    PLN-NUM>        NM-CTRL>MCNE
------------------------POSTED TRANSACTIONS SECTION----------------------
      T/C  POSTED     TRANS-AMOUNT   CYC-DAY  T     DLN
      140  12032007          0.00   20075008      49249-337-00000-7
      595  05122008          0.00   20082108      49249-533-00731-8       CLS-CD>066
      424R 07232008          0.00   20083108      49277-205-20000-8   SOURCE-CD>25
                                            SPCL-PROJ>0277
                             PBC>297   SBC>00000   EGC>5065    PUSH-CD>036
      570  08112008          0.00   20083108      49210-888-00000-8
      420  07312008          0.00   20083208      49277-213-00000-8
                             PBC>297   SBC>00000   EGC>5065
      971  02042009          0.00   20090708      49277-437-84544-9       971-CD>404
      170  05172010      1,546.13   20101808      49247-517-00002-0
                                                         CSED>20200517
      160  05172010      7,350.98   20101808      49247-517-00002-0
                                                         CSED>20200517
      300  05172010     32,671.00   20101808      49247-517-00002-0
                         CSED>20200517              PRT-CD>9
              DISP-CD>10 ASED>        05102013
                                                   TECH-CD>2
              ABST-NUM      ABST-AMT      ABST-NUM      ABST-AMT
                 878       93,607.00         895      93,607.00
                 889       14,322.00         888      94,201.00
Employee #7931652792 Page 002 of 005 PAGE  003


TXMODA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    MFT>30   TX-PRD>200612    PLN-NUM>        NM-CTRL>MCNE
                 886       85,751.00
      421  05172010          0.00   20101808  X  49247-517-00002-0
      336  05172010      7,626.60   20101808      49247-517-00002-0
      276  05172010      6,207.49   20101808      49247-517-00002-0
      971  05172010          0.00   20101808      49277-517-00002-0       971-CD>804
             MISC>CP 0022
      971  06122010          0.00   20102508      63277-565-08911-0       971-CD>611
      971  07132010          0.00   20102908      49277-595-54892-0       971-CD>407
      971R 08092010          0.00   20103108      28277-001-99999-0       971-CD>060
      971  02142011          0.00   20110508      49277-999-99999-1       971-CD>262
      971  05092011          0.00   20111708      49277-517-00002-0       971-CD>804
             MISC>CP 071C
      276  05092011      1,960.25   20111708      49247-517-00002-0
      972  10102011          0.00   20114008      28277-001-99999-1       971-CD>060
      971  11072011          0.00   20114408      28277-001-99999-1       971-CD>060
      971  05072012          0.00   20121705      49277-517-00002-0       971-CD>804
             MISC>CP 071C
------------------------NOTICE HISTORY SECTION----------------------
   NOTICE       AMOUNT       CYC   S  AO
CP022        55,402.20    201018   M  25   SUPPRESS-CD>0
DAS          55,402.20    201018   M  25
CP504        55,778.45    201023   I  25   SUPPRESS-CD>0
Employee #7931652792 Page 003 of 005 PAGE  004
```

```
TXMODA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    MFT>30   TX-PRD>200612    PLN-NUM>     NM-CTRL>MCNE
CPDP2B            56,276.07  201027   I  25   SUPPRESS-CD>0
DAS              56,318.88  201028   I  25   SCND-TDA-SEL>A
CP71C            59,430.93  201117   M  25   SUPPRESS-CD>0
DAS              60,257.22  201135   I  25   SCND-TDA-SEL>I
DAS              60,349.73  201137   I  25   SCND-TDA-SEL>I
CP71C            61,476.04  20121705 M  25   SUPPRESS-CD>0
DAS              62,976.23  201306   I  25
----------------------CONTROL BASE AND HISTORY INFORMATION----------------------
C#   STATUS   ACT-DT   ACTION-EMP   ACTIVITY   RCVD-DT  ASSIGN-TO  CAT  ORG F S
H            07132010  0388888888  STAUP2200                                 X
H            08302011  0388888888  STAUP2200                                 X
H            02072013  0388888888  STAUP2200                                 X
-----------------------SERVICE CENTER HISTORY SECTION------------------------
SC-STS   DATE        STATUS-AMOUNT     CYC
 21     05172010       55,402.20    201018
 58     06212010       55,402.20    201023
 48D    07192010 NXT>505           201027   MIN-NUM-DELAY>06
 50     07262010 NXT>505           201028   MIN-NUM-DELAY>00
 24     07262010       55,402.20    201028
 50     09122011 NXT>505           201135   MIN-NUM-DELAY>00
 22     09122011       57,362.45    201135
 24     09262011       57,362.45    201137
Employee #7931652792 Page 004 of 005 PAGE  005



TXMODA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    MFT>30   TX-PRD>200612    PLN-NUM>     NM-CTRL>MCNE
 50     02252013 NXT>505           201306   MIN-NUM-DELAY>00
 22     02252013       57,362.45    201306
-------------------------MASTER FILE HISTORY SECTION-------------------------
MF-STS   DATE        STATUS-AMOUNT     CYC              CCNIP-SELECT-CD
 02     12032007 IND>   NTC-AO>25   20075008
 03     12242007 IND>6  NTC-AO>25   20075008
 06     05122008            0.00    20082108
 21     05172010       55,402.20    20101808
 58     06212010       55,402.20    20102308
 21     05092011       55,402.20    20111708
 24     07262010       55,402.20    20102808
 22     09122011       57,362.45    20113508
 21     05072012       57,362.45    20121705
 24     09262011       57,362.45    20113708
 22     02252013       57,362.45    20130605




Employee #7931652792 Page 005 of 005 PAGE  001
```

# Exhibit D

IRS Department of the Treasury
Internal Revenue Service
Memphis TN 37501-0012 Case 1:15-cv-01288-CKK   Document 1   Filed 08/07/15   Page 47 of 110

**Exhibit D**

**pg. 1**

ROBERT A MCNEIL
4400 MEMORIAL DR APT 1200
HOUSTON  TX 77007-7344

✁ ------------------------------------------------------------------------------------------------------------------

Cut here and return this portion with your correspondence. Be sure the IRS address appears in the envelope window.
If you are responding to this notice **with a payment** use this side of the stub. If you are responding to this notice
**without a payment** use the back side of this stub.

Notice Number:  Ltr1862
Notice Date: July 13, 2009
0277

*460827522*

Internal Revenue Service
P.O. Box 309011, AMC 8228
Memphis TN 37501-0001
*3750100013*

ROBERT A MCNEIL
4400 MEMORIAL DR APT 1200
HOUSTON  TX 77007-7344

**Exhibit D**

pg. 2

✂ ------------------------------------------------------------------------------------------------------------------------------------

Cut here and return this portion with your correspondence. Be sure the IRS address appears in the envelope window.
If you are responding to this notice **without a payment** use this side of the stub. If you are responding to this notice
**with a payment** use the back side of this stub.

Notice Number:  Ltr1862
Notice Date: July 13, 2009
0277

*460827522*

Internal Revenue Service
P.O. Box 309011, AMC 8228
Memphis  TN  37501-0001
*3750100013*

ROBERT A MCNEIL
4400 MEMORIAL DR APT 1200
HOUSTON  TX  77007-7344

Internal Revenue Service                          Department of the Treasury

P.O. Box 309011, AMC 8228
Memphis Service Center, Stop 8227
Memphis  TN 37501-0001

| | |
|---|---|
| **Date:** | July 13, 2009 |

**Exhibit D**

**pg. 3**

**Social Security Number:**
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
**Form:**
1040
**Tax Period(s) Ending:**
200612

ROBERT A MCNEIL
4400 MEMORIAL DR APT 1200
HOUSTON  TX  77007-7344

**Person to Contact:**
Tax Technician
PC 0277    EGC 5014
**Contact Telephone Number:**
1-866-899-9085
**Contact Hours:**
7:00 A.M. - 7:00 P.M.
**Contact Fax Number:**
1-901-395-1600
**Employee Identification Number:**
0361000000
**Last Date to Respond to this Letter:**
August 12, 2009

**We Have Not Received Your Federal Income Tax Return**
**You Need to File Your Return**

Dear Taxpayer:

**Why We're Sending You This Letter**

You haven't responded to the previous letter(s) we sent requesting you to send us your federal income tax return (Form 1040, 1040A, or 1040EZ) for the tax period(s) shown above. Since you have not responded, we have figured your tax and proposed penalties based on the information your employers, banks and other payers reported on Forms W-2, W-2P, 1099, etc. We explain the tax and penalties in the enclosed report.

**You Need To Take One Of the Following Actions**

1. If you agree with the tax and penalties shown in the report, please sign, date and return one copy of the report in the enclosed envelope. Send a payment for the entire balance due with the signed report, as we will continue to charge interest until the balance is fully paid. If you can't pay the full amount at this time, please call the contact person at the telephone number shown above to discuss how you can pay what you owe.

2. If you don't agree with the tax and penalties and want us to reconsider this matter, please provide a written statement within 30 days from the date of this letter, explaining the reason why you didn't file a return.

3. Send us a completed and signed tax return within 30 days for each period shown. Include all supporting forms and schedules. Both you and your spouse must sign any joint return. Please attach a copy of this letter to the front of your return to help us identify your case and expedite routing. Send all documents in the enclosed envelope.

**Letter 1862 (Rev. 7-2008)**
Catalog Number 61258E

Exhibit D
pg. 4

Under the Privacy Act and Paperwork Reduction Act, our legal authority for asking this information is found in Internal Revenue Code sections 6001, 6011, 6012(a) and their regulations. These sections say you must file a return or statement for any tax year you are liable for, including the taxes your employer withheld.

We ask for this information, which you are required to provide to us, to carry out the United States tax laws. We may provide information to the Department of Justice for civil and criminal litigation and other federal agencies, states, cities, and the District of Columbia for use in administering their tax laws.

If you do not provide the information requested, or provide fraudulent information, we may charge you penalties, and in certain cases, you may be subject to criminal prosecution. We may also have to disallow exemptions, exclusions, credits, deductions or adjustments shown on the tax return. This could make your tax higher or delay any refund. Interest may also be charged.

We have enclosed Publication 3498-A, *The Examination Process (Examinations by Mail),* for your information.

**How to Contact Us**

If you have any questions, please use the contact information shown in the heading of the letter.

Thank you for your cooperation.

Sincerely,

*Alicia McGlown*

Alicia McGlown
Operations Manager, Examination

Enclosures:
Copy of this letter
Return Envelope
Examination Report (2 copies)
Publication 3498-A

**Letter 1862 (Rev. 7-2008)**
Catalog Number 61258E

# IRC Section 6020(b) Certification

Total pages certified as valid section 6020(b) return

| | |
|---|---|
| Tax year | 200612 |

Name of taxpayer

ROBERT A MCNEIL

Note: Total pages certified as valid section 6020(b) return = zero.

SSN / EIN

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

# Exhibit D

# pg. 5

Address of taxpayer  *(Number, Street, City or Town, State, ZIP code)*

4400 MEMORIAL DR APT 1200
HOUSTON  TX  77007-7344

## Certification

The officer of the IRS identified below, authorized by Delegation Order 182, certifies the attached pages constitute a valid return under section 6020(b). This return consists of the following items:

1.  Report summarizing Examination changes or equivalent report of adjustments   *(including, but not limited to: Form 4549, Income Tax Examination Changes; Form 4549-A; Income Tax Discrepancy Adjustments; Form 5278, Statement – Income Tax Changes; Form 4667, Examination Changes -- Federal Unemployment Tax, Form 4668, Employment Tax Examination Changes Report, Form 2504, Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment, or Form 2504-WC, Agreement to Assessment and Collection of Additional Employment Tax and Acceptance of Overassessment in Worker Classification Cases );*

2.  Form 886-A, Explanation of Items, appropriate issue lead sheet or similar form;

3.  This certification  *(Form 13496)* .

Pursuant to section 6651(g)(2), this certification, with attachments, shall be treated as the return filed by the taxpayer for purposes of determining the amount of the additions to tax under paragraphs (2) and (3) of section 6651(a).

## IRS Authorization Data

| Employee name | Title | Office | ID number |
|---|---|---|---|
| Alicia McGlown | Operations Manager, Examination | Memphis | 0361000000 |

| Signature | Date *(mmddyyyy)* |
|---|---|
| *Alicia M. McGlown* | 07/13/2009 |

Form **13496** (Rev. 02-2009)     Catalog Number 37538J     publish.no.irs.gov     Department of the Treasury- **Internal Revenue Service**

**Form 4549**
(Rev. May 2008)

Department of the Treasury-Internal Revenue Service

**Income Tax Examination Changes**

Page 1 of 2

| Name and Address of Taxpayer | | Taxpayer Identification Number | Return Form No.: |
|---|---|---|---|
| ROBERT A MCNEIL<br>4400 MEMORIAL DR APT 1200<br>HOUSTON TX 77007-7344 | | 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 | 1040 |
| | | Person with whom examination changes were discussed. | Name and Title: |

**Exhibit D**

**pg. 6**

| 1. Adjustments to Income | Period End<br>12/31/2006 | Period End | Period End |
|---|---|---|---|
| a. Nonemployee Compensation | 101,362.00 | | |
| b. SE AGI Adjustment | (7,161.00) | | |
| c. Standard Deduction | (5,150.00) | | |
| d. Exemptions | (3,300.00) | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. **Total Adjustments** | 85,751.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | 0.00 | | |
| 4. **Corrected Taxable Income**<br>    Tax Method<br>    Filing Status | 85,751.00<br>TAX TABLE<br>Single | | |
| 5. **Tax** | 18,349.00 | | |
| 6. Additional Taxes / Alternative Minimum Tax | | | |
| 7. **Corrected Tax Liability** | 18,349.00 | | |
| 8. **Less** a.<br>    **Credits** b.<br>        c.<br>        d. | | | |
| 9. **Balance** (Line 7 less Lines 8a through 8d) | 18,349.00 | | |
| 10. Plus a. Self Employment Tax<br>    Other b.<br>    Taxes c.<br>        d. | 14,322.00 | | |
| 11. Total Corrected Tax Liability (Line 9 plus Lines 10a through 10d) | 32,671.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 0.00 | | |
| 13. Adjustments to: a.<br>        b.<br>        c. | | | |
| 14. Deficiency-Increase in Tax or (Overassessment-Decrease in Tax)<br>    (Line 11 less Line 12 adjusted by Lines 13a through 13c) | 32,671.00 | | |
| 15. Adjustments to Prepayment Credits - Increase (Decrease) | | | |
| 16. **Balance Due or (Overpayment)** - (Line 14 adjusted by Line 15)<br>    (Excluding interest and penalties) | 32,671.00 | | |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increa        ses or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by fi        ling the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned an        d do not pay the required tax. The IRS may order backup withholding (withholding of a percentage of your dividend and/or interest income) if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

Catalog Number 23105A                www.irs.gov                Form **4549** (Rev. 5-2008)

Form **4549**
(Rev. May 2008)

Department of the Treasury-Internal Revenue Service

**Income Tax Examination Changes**

| Name of Taxpayer<br>ROBERT A MCNEIL | Taxpayer Identification Number<br>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 | Return Form No.:<br>1040 |
|---|---|---|

**Exhibit D**

**pg. 7**

| 17. Penalties/ Code Sections | Period End<br>12/31/2006 | Period End | Period End |
|---|---|---|---|
| a. Delq-IRC 6651(a)(2) | 4,410.59 | | |
| b. Delq-IRC 6651(a)(1) | 7,350.98 | | |
| c. Estimated Tax-IRC 6654 | 1,546.13 | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| 18. **Total Penalties** | 13,307.70 | | |
| Underpayment attributable to negligence: *(1981-1987)*<br>A tax addition of 50 percent of the interest due on the<br>underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to fraud: *(1981-1987)*<br>A tax addition of 50 percent of the interest due on the<br>underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT)*.<br>The interest will accrue and be assessed at 120% of the under-<br>payment rate in accordance with IRC §6621(c) | 0.00 | | |
| 19. **Summary of Taxes, Penalties and Interest:** | | | |
| a. Balance due or *(Overpayment)* Taxes - *(Line 16, Page 1)* | 32,671.00 | | |
| b. Penalties *(Line 18)* - computed to 07/13/2009 | 13,307.70 | | |
| c. Interest *(IRC § 6601)* - computed to 08/12/2009 | 6,885.46 | | |
| d. TMT Interest - computed to 08/12/2009 *(on TMT underpayment)* | 0.00 | | |
| e. Amount due or *(refund)* - sum of Lines a, b, c and d) | 52,864.16 | | |

**Other Information:**

| Examiner's Signature:<br>Alicia McGlown | Employee ID:<br>0361000000 | Office:<br>Memphis | Date:<br>07/13/2009 |
|---|---|---|---|

Consent to Assessment and Collection- I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. It is understood that this report is subject to acceptance by the Area Director, Area Manager, Specialty Tax Program Chief, or Director of Field Operations.

**PLEASE NOTE:** *If a joint return was filed,* **BOTH** *taxpayers must sign*

| Signature of Taxpayer | Date: | Signature of Taxpayer | Date: |
|---|---|---|---|
| By: | | Title: | Date: |

| Name of Taxpayer: | ROBERT A MCNEIL | | 07/13/2009 |
|---|---|---|---|
| Identification Number: | 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 | Total | 10.20.00 |

### 2006   - SCHEDULE SE - COMPUTATION OF SELF-EMPLOYMENT TAX

Primary
ROBERT A MCNEIL                                              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

| | |
|---|---:|
| 1. Self-employment income | 101,362.00 |
| 2. Multiply line 1 by 92.35% | 93,607.81 |
| 3. Farm Optional Method Income | 0.00 |
| 4. Non Farm Optional Method Income | 0.00 |
| 5. Earnings subject to self-employment tax (sum of 2, 3, 4) | 93,607.81 |
| 6. Maximum earnings subject to social security | 94,200.00 |
| 7. Social Security wages and tips from W-2 | 0.00 |
| 8. Unreported tips from Form 4137 | 0.00 |
| 9. Sum of lines 7 and 8 | 0.00 |
| 10. Line 6 less line 9 | 94,200.00 |
| 11. Multiply the smaller of line 5 or 10 by 12.40% | 11,607.37 |
| 12. Multiply line 5 by 2.90% | 2,714.63 |
| 13. Self-Employment Tax (sum of lines 11 and 12) | 14,322.00 |

Secondary

| | |
|---|---:|
| 1. Self-employment income | 0.00 |
| 2. Multiply line 1 by 92.35% | 0.00 |
| 3. Farm Optional Method Income | 0.00 |
| 4. Non Farm Optional Method Income | 0.00 |
| 5. Earnings subject to self-employment tax (sum of 2, 3, 4) | 0.00 |
| 6. Maximum earnings subject to social security | 94,200.00 |
| 7. Social Security wages and tips from W-2 | 0.00 |
| 8. Unreported tips from Form 4137 | 0.00 |
| 9. Sum of lines 7 and 8 | 0.00 |
| 10. Line 6 less line 9 | 0.00 |
| 11. Multiply the smaller of line 5 or 10 by 12.40% | 0.00 |
| 12. Multiply line 5 by 2.90% | 0.00 |
| 13. Self-Employment Tax (sum of lines 11 and 12) | 0.00 |

**Exhibit D**

**pg. 9**

| Name of Taxpayer: | ROBERT A MCNEIL | | 07/13/2009 |
| Identification Number: | 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 | Total | 10.20.00 |

## EXPLANATION OF THE DELINQUENCY PENALTY

Since your income tax return was not filed within the time limit prescribed by law and/or
the tax was not paid, and you have not shown that such failure was due to reasonable cause,
an addition to the tax is charged as shown below, in accordance with Section 6651(a)(1)
and/or Section 6651(a)(2) of the Internal Revenue Code.

### 2006 - DELINQUENCY PENALTY

| | | |
|---|---|---:|
| 1. Delinquency penalty abated | | 0.00 |
| 2. Date return due | 04/15/2007 | |
| 3. Date return filed | 07/13/2009 | |
| 4. Failure to File penalty rate | 0.225 | |
| 5. Failure to Pay penalty rate | 0.135 | |
| 6. Total corrected tax liability | | 32,671.00 |
| 7. Allowable payments on or prior to due date of return | | 0.00 |
| 8. Net Amount Due (line 6 less line 7) | | 32,671.00 |
| 9. Failure to File Penalty - line 8 multiplied by line 4 | | 7,350.98 |
| 10. Minimum penalty if over 60 days delinquent | | 100.00 |
| 11. Failure to File Penalty - Greater of line 9 or line 10 | | 7,350.98 |
| 12. Previously assessed/previously agreed Failure to File Penalty | | 0.00 |
| 13. Net Failure to File Penalty - line 11 less line 12 | | 7,350.98 |
| 14. Failure to Pay Penalty - line 8 multiplied by line 5 | | 4,410.59 |
| 15. Previously assessed/previously agreed Failure to Pay Penalty | | 0.00 |
| 16. Net Failure to Pay Penalty - line 14 less line 15 * | | 4,410.59 |
| 17. Total Delinquency Penalty - Sum of line 13 and 16 | | 11,761.57 |

* If an amount appears as the Failure to Pay Penalty, the amount only reflects the addition to tax under
Internal Revenue Code section 6651(a)(2) through the date of this notice. The addition to tax will
continue to accrue from the due date of the return at a rate of 0.5 percent each month, or fraction
thereof, of nonpayment, not exceeding 25 percent.

**Exhibit D**

**pg. 10**

| | | |
|---|---|---|
| Name of Taxpayer:   ROBERT A MCNEIL | | 07/13/2009 |
| Identification Number:   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 | Total | 10.20.00 |

## 2006 - EXPLANATION OF THE ESTIMATED TAX PENALTY

Since you did not pay sufficient estimated tax, addition to the tax is charged as shown below, in accordance with Section 6654(a) of the Internal Revenue Code.

| | | | | |
|---|---|---|---|---|
| 1. Total corrected tax liability, Form 4549, line 11 (Tax Per Return, if a return was filed) | | | | 32,671.00 |
| 2. Refundable Credits | | | | 0.00 |
| 3. Withholding taxes | | | | 0.00 |
| 4. Line 1 less sum of lines 2 & 3 (if less than $1000, estimated penalty does not apply) | | | | 32,671.00 |
| 5. 90% of the sum of line 1 less line 2 | | | | 29,403.90 |
| 6. Prior year tax liability (110% of tax if AGI was more than $150,000. or if MFS more than $75,000.) | | | | 0.00 |
| 7. The smaller of line 5 or 6 (as adjusted) | | | | 29,403.90 |

| | Apr 15, 2006 | Jun 15, 2006 | Sep 15, 2006 | Jan 15, 2007 |
|---|---|---|---|---|
| 8. Payment Due Date | | | | |
| 9. Payment Required | 7,350.98 | 7,350.98 | 7,350.98 | 7,350.98 |
| 10. Payments & Credits | 0.00 | 0.00 | 0.00 | 0.00 |
| 11. Overpayment from line 17 | | 0.00 | 0.00 | 0.00 |
| 12. Total of lines 10 & 11 | | 0.00 | 0.00 | 0.00 |
| 13. Previous Qtr Underpayment | | 7,350.98 | 14,701.96 | 22,052.94 |
| 14. Line 12 less line 13 | 0.00 | 0.00 | 0.00 | 0.00 |
| 15. Remaining Underpayment | | 7,350.98 | 14,701.96 | |
| 16. Underpaymen t | 7,350.98 | 7,350.98 | 7,350.98 | 7,350.98 |
| 17. Overpayment | 0.00 | 0.00 | 0.00 | 0.00 |
| 18. Penalty | 572.77 | 486.78 | 341.57 | 145.01 |
| 19. Previously Assessed/Previously Agreed Estimated Tax Penalty | | | | 0.00 |
| 20. Estimated Tax Penalty | | | | 1,546.13 |

Name Of Taxpayer: ROBERT A LONSKI
Identification Number: 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

Total

08/12/2009

10.2

2006   **TAX YEAR INTEREST COMPUTATION**

# Exhibit D
## pg. 11

Interest computed to                                          08/12/2009

Total Tax Deficiency                                         $32,671.00

Plus Penalties*
-Overvaluation                            $.00
-Substantial Understatement               $.00
-Failure to File                      $7,350.98
-Negligence                               $.00
-Civil Fraud                              $.00
-Accuracy Penalties                       $.00
Total Penalties                                              $11,761.57
Tax Deficiency and Penalties Subject to Interest             $44,432.57

| Type | Effective Dates | Days | Rate | Interest |
|------|-----------------|------|------|----------|
| COMPOUND | 04/15/2007--12/31/2007 | 260 | 8% | $2,605.29 |
| COMPOUND | 01/01/2008--03/31/2008 | 91 | 7% | $825.75 |
| COMPOUND | 04/01/2008--06/30/2008 | 91 | 6% | $719.32 |
| COMPOUND | 07/01/2008--09/30/2008 | 92 | 5% | $614.42 |
| COMPOUND | 10/01/2008--12/31/2008 | 92 | 6% | $747.55 |
| COMPOUND | 01/01/2009--03/31/2009 | 90 | 5% | $619.53 |
| COMPOUND | 04/01/2009--08/12/2009 | 135 | 4% | $753.60 |

Total Interest           $6,885.46
Total Underpayment      $32,671.00
Total Penalties         $13,307.70
Total Amount Due        $52,864.16

The interest shown on this report is estimated.  Interest is computed from the due date of the return (including extensions) and will continue to accrue until the date paid in full.

Form **886-A**
(Rev. January 1994)

**EXPLANATION OF ITEMS**

Schedule number or exhibit

| Name of taxpayer | Tax Identification Number | Year/Period ended |
|---|---|---|
| ROBERT A MCNEIL | 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 | 2006 |

# Exhibit D
## pg. 12

Personal Exemption - Self
Per Return: 0
Per Exam: 1
Per Adjustment: -1

Since you failed to file your tax return(s) for the tax year(s) shown in this report, we have filed for you as authorized by Internal Revenue Code Section 6020(b). The income, filing status, deductions, and credits shown in this report are based on information available to us. The proposed adjustments may not reflect certain deductions, expenses, exemptions, credits and other tax benefits, such as cost basis of capital items, due to your failure to file your return and provide supporting information.

We used Information Return Documents filed by payers as reported under your Social Security Number to determine your income. If you need an itemized list of payers and amounts of the income reported to the Internal Revenue Service, you may request this information by calling the toll-free number or writing to the address shown on the accompanying letter.

SE AGI Adjustment
Per Return: $0.00
Per Exam: $7,161.00
Per Adjustment: ($7,161.00)

Your self-employment tax has changed as a result of adjustments made to your net earnings from self-employment as shown in this report. The self-employment tax deduction has been adjusted to one-half of the recomputed amount.

Self Employment Tax
Per Return: $0.00
Per Exam: $14,322.00
Per Adjustment: $14,322.00

We have adjusted your self-employment tax due to a change in your net earnings from self-employment.

Form **886-A** (1-1994)                     Department of the Treasury-Internal Revenue Service

# Exhibit E

**Exhibit E**

**pg. 1**

```
TIN 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   TSC I                      DLN 49 2 47 - 517 - 000 02 - 0
MFT 30  PERIOD 200612    PLAN 000    INPUT 04-23-2010  EMPL.NO 0361623815
NAME CONTROL    ZN CYC DELAY CD 0    TRI            SEQUENCE NO 0065
INT DT 00-00-0000 PRI CD 9 HOLD CD    APPL CD    DISP CD  10 EXAM RECM
                   TRANSACTION CODES AND AMOUNTS
 300        32,671.00    170      1,546.13  160          7,350.98
              .00                    .00                      .00


              REF NUMBERS AND AMOUNTS/NO CHANGE ISSUE CODES
878        93,607.00   895       93,607.00   889        14,322.00
888        94,201.00   886       85,751.00                   .00
              .00                    .00


SETTLEMENT AMT                  AIMS RESULT AMT          32,671.00
AGREEMENT DT    -  -     CLAIM REJECTION DT    -  -   ASED 05-10-2013
INT TO DT      -  -      2% INT DT   -  -      30/90 DT   -  -
30/90 AMT
DMF AGENCY CD     MATH ERROR CD
TXPR CORRESPONDENCE DT   -  -      CREDIT INT DT   -  -


CF5147                                    PAGE NO    64
```

**Exhibit E**

**pg. 2**

FOR   OFFICIAL   USE   ONLY

Employee Number:   0361623815                          Category:   E

Input or Julian Date:   04/23/2010                  Sequence #:    65

TIN:   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                           Tax Period:   200612

Quality Review Release Date:   ____ / ____ / _____

E X A M I N A T I O N

R E P O R T   G E N E R A T I O N   S O F T W A R E

( R G S )   C L O S I N G   I N F O R M A T I O N

The RGS system at the Memphis compliance center
maintains an electronic file of letters sent to the
taxpayer, the examination report, case workpapers
and history sheet, and the form 5344.

Please contact the RGS Coordinator for the above
compliance center to obtain a copy of this
information.

You can find a list of the RGS Coordinators at the
RGS home page on the IRWeb.

Form 13181 (Rev. 10-01)
Cat. No. 32814E

FOR   OFFICIAL   USE   ONLY

# Exhibit F

**Exhibit F**

**pg. 1**

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X    RECEIVED    □ Agent  □ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery<br>080623 |
| 1. Article Addressed to:<br>INTERNAL REVENUE SERVICE<br>Disclosure Scanning Ops.<br>Mail Stop 93A<br>P.O. Box 621506<br>Atlanta, GA  30362-3006 | D. Is delivery address different from item 1?  □ Yes<br>If YES, enter delivery address below:  □ No |
|  | 3. Service Type<br>☒ Certified Mail  □ Express Mail<br>□ Registered  □ Return Receipt for Merchandise<br>□ Insured Mail  □ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  □ Yes |
| 2. Article Number<br>(Transfer from service label) | 7011 2970 0003 0629 5000 |

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

**Exhibit F**

**pg. 2**

RIVER OAKS STATION
HOUSTON, Texas
770199998
4841490048-0094
08/02/2013 (800)275-8777 02:29:24 PM

============ Sales Receipt ============

| Product Description | Sale Unit Qty Price | Final Price |
|---|---|---|

ATLANTA GA 30362 Zone-5          $0.46
First-Class Mail Letter
0.80 oz.
Scheduled Delivery Day: Mon
08/05/13
Return Rcpt (Green
Card)                            $2.55
@@ Certified                     $3.10
Label #:
7011297000030629500

Issue PVI:
                                 $6.11

Total:                           $6.11

Paid by:
Cash
Change Due:                      $7.00
                                -$0.89

@@ For tracking or inquiries go to
USPS.com or call 1-800-222-1811.
****************************************
****************************************
BRIGHTEN SOMEONE'S MAILBOX. Greeting
cards available for purchase at
select Post Offices.
****************************************
****************************************

---

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

ATLANTA GA 30362   OFFICIAL USE

| Postage | $ | $0.46 | 0048 |
| Certified Fee | | $3.10 | 09 |
| Return Receipt Fee (Endorsement Required) | | $2.55 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $6.11 | 08/02/2013 |

Sent To
IRS - Disclosure Scanning Ops
Street, Apt. No.
or PO Box No. MAI Stop 93A PO Box 621506
City, State, ZIP+4 Atlanta GA 30362-3006

7011 2970 0000 3062 9500

PS Form 3800, August 2006          See Reverse for Instructions

**Exhibit F**

**pg. 3**

August 2, 2013

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7011 2970 0003 0629 5000

Robert Allen McNeil, **SSN: 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, DOB 01/23/1949**
1302 Waugh Dr. #498
Houston, Dr.  77019-3908

Internal Revenue Service
Disclosure Scanning Operation
Mail Stop 93A
Post Office Box 621506
Atlanta, Georgia  30362-3006

This is a request for information pursuant to the Freedom of Information Act and Privacy Act, 5 U.S.C. §§ 552 and 552a and the regulations thereunder. This is my firm promise to pay costs and fees for the search, reproduction, and certification of documents responsive to this request upon your billing. I am not waiving personal inspection of the documents at this time. I certify that the requested information is for my personal, educational, noncommercial use. I further certify that I have a material interest in the requested information.

{I have previously made a similar request more than 12 months ago.  Since that time, I have reason to believe there have been major changes to entries in my Individual Master File and thus I need to request these documents again to ensure my IMF is accurate.}

1.  Please return a complete, clean copy of this request showing your stamp and the date this request was received.
2.  Please send to me a copy of any information pertaining to me for years 2000-2012:
    a)  My Individual Master File (IMF) COMPLETE;
    b)  My Non-Master File (NMF);
    c)  My TXMODA and TXMODN;
    d)  My Business Master File (BMF) with **EIN 46-0827522**;
    e)  The "frivolous return" penalty work papers, especially Form 8278 or its equivalent, and any other IRS or Treasury forms and computer forms. (Explicitly *excluded* is any correspondence I submitted to the IRS.)
    f)  A copy of any 1040 or 1040A return that I personally filed, or admit that/those document(s) does/do not exist.
    g)  A copy of any document that the IRS relied upon whereby I granted consent (either express, verbal or by default) for anyone in the IRS to file a 1040 or 1040A return on my behalf, or admit that/those document(s) does/do not exist.

1 of 2

**Exhibit F**

**pg. 4**

h)  A copy of the document that explains the significance of the "10" for the 4th and 5th digits of each DLN.

i)  A copy of the return represented by the Document Locator Number (DLN), listed in the table below, or admit that/those document(s) does/do not exist.

| PERIOD | SFR DATE | RET RCVD DATE | DLN |
|--------|----------|---------------|-----|
| 200212 | 8/12/2005 | 7/14/2005 | 52210-195-03457-5 |
| 200312 | 8/11/2008 | 7/23/2008 | 49210-888-00000-8 |
| 200412 | 8/11/2008 | 7/23/2008 | 49210-888-00000-8 |
| 200512 | 8/11/2008 | 7/23/2008 | 49210-888-00000-8 |
| 200612 | 8/11/2008 | 7/23/2008 | 49210-888-00000-8 |
| 200812 | 12/27/2010 | 12/7/2010 | 29210-888-00000-0 |
| 200912 | 10/10/2011 | 9/21/2011 | 29210-888-00000-1 |

**J**URAT per the IRS Guide to the Freedom of Information Act[1] and 28 U.S.C. § 1746–
I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and the information requested pertains to me.

Executed on August 2, 2013.

Robert Allen McNeil – All rights reserved

---

[1] "Presenting a sworn statement as to your identity, under penalty of perjury (You may include in your FOIA request "I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed on [date]. I am [your name] and I am requesting....")" Internal Revenue Service – Guide to the Freedom of Information Act, January 12, 2004, pg. 20 of 23.

**Exhibit F**

pg. 5

R. A. MCNEIL
1302 WAUGH DR. #498
HOUSTON, TX 77019

Internal Revenue Service
Disclosure Scanning Operation
Mail Stop 93A
Post Office Box 621506
Atlanta, Georgia  30362-3006

# Exhibit G

**IRS** Department of the Treasury
Internal Revenue Service

**Exhibit G**

pg. 1

CCP-LU ACS CORRESPONDENCE
P.O. BOX 145566, STOP 813G CSC
CINCINNATI, OH 45250-5566

7178 2665 9395 1550 8227

002604.227914.0018.001 2 MB 0.405 1867

ROBERT A MCNEIL
1302 WAUGH DR 498
HOUSTON, TX 77019-3908

2604

IRS Department of the Treasury
Internal Revenue Service

CCP-LU ACS CORRESPONDENCE
P.O. BOX 145566, STOP 813G CSC      7178 2665 9395 1550 8227
CINCINNATI, OH 45250-5566

CERTIFIED MAIL

Letter Date: 09/24/2013
Taxpayer Identification Number:
XXX-XX-7522
Person to Contact:
G.J. CARTER-LOUIS
Contact Telephone Number:
(800) 829-3903
Employee Identification Number:
25-01CSC

ROBERT A MCNEIL
1302 WAUGH DR 498
HOUSTON, TX 77019-3908

# Exhibit G
## pg. 2

2604

### Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320

Dear ROBERT A MCNEIL

We filed a Notice of Federal Tax Lien on  09/24/2013 .

| Type of Tax | Tax Period | Assessment Date | Amount on Lien |
|---|---|---|---|
| 1040 | 12/31/2006 | 05/17/2010 | 57362.45 |

NOTE: Please contact the person whose name and telephone number appears on this notice to obtain the current amount you owe. Additional interest and penalties may be increasing the amount on the lien shown above.

A lien attaches to all property you currently own and to all property you may acquire in the future. It also may damage your credit rating and hinder your ability to obtain additional credit.

You have the right to a hearing with us to appeal this collection action and to discuss your payment method options. To explain the different collection appeal procedures available to you, we have enclosed Publication 1660, Collection Appeal Rights.

You must request your hearing by  10/31/2013 . Please complete the enclosed Form 12153, *Request for a Collection Due Process or Equivalent Hearing,* and mail it to:

Internal Revenue Service
ATTN: ACS SUPPORT/CDP
201 RIVERCENTER BLVD, STOP 814G
COVINGTON, KY 41011

Letter 3172 (DO) rev. (3-2009)
Catalog No. 267671

**Exhibit G**

pg. 3

We will issue a Form 668(Z), Certificate of Release of Notice of Federal Tax Lien, within 30 days:

- After you pay the full amount of your debt;
- We accept a bond guaranteeing payment of the amount owed; or
- A decision is made to adjust your account (i.e., during an Appeals hearing).

We have enclosed Publication 1450, Instructions on How to Request a Certificate of Release of Federal Tax Lien.

If you have any questions, please contact the person whose name and telephone number appear at the top of this letter.

Sincerely,

Operations Manager,
Centralized Case Processing-Lien Unit

Enclosures:
Publication 594, *The Collection Process*
Publication 1450
Publication 1660
Form 668 (Y) (C), *Notice of Federal Tax Lien*
Form 12153

Letter 3172 (DO) rev. (03-2012)
Catalog No. 267671

# Exhibit G

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

pg. 4

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #5 (800) 829-3903 | Serial Number 960767813 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. **Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.**

- This Notice of Federal Tax Lien has been filed as a matter of public record.
- IRS will continue to charge penalty and interest until you satisfy the amount you owe.
- Contact the Area Office Collection Function for information on the amount you must pay before we can release this lien.
- See the back of this page for an explanation of your Administrative Appeal rights.

Name of Taxpayer  ROBERT A MCNEIL

02604

Residence
  1302 WAUGH DR 498
  HOUSTON, TX 77019-3908

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2006 | XXX-XX-7522 | 05/17/2010 | 06/16/2020 | 57362.45 |

Place of Filing
  COUNTY CLERK
  HARRIS COUNTY
  HOUSTON, TX 77251

Total

This notice was prepared and signed at _____NASHVILLE, TN_____ , on this,

the __12th__ day of __September__ , __2013__ .

| Signature  _for G.J. CARTER-LOUIS_ | Title ACS SBSE (800) 829-3903     25-00-0001 |
|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 3 - Taxpayer's Copy**

CAT. NO 60025X
Form **668 (Y)(c)** (Rev. 02-04)

**Exhibit G**

**pg. 5**

PRESORTED
FIRST-CLASS MAIL
POSTAGE AND FEES PAID
IRS
PERMIT NO. G-48

Official Business
Penalty for Private Use, $300

CERTIFIED MAIL

7178 2665 9395 1550 8227

**IRS** Department of the Treasury
Internal Revenue Service
CCP-LU ACS CORRESPONDENCE
P.O. BOX 145566, STOP 8136 CSC
CINCINNATI, OH 45250-5566

002604.227914.0018.001 2 MB 0.405 1867

ROBERT A MCNEIL
1502 WAUGH DR 498
HOUSTON, TX 77019-3908

002604

# Exhibit H

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving notice that taxes, including interest and penalties have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer ROBERT A MCNEIL

Residence       1302 WAUGH DR 498
                HOUSTON, TX 77019-3908

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| | | | | | |
| 1040 | 12/31/2006 | XXX-XX-7522 | 05/17/2010 | 06/16/2020 | 57362.45 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Place of Filing
            COUNTY CLERK
            HARRIS COUNTY          Total  $
            HOUSTON, TX 77251

This notice was prepared and signed at        NASHVILLE, TN        , on this,

the ___12th___ day of ___September___ ___2013___.

Signature                                   Title
                                            ACS  SBSE               25-00-0001
for G.J. CARTER-LOUIS                        (800) 829-3903

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form **668(Y)(c)** (Rev. 2-2004)
CAT. NO 60025X

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2013



RP 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

FILED FOR RECORD
8:00 AM

SEP 24 2013

*Stan Stanart*
County Clerk, Harris County, Texas

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time
stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris
County, Texas

SEP 24 2013



*Stan Stanart*
COUNTY CLERK
HARRIS COUNTY, TEXAS

Any provision herein which restrict the sale, rental or use of the described Real Property because of color or race is invalid and unenforceable under the Federal Law. Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 10/1/2013



**Exhibit H**

pg. 3

County Auditor's Form #187-A
Harris County, Texas (REV. 07/94)

Ct. No. _____

OFFICE OF STAN STANART, COUNTY CLERK, HARRIS COUNTY, TEXAS

## ORDER FOR CERTIFIED COPY OF RECORDS

*This form becomes a receipt only when validated by County Clerk's register.*

☐ Cash   ☐ Check

| No. of Copies | Name of Record | Date | File or Dkt. No. | Volume | Page | Name on Record | Film Code Numbers |
|---|---|---|---|---|---|---|---|
| 1 | RN | | 20130195386 | | 5 | | |
| | | | | | 2 | | |

Order Placed By: ROBERT

Address: (City, State, Zip)

Attention:

Phone No. 713-806-5199

| | Phone When Ready ☐ | Pick Up When Ready ☐ | Mail When Ready ☐ |
|---|---|---|---|

| | | Total Fee | |
|---|---|---|---|
| No. of Instruments Ordered | 1 | $ | 7.00 |
| Certification of $5 per Instrument | | | |
| No. of Pages Ordered | 2 | | |
| No. of Pages at $1 each page | | | |
| Copies Prepared By | | | |
| No. of Pages at $2 each page | | | |

Date Ordered

10-1-13

Time Promised

Order Taken By:

Picked Up By:

CC # 1601000

White to Clerk's records - Pink to Auditor - Canary to Customer

Form No. Z-02-02 (Rev. 01/01/11)

# Exhibit I

**Exhibit I**

pg. 1

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature  X ☐ Agent ☐ Addressee |
| | B. Received by ( *Printed Name* )    C. Date of Delivery |

1. Article Addressed to:

Secretary of State
Uniform Commercial Code
P.O. Box 13193
Austin, Tx
        78711 - 3193

TPASS/CPA

OCT 10 2013

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

2. Article Number
   (*Transfer from service label*)    7011 3500 0003 4138 7472

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

**Exhibit I**

**pg. 2**

```
=====================================
        BARBARA JORDAN MAIN PO
           HOUSTON, Texas
              772019998
           4841490010-0092
10/08/2013 (800)275-8777 04:34:37 PM
=====================================
============= Sales Receipt ==========
Product          Sale Unit     Final
Description        Qty Price    Price

AUSTIN TX 78711 Zone-2          $0.46
First-Class Mail Letter
0.40 oz.
Scheduled Delivery Day: Thu
10/10/13
Return Rcpt (Green             $2.55
Card)
@@ Certified                   $3.10
Label #:  70113500000341387472

Issue PVI:                     $6.11
                            ==========
Total:                         $6.11

Paid by:
Cash                           $6.11

@@ For tracking or inquiries go to
USPS.com or call 1-800-222-1811.
*************************************
*************************************
```

**U.S. Postal Service™**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

AUSTIN TX 78711   OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

Postmark Here   OCT -8 2013   10/08/2013

7011 3500 0003 4138 7472

Sent To _Secretary of State - UCC_
Street, Apt. No.; or PO Box No. _PO Box 13193_
City, State, ZIP+4 _Austin, Tx 78711-3193_

PS Form 3800, August 2006        See Reverse for Instructions

Exhibit I

pg. 3

# Robert A. McNeil

*1302 Waugh Dr., #498*
*Houston, Texas near 77019*
*713-806-5199*

## INFORMATION REQUEST

Date: October 8, 2013

Secretary of State
Uniform Commercial Code
PO Box 13193
Austin, TX  78711-3193

### CERTIFIED MAIL
#### 7011 3500 0003 4138 7472

Dear Secretary of State:

This letter is a request for a search of the public records for all documents related to a Federal Tax Lien filed against me by the Department of the Treasury – Internal Revenue Service.

In that regard, please find, attached, the following items:

- Information Request – Form UCC11
- Money Order - $15.00

Please forward certified copies of the search results to the address above, which is also shown on Form UCC11.

If the search yields no results, please forward an affidavit to that effect to the same address.

Thank you.

Sincerely,

Robert A. McNeil

## INFORMATION REQUEST
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) | FILING OFFICE ACCT # |
|---|---|
| B. E-MAIL CONTACT AT FILER (optional) | |

C. RETURN TO:  (Name and Address)

> Robert A. McNeil
> 1302 Waugh Dr. #498
> Houston, TX  77019

| Print | Reset |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME to be searched: Provide only one Debtor name (1a or 1b) (use exact full name; do not omit, modify or abbreviate any part of the Debtor's name)

1a. ORGANIZATION'S NAME

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| McNeil | Robert | A | |

2. INFORMATION OPTIONS relating to UCC filings and other notices on file in the filing office that include the Debtor name identified in item 1:

2a. ☐ LISTING RELATING TO DEBTOR AT SPECIFIED CITY AND STATE ONLY — Filing office requested to furnish a search report listing all financing statements, related records, and other notices on file in filing office that include the Debtor's name identified in item 1 and show that Debtor's address in the city, state, and country indicated here:

| CITY | STATE | COUNTRY |
|---|---|---|

2b. ☑ INFORMATION REQUEST RESPONSE WITH FULL COPIES (CERTIFIED) — Filing office requested to furnish a search report listing all financing statements, related records, and other notices, showing date and time of filing and name and address of each Secured Party named therein, and also furnish an exact CERTIFIED COPY of ALL reported records (including all attachments)

2c. ☐ INFORMATION REQUEST RESPONSE WITHOUT COPIES — Filing office requested to furnish a search report (as described in 2b) listing all reported records, but to furnish NO COPIES of reported records

2d. ☐ INFORMATION REQUEST RESPONSE WITH PARTIAL COPIES (CERTIFIED) — Filing office requested to furnish a search report (as described in 2b) and also to furnish an exact CERTIFIED COPY of the FIRST PAGE ONLY of all reported records

3. ☐ SPECIFIED COPIES ONLY — Filing office requested to furnish an exact copy of each page of the financing statements, related records, and other notices (including all attachments) that are identified below by record number. Certain filing offices require additional identifying information — please complete if required

☐ CERTIFIED COPY REQUEST — Filing office requested to furnish CERTIFIED copies per request indicated in this item 3

| Record Number | Date Record Filed (if required) | Type of Record and Additional Identifying Information (if required) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4. ☑ LISTING RELATING TO SECURED PARTY — Filing office requested to furnish a search report listing all financing statements, related records, and other notices (regardless of Debtor name) on file in filing office that include the Secured Party's name identified in item 4a or 4b. If a specified city, state, and country are being requested (optional), show that Secured Party's address in item 4c

4a. ORGANIZATION'S NAME

**Department of the Treasury - Internal Revenue Service**

OR

| 4b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 4c. CITY | | STATE | COUNTRY |

5. DELIVERY INSTRUCTIONS (request will be filled by mail sent to address shown in item C unless otherwise instructed here):

5a. ☐ FAX Delivery — Filing office requested to fax results of this Information Request to fax number indicated here:  (          )

5b. ☐ Pick Up

5c. ☐ Other

Specify desired method here (if available from this office); provide delivery information (e.g., delivery service's name, addressee's account # with delivery service, addressee's phone #, etc.)

FILING OFFICE COPY (1) — INFORMATION REQUEST (Form UCC11) (Texas) (Rev. 07/19/12)

Office of the Secretary of State of Texas

Please type or laser-print this form. Be sure it is completely legible. Read and follow all Instructions, especially Instruction 1; use of the correct name for the Debtor is crucial.
Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. The filing office cannot give legal advice.
Send completed form parts 1 and 2 (labeled Filing Office Copy (1) and (2)) to the filing office, with the required fee.

## ITEM INSTRUCTIONS

A and B.   To assist filing offices that might wish to communicate with filer, filer may provide information in item A and item B.  These items are optional.
C.    Provide name and address of requestor in item C.  This item is NOT optional.

1.   **Debtor's name.**  Enter only one Debtor name in item 1 -- either an organization's name (1a) or an individual's name (1b).  Enter Debtor's <u>correct name</u>.  Do not abbreviate words that are not already abbreviated in the Debtor's name.

1a.   <u>Organization Debtor Name</u>. "Organization Name" means the name of an entity that is not a natural person. A sole proprietorship is not an organization, even if the individual proprietor does business under a trade name.   If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed public organic records to determine Debtor's correct name.   Trade name is insufficient.  If a corporate ending (e.g., corporation, limited partnership, limited liability company) is part of the Debtor's name, it must be included.  Do not use words that are not part of the Debtor's name.

1b.   <u>Individual Debtor Name</u>. "Individual Name" means the name of a natural person; this includes the name of an individual doing business as a sole proprietorship, whether or not operating under a trade name.  The term includes the name of a decedent where collateral is being administered by a personal representative of the decedent.  The term does not include the name of an entity, even if it contains, as part of the entity's name, the name of an individual.  Prefixes (e.g., Mr., Mrs., Ms.) and titles (e.g., M.D.) are generally not part of an individual name.  Indications of lineage (e.g., Jr., Sr., III) generally are not part of the individual's name, but may be entered in the Suffix box.  Enter individual Debtor's surname (family name) in Individual's Surname box, first personal name in First Personal Name box, and all additional names in Additional Name(s)/Initial(s) box.

If a Debtor's name consists of only a single word, enter that word in Individual's Surname box and leave other boxes blank.

For both <u>organization and individual Debtors</u>.  Do not use Debtor's trade name, DBA, AKA, FKA, division name, etc. in place of or combined with Debtor's correct name; filer may add such other names as additional Debtors if desired (but this is neither required nor recommended).

2.   **Information Options.**
2a.   To request a "Listing Relating to Debtor at Specified City and State Only" check box 2a and enter the city, state, and country in item 2a. This type of request will introduce a search criterion that narrows the scope of the search, which may result in an incomplete search (that fails to list all filings against a named Debtor) and requestor may fail to learn information that might be of value.

2b-2d.   Check appropriate box (2b, 2c, or 2d) to specify whether search response should include all copies, no copies or partial copies.

3.   **Specified Copies Only.**  To request specified copies only, check the "Specified Copies Only" box and provide the record number(s) as requested.  To request certified copies for record number(s) identified in item 3, also check the "Certified Copy Request" box.

4.   **Listing relating to Secured Party.**  To request a listing for a named Secured Party, check this box.  Enter only one Secured Party name in item 4 -- either an organization's name (4a) or an individual's name (4b).  If a specified city, state, and country is being requested (optional), enter that Secured Party's address in item 4c.

5.   **Delivery Instructions.**  Unless otherwise instructed, filing office will mail information to the name and address in item C.  Check appropriate box (5a, 5b, or 5c) if optional delivery method is being requested.

5a.   To request information to be faxed to the requestor, check the "FAX Delivery" box and provide fax number in specified area.

5b.   To request information to be picked up from the filing office, check the "Pick Up" box.

5c.   For other than mail, pick up or FAX, check the "Other" box and specify the other delivery method that is being requested.  If requesting delivery service, provide delivery service's name and requestor's account number to bill for delivery charge.  Filing office will not deliver by delivery service unless prepaid waybill or account number for billing is provided.

If requesting information from a county clerk filing office, contact county clerk to determine what services are offered by that office.



# Exhibit J

Uniform Commercial Code
P.O. Box 13193
Austin, Texas 78711-3193



John Steen
Secretary of State

# Exhibit J

## pg. 1

October 11, 2013

Page 1 of 1

### Office of the Secretary of State
**Packing Slip**

Robert A McNeil
1302 Waugh Dr. # 498
Houston, TX 77019

Batch Number: **50876357**

Client ID: **450919785**

Batch Date: **10-10-2013**

Return Method: **Mail**

| Document Number | Document Detail | Number / Name | Page Count | Fee |
|---|---|---|---|---|
| **508763570002** | **Request for Search With Copies** | **MCNEIL ROBERT A** | 2 | $17.00 |
| | | | Total Fees: | $17.00 |

| Payment Type | Payment Status | Payment Reference | Amount |
|---|---|---|---|
| **Check** | **Received** | 14770159354 | $15.00 |
| | | Total: | $15.00 |
| | Total Amount Charged to Client Account: | | $2.00 |
| | (Applies to documents or orders where Client Account is the payment method) | | |

*Note to Customers Paying by Client Account:* This is not a bill. Payments to your client account should be based on the monthly statement and not this packing slip. Amounts credited to your client account may be refunded upon

User ID: LZUNIGA

*Come visit us on the Internet @ http://www.sos.state.tx.us/*

Phone:  512-475-2703

FAX:  512-463-1423

Dial: 7-1-1 for Relay Services

Uniform Commercial Code
P.O. Box 13193
Austin, Texas 78711-3193



John Steen
Secretary of State

# Exhibit J
## pg. 2

## Office of the Secretary of State

**Texas UNIFORM COMMERCIAL CODE Debtor Search Certificate With Copy**

Document Number: 508763570002

October 11, 2013

Requested Individual Debtor:  ROBERT A MCNEIL

Requested City: Not Specified

Page 1 of 2

| Initial Filing Number | Filing Type | Filing Date | Filing Time | Lapse Date | Number of Pages |
|---|---|---|---|---|---|
| 08-0037862963 | Financing Statement | 11/24/2008 | 05:00 PM | 11/24/2013 | 1 |

| Party Type | Party Name and Address |
|---|---|
| Debtor: | ROBERT MCNEIL, ███████████, FORNEY, TX, USA, 75126 - 746 |
| Secured Party: | BANK OF AMERICA, PO BOX 2759, JACKSONVILLE, FL, USA, 32203 |

| Initial Filing Number | Filing Type | Filing Date | Filing Time | Lapse Date | Number of Pages |
|---|---|---|---|---|---|
| 13-0020846519 | Financing Statement | 07/01/2013 | 09:24 AM | 07/01/2018 | 1 |

| Party Type | Party Name and Address |
|---|---|
| Debtor: | ROBERT A MCNEIL, ████████, LUMBERTON, TX, USA, 73657 |
| Secured Party: | SHEFFIELD FINANCIAL, A DIVISION OF BRANCH BANKING AND TRUST COMPANY, PO BOX 1704, CLEMMONS, NC, USA, 27012 |

**Collateral Information:**

THE FOLLOWING LISTED EQUIPMENT: MAKE;GRAVELY;MODEL:992203;VIN/SN:020063 ALONG WI
TH ALL ADDITIONS, MODIFICATIONS, AND EXCHANGES TO THE SUBJECT EQUIPMENT TO INCLU
DE SPECIAL TOOLS AND EQUIPMENT NEEDED FOR ITS SERVICE AND REPAIR. AND ALL OTHER
EQUIPMENT NOW OWNED AND HEREAFTER ACQUIRED THAT IS FINANCED BY SHEFFIELD FINANCI
AL.

Total Pages:     2

The undersigned, as Secretary of State of Texas, hereby certifies that the attached documents are true and correct reproductions of all available records now in my lawful custody and possession, as the same are filed in the Uniform Commercial Code Section of my office as of 10/09/2013 at 05:00 PM and which name the above debtor. My acceptance for filing and custody of these documents in no way confirms, denies, or implies validity, legal effect, or enforceability of the attached documents.

**Exhibit J**

**pg. 3**



John Steen
Secretary of State

**Exhibit J**

pg. 4

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME and PHONE OF CONTACT AT FILER [optional]**

Pete Son        (904) 987-1670

**B. SEND ACKNOWLEDGEMENT TO: (Name and Address)**

> Bank of America
> PO Box 2759
> Jacksonville, FL 32203

08-0037862963
11/24/2008 05:00 PM



FILED

TEXAS
SECRETARY OF STATE

SOS



237697240002

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | MCNEIL | KELEIGH | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | FORNEY | TX | 75126-74 | US |

| 1d. TAX ID#; SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | X  NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | MCNEIL | ROBERT | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | FORNEY | TX | 75126-746 | US |

| 2d. TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | X  NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only ONE secured party name (3a or 3b)

3a. ORGANIZATION'S NAME

| OR | BANK OF AMERICA | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|
| | 3b. INDIVIDUAL'S LAST NAME | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O BOX 2759 | JACKSONVILLE | FL | 32203 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

U 2006 HURRICANE FUND  GDYG2622I506

U 2006 YAMAHA 225     1024221

U 2006 MFI TRAILER    4J2XDXW2361084761

U 2006 MFI TRAILER    4J2XDXW2361084761

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATES RECORDS.   Attach Addendum  [if applicable] | 7 Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] | All Debtor | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

| 6 OPTIONAL FILER REFERENCE DATA | | |
|---|---|---|
| 59102018388012 | | 11/4/2008 8:07:51 AM |

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |
| CT Lien Solutions |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)
**CT Lien Solutions
2727 Allen Parkway
Ste. 100
Houston, TX 77019
USA

**FILING NUMBER:** 13-0020846519
**FILING DATE:** 07/01/2013     09:24 AM
**DOCUMENT NUMBER:** 488017020001
**FILED: Texas Secretary of State**
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | | | | |
| | 1b. INDIVIDUAL'S SURNAME **MCNEIL** | FIRST PERSONAL NAME **RHONDA** | ADDITIONAL NAME(S)/INITIAL(S) **J** | SUFFIX |
| 1c. MAILING ADDRESS | | CITY **LUMBERTON** | STATE **TX** | POSTAL CODE **73657** | COUNTRY **USA** |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | |
| --- | --- | --- | --- | --- |
| OR | | | | |
| | 2b. INDIVIDUAL'S SURNAME **MCNEIL** | FIRST PERSONAL NAME **ROBERT** | ADDITIONAL NAME(S)/INITIAL(S) **A** | SUFFIX |
| 2c. MAILING ADDRESS | | CITY **LUMBERTON** | STATE **TX** | POSTAL CODE **73657** | COUNTRY **USA** |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME **Sheffield Financial, A Division of Branch Banking and Trust Company** | | | |
| --- | --- | --- | --- | --- |
| OR | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS **PO Box 1704** | | CITY **Clemmons** | STATE **NC** | POSTAL CODE **27012** | COUNTRY **USA** |

4. COLLATERAL: This financing statement covers the following collateral:
THE FOLLOWING LISTED EQUIPMENT: Make:Gravely;Model:992203;VIN/SN:020063 ALONG WITH ALL ADDITIONS, MODIFICATIONS, AND EXCHANGES TO THE SUBJECT EQUIPMENT TO INCLUDE SPECIAL TOOLS AND EQUIPMENT NEEDED FOR ITS SERVICE AND REPAIR. AND ALL OTHER EQUIPMENT NOW OWNED AND HEREAFTER ACQUIRED THAT IS FINANCED BY SHEFFIELD FINANCIAL.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box. |
| --- | --- |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY

**Exhibit J**

**pg. 6**



SECRETARY OF STATE
UNIFORM COMMERCIAL CODE
P.O. BOX 13193
AUSTIN, TEXAS 78711-3193

www.sos.state.tx.us

Robert A McNeil
1302 Waugh Dr. # 498
Houston, TX 77019

13 IMETNJB 77019

OFFICIAL BUSINESS
STATE OF TEXAS
PENALTY FOR PRIVATE USE



US POSTAGE $000.38

# Exhibit K

Case 1:15-cv-01288-CKK   Document 1   Filed 08/07/15   Page 93 of 110

**Exhibit K**

pg. 1

November 2007

# FINANCIAL AUDIT

## IRS's Fiscal Years 2007 and 2006 Financial Statements



**G A O**

Accountability ★ Integrity ★ Reliability

# GAO
**Accountability · Integrity · Reliability**

# Highlights

Highlights of GAO-08-166, a report to the Secretary of the Treasury

FINANCIAL AUDIT

## IRS's Fiscal Years 2007 and 2006 Financial Statements

# Exhibit K
pg. 2

## Why GAO Did This Study

Because of the significance of Internal Revenue Service (IRS) collections to overall federal receipts and, in turn, to the consolidated financial statements of the U.S. government, which GAO is required to audit, and Congress's interest in financial management at IRS, GAO audits IRS's financial statements annually to determine whether (1) the financial statements are reliable, and (2) IRS management maintained effective internal controls. GAO also tests IRS's compliance with selected provisions of significant laws and regulations and its financial systems' compliance with the Federal Financial Management Improvement Act of 1996 (FFMIA).

### What GAO Recommends

Based on prior audits, GAO made numerous recommendations to IRS to address the internal control and compliance issues that persisted during fiscal year 2007. GAO will continue to monitor IRS's progress in implementing the 144 recommendations that remain open as of the date of this report, of which 69 relate to the material weakness in information security.

IRS agreed with the report's findings and noted that it fairly presented IRS's progress and challenges. IRS noted that improving information security continues to be a priority, and that it has a solid management team in place to address remaining financial management challenges.

For a fuller understanding of GAO's opinion on IRS's fiscal years 2007 and 2006 financial statements, readers should refer to the complete audit report, available by clicking on GAO-08-166, which includes information on audit objectives, scope, and methodology. For more information, contact Steven J. Sebastian, (202) 512-3406, sebastians@gao.gov.

## What GAO Found

In GAO's opinion, IRS's fiscal years 2007 and 2006 financial statements are fairly presented in all material respects. However, serious internal control and financial management systems deficiencies continued to make it necessary for IRS to rely on resource-intensive compensating processes to prepare its financial statements. Because of these and other deficiencies, IRS did not, in GAO's opinion, maintain effective internal controls over financial reporting (including safeguarding of assets) or compliance with laws and regulations, and thus did not provide reasonable assurance that losses, misstatements, and noncompliance with laws and regulations material in relation to the financial statements would be prevented or detected on a timely basis.

IRS has continued to make significant strides in addressing its financial management challenges and has substantially mitigated several material weaknesses in its internal controls. For example, IRS (1) enhanced its reporting of tax receipts and accelerated its certification of excise tax receipts to recipient trust funds, (2) issued its first cost accounting policy to serve as guidance for costing its services and activities, (3) enhanced its use of available information to better target collection efforts on outstanding tax debt and reduce the risk of improper refund disbursements, and (4) made progress in establishing the framework for implementing a subsidiary ledger for its tax administration activities. However, IRS's ability to fully address its remaining financial management issues largely depends on addressing the limitations of its automated systems used to process tax-related activities. IRS has also not determined how to apply the cost information that resides in its core general ledger system for non-tax activities to the activities processed by its separate tax processing systems. Thus, it is unclear how or when these issues will be resolved. GAO continues to consider issues related to IRS's controls over financial reporting, management of unpaid assessments, collection of revenue and issuance of tax refunds, and information security to be material weaknesses. Additionally, while IRS continued to make progress in addressing weaknesses in controls over hard-copy taxpayer receipts and data, GAO concluded that remaining issues related to this activity constituted a significant deficiency. Also, GAO found that IRS was not always in compliance with the law concerning the timely release of tax liens.

IRS management faces serious challenges from its continued use of obsolete financial management systems that do not conform to the requirements of FFMIA. These challenges adversely affect IRS's ability to fulfill its responsibilities as the nation's tax collector because it is unable to routinely obtain comprehensive, timely, accurate, and useful information for day-to-day decision making. In addition, as IRS continues to progress toward ever more automated financial management processes, the presence of material weaknesses in controls over these systems, especially in the area of information security, could have serious implications for our ability to determine whether IRS's financial statements are fairly stated.

# Material Weaknesses, Significant Deficiency, and Compliance Issues

## Exhibit K
### pg. 3

## Material Weaknesses

During our audits of the Internal Revenue Service's (IRS) fiscal years 2007 and 2006 financial statements, we continued to identify four material weaknesses in internal controls. These material weaknesses have given rise to significant management challenges that have (1) impaired management's ability to prepare financial statements and other financial information without extensive compensating procedures, (2) limited the availability of reliable information to assist management in effectively managing operations on an ongoing basis, (3) reduced IRS's effectiveness in enforcing the Internal Revenue Code, (4) resulted in errors in taxpayer accounts, (5) increased taxpayer burden, and (6) reduced assurance that data processed by IRS's information systems are reliable and appropriately protected. The issues that we have identified and discuss in this report relate to IRS's controls over (1) financial reporting, (2) unpaid tax assessments, (3) tax revenue and refunds, and (4) information security. We reported on each of these issues last year[1] and in prior audits. We highlight these issues and a significant deficiency related to hard-copy tax receipts and taxpayer information in the following sections. Less significant weaknesses we identified in IRS's system of internal controls and its operations will be reported to IRS separately.

In previous years, we reported, as a component of the material weakness in financial reporting, that IRS did not separately report the amounts of revenue it collected for three of the federal government's three largest revenue sources—Social Security, hospital insurance, and individual income taxes. Additionally, we reported that IRS was unable to determine, at the time of payment of excise taxes, to which trust funds the excise tax receipts are attributable. This resulted in the federal government depending on a complex, multistep process that is susceptible to error to distribute excise taxes to the recipient trust funds. IRS has taken action to address both of these issues. During fiscal year 2007, IRS disclosed information relating to Social Security and hospital insurance revenue sources as other accompanying information to its financial statements, and also began presenting the most recent available information on the amount of excise tax receipts certified to the Airport and Airways, Black Lung Disability, and Highway Trust Funds in its Management Discussion and Analysis. Including more specific information on the federal government's major revenue sources and disclosing information on excise tax

---

[1]GAO, *Financial Audit: IRS's Fiscal Years 2006 and 2005 Financial Statements*, GAO-07-136 (Washington, D.C.: Nov. 9, 2006).

# Exhibit K
## pg. 4

| Unpaid Tax Assessments | During fiscal year 2007, we continued to find serious internal control issues that affected IRS's management of unpaid tax assessments. Specifically, we continued to find (1) IRS lacked a subsidiary ledger for unpaid tax assessments that would allow it to produce accurate, useful, and timely information with which to (2) manage and report externally, and (2) errors and delays in recording taxpayer information, payments, and other activities. While IRS is making progress in addressing these issues, these conditions nevertheless continued to hinder IRS's ability to effectively manage its unpaid tax assessments.[6] |
|---|---|

IRS continues to lack a detailed listing, or subsidiary ledger, that tracks and accumulates unpaid tax assessments and their status on an ongoing basis for external reporting. IRS recognizes the seriousness of this deficiency and is working to address this matter. In fiscal year 2006, IRS began a phased-in implementation of CDDB. One of the key objectives of CDDB is to ultimately serve as a subsidiary ledger for IRS's tax administration activities, including tax revenue receipts, tax refund disbursements, and unpaid tax debt, by linking account information in IRS's master files[7] with IRACS. The first phase of CDDB primarily consisted of implementing computer programs that analyze and classify related taxpayer accounts from IRS's master file that are associated with unpaid payroll taxes. However, these programs only had the capability to process less complex accounts recorded after August 2001. During fiscal year 2007, IRS enhanced CDDB to analyze and classify a larger percentage of unpaid payroll tax accounts, though it is still unable to process all such accounts. Additionally, IRS enhanced CDDB to begin journalizing tax debt information from its master files to its general ledger files weekly. This is a significant step in establishing CDDB's capability to serve as a subsidiary ledger for unpaid tax debt. However, IRS is presently unable to use CDDB as its subsidiary

---

[6]Unpaid tax assessments consist of (1) federal taxes receivable, which are taxes due from taxpayers for which IRS can support the existence of a receivable through taxpayer agreement or a favorable court ruling; (2) compliance assessments where neither the taxpayer nor the court has affirmed that the amounts are owed; and (3) write-offs, which represent unpaid tax assessments for which IRS does not expect further collections because of factors such as the taxpayer's death, bankruptcy, or insolvency. Of these three classifications of unpaid tax assessments, only net federal taxes receivable are reported on the principal financial statements.

[7]IRS's master files contain detailed records of taxpayer accounts. However, the master files do not contain all the details necessary to properly classify or estimate collectibility for unpaid tax assessment accounts.

# Exhibit K
## pg. 5

ledger for posting tax debt information to its general ledger in a manner that ensures reliable external reporting.

Specifically, to report balances for taxes receivable and other unpaid tax assessments in its financial statements and required supplemental information, IRS must continue to apply statistical sampling and estimation techniques to master file data processed through CDDB at year-end. Even though CDDB is capable of analyzing master file data weekly to produce tax debt information classified into the various financial reporting categories (taxes receivable, compliance assessments, and write-offs), this information contains material inaccuracies. For example, through its use of its statistical sampling and estimation techniques, IRS identified errors necessitating over $20 billion in adjustments to the year-end gross taxes receivable balance produced by CDDB. Thus, while the use of CDDB has refined this process, it continued to take IRS several months to complete, required multibillion-dollar adjustments, and produced amounts that after adjustments were still only reliable as of the last day of the fiscal year. Consequently, the lack of a fully functioning subsidiary ledger continues to inhibit IRS's ability to develop reliable and timely financial management reports useful for ongoing management decisions and external reporting. Full operational capability of CDDB is still several years away and depends on the successful implementation of future system releases planned through 2009.

IRS's management of unpaid tax assessments also continued to be hindered by inaccurate tax records. We continued to find errors and omissions in taxpayer records resulting from IRS's failure to record information accurately and timely. Such errors directly affect the accuracy of the classified tax debt information produced by CDDB. Additionally, such errors in IRS records can cause frustration to taxpayers who either do not owe the debt or owe significantly lower amounts.

For example, during our audit we found that IRS erroneously created a second account for the same taxpayer when it recorded the taxpayer's $24 million estate tax assessment into an account with an invalid taxpayer identification number. The taxpayer had previously made payments to fully pay the amount of the estate tax. However, because IRS erroneously recorded the tax assessment into this second account, it created a balance due, which triggered a notice for taxes due being sent to the taxpayer with related penalties and interest for over $32 million. IRS identified this error when it selected the taxpayer's account as part of its statistical sampling and estimation process for deriving the balances of net taxes receivable

# Exhibit K

## pg. 6

and other unpaid tax assessments for year-end financial reporting. In another example, IRS assessed almost $5 million in penalties against a business for failing to provide a required supporting schedule along with its quarterly payroll tax return. When IRS subsequently examined the taxpayer's return, it determined that the required schedule was in fact attached to the return. In both of these cases, IRS subsequently identified and corrected its error, but not before inconveniencing the taxpayers. Additionally, IRS had to make multimillion-dollar adjustments to the account balances because these errors were in IRS's master file records at the point in time that IRS extracted the account information to estimate and record its balance of taxes receivable and other unpaid tax assessments for year-end financial reporting.

As in prior years,[8] we continued to find errors involving IRS's failure to properly record payments to all related taxpayer accounts associated with unpaid payroll taxes.[9] IRS's current systems continued to be unable to automatically link each of the multiple tax assessments made for the one tax liability. Consequently, if the business or any officer of that business paid some or all of the outstanding taxes, IRS's systems were unable to automatically reflect the payment as a reduction in the amounts owed on any related accounts. Over the past several years, IRS has taken several steps to compensate for the lack of an automated link between related accounts. For example, IRS manually inputs a code in each account that cross-references it to other related accounts. In addition, since August 2001, IRS has established procedures to more clearly link each penalty assessment against an officer to a specific tax period of the business account. In July 2003, IRS also began phasing in the use of an automated trust fund recovery penalty system that is intended to properly cross-reference payments received and thus eliminate the opportunity for errors that plague the current manual process.

---

[8]GAO-07-136.

[9]When a company does not pay the taxes it withholds from employees' wages, such as Social Security or individual income tax withholdings, IRS has the authority to assess all responsible officers individually for the taxes withheld from employees. Although assessed to multiple parties, the liability need only be paid once. Thus, IRS may record tax assessments against each of several individuals for the employee-withholding component of the payroll tax liability of a given business in an effort to collect the total tax liability of the business. The tax assessments made against business officers are known as trust fund recovery penalties. See 26 U.S.C. § 6672 and implementing IRS guidance in the *Internal Revenue Manual* at § 4.23.9.13, Trust Fund Recovery Penalty (Mar. 1, 2003).

Appendix I
Material Weaknesses, Significant Deficiency,
and Compliance Issues

# Exhibit K
## pg. 7

Although IRS is making improvements in its processes for recording trust fund recovery penalties, our work in fiscal year 2007 continued to find deficiencies in this process, leading to errors in taxpayers' accounts. In our testing of 76 statistically selected payments recorded on trust fund recovery penalty accounts established since August 2001, we found 9 instances in which IRS did not properly record payments received on all related taxpayer accounts. Based on our testing, we estimate that about 12 percent of trust fund recovery penalty payment transactions posted to accounts established since August 2001 could contain inaccuracies.[10]

IRS processing errors or delays also contribute to inaccurate tax records and result in IRS having to make adjustments as part of its process for estimating the balances of net taxes receivable and other unpaid tax assessments, which IRS reports on its balance sheet and the required supplemental information to its financial statements, respectively. During our audit, we found a case where a taxpayer signed a document in November 2006 agreeing to $1.4 million of additional taxes owed. However, as of July 2007, IRS had not recorded this tax assessment on the taxpayer's master file account. Since this was a valid tax assessment agreed to by the taxpayer and established during fiscal year 2007, IRS had to make a $1.4 million adjustment to the balance in the taxpayer's account.

Furthermore, such processing errors and delays contribute to IRS's inability to timely release federal tax liens against taxpayers once taxpayers have fully satisfied or are otherwise relieved of their tax liability. As with the other issue previously described, delays by IRS in recording bankruptcy discharges and in researching and applying taxpayer payments that cover multiple tax periods result not only in inaccurate tax records but delays in IRS's release of federal tax liens. This, in turn, causes undue hardship and burden to taxpayers who are attempting to sell property or apply for commercial credit.[11]

The progress IRS has made to date with CDDB is an important step in moving toward a subsidiary ledger that links account information in IRS's master files with its general ledger for tax administration activities. However, IRS must still address the issues that prevent it from using unadjusted CDDB information to support the general ledger for external

---

[10]We are 95 percent confident that the error rate does not exceed 20 percent.

[11]This issue is discussed further in the Compliance Issues section of this report.

# Exhibit K
## pg. 8

reporting. This will require further enhancements to CDDB to enable it to more accurately distinguish between the three categories of unpaid tax assessments—taxes receivable, compliance assessments, and write-offs—so that balances are ultimately recorded in the proper general ledger accounts. Also, in order to ensure accurate financial reporting and to minimize undue burden on taxpayers, IRS faces a continuing challenge to address the factors that cause inaccuracies in taxpayer account records and to maintain the integrity of the account information going forward.

## Tax Revenue and Refunds

During fiscal year 2007, we continued to find that IRS's internal controls were not fully effective in ensuring that it is maximizing the federal government's ability to collect tax revenues owed and minimizing the risk of paying improper tax refunds. IRS has a broad array of operational management information available to it and has used innovative approaches to develop and apply this information to increase tax collections and reduce improper tax refunds. However, IRS does not, at present, have agencywide cost-benefit information, related cost-based performance measures, or a systematic process for ensuring it is using its resources to maximize its ability to collect what is owed and minimize the disbursements of improper tax refunds in the context of its overall mission and responsibilities. These deficiencies inhibit IRS's ability to appropriately assess and routinely monitor the relative merits of its various initiatives and adjust its strategies as needed. This, in turn, can significantly affect both the level of tax revenue collected and the magnitude of improper refunds paid.

As of September 30, 2007, IRS's inventory of cumulative unpaid tax assessments totaled $263 billion. Of this amount, $26 billion, about 10 percent, is estimated to be collectible.[12] In addition, based on data accumulated during a study of individual tax returns filed in 2001, IRS estimated that taxes totaling about $345 billion were not paid to the federal government. Of this amount, IRS estimates that its enforcement efforts will eventually recover about $55 billion, leaving a net $290 billion uncollected. With respect to improper tax refunds, IRS successfully stopped over

---

[12]The $26 billion represents those unpaid tax assessments that meet the definition of federal taxes receivable under federal accounting standards and which IRS expects to collect.

# Exhibit K

## pg. 9

We commend the studies and initiatives IRS has undertaken to address aspects of this material weakness and believe important progress has been made. However, IRS has not yet institutionalized these activities to cover the totality of unpaid taxes and potential improper tax refunds. Additionally, the absence of agencywide cost-benefit information and related cost-based performance measures continues to hamper IRS's ability to formulate a focused, effective, and efficient strategy for the collection of unpaid taxes and prevention of improper tax refunds.

Given the environment in which it operates, IRS cannot be expected to collect all taxes owed or prevent all improper tax refunds claimed from being disbursed through enhancements to its internal controls alone. As noted earlier, the level of uncollected taxes and improper refunds is affected by many factors beyond IRS's control. Also, in deploying its resources to its various programs and activities, IRS must consider other factors besides maximizing revenue collections, minimizing improper refund payments, and minimizing costs incurred, such as ensuring it is applying the tax code fairly and improving overall compliance. Nevertheless, it is incumbent upon IRS to make optimum use of its available resources and to be able to credibly demonstrate it is doing so to Congress and the public. In fiscal year 2007, the continued lack of reliable and timely agencywide cost-benefit information and related cost-based performance measures, coupled with the lack of an agencywide strategy to employ these tools, inhibited IRS's ability to meet these objectives.

## Information Security

To effectively fulfill its tax processing responsibility, IRS relies extensively on computerized systems to support its financial and mission-related operations. Effective information system controls are essential to ensuring that taxpayer and financial information is adequately protected from inadvertent or deliberate misuse, fraudulent use, improper disclosure, or destruction. Ineffective system controls can impair the accuracy, completeness, and timeliness of information used by management and, in the absence of effective compensating procedures, increase the potential for undetected material misstatements in the agency's financial statements.

Significant weaknesses in information security controls continue to threaten the confidentiality, integrity, and availability of IRS's financial processing systems and information. In fiscal year 2007, we identified further weaknesses in controls for protecting access to systems and information, as well as other information security controls that affect key financial systems—particularly IFS and IRACS. For example, sensitive

# Exhibit K

## pg. 10

information, including user IDs, passwords, and software code for mission-critical applications, was accessible on an internal Web site to anyone who could connect to IRS's internal network—without having to log in to the network. The information gained through this access could be used to alter data flowing to and from IFS. In addition, configuration flaws in the mainframe allowed users unrestricted access to all programs and data on the mainframe, including IRACS. Because this access was not controlled by the security system, no security violation logs would be created, reducing IRS's ability to detect unauthorized access. Weaknesses also existed in other areas, such as protecting against unauthorized physical access to sensitive computer resources and patching servers to protect against known vulnerabilities.

IRS has made limited progress in resolving previously reported security weaknesses in the controls for its financial and tax processing systems and information. To its credit, IRS implemented controls for user IDs on certain critical servers, improved physical protection for its procurement system, developed a security plan for IRACS, and upgraded servers that had been using obsolete operating systems. However, IRS has not completed corrective actions for other previously reported weaknesses. About 70 percent of the 98 weaknesses we previously identified that remained unresolved at the end of our fiscal year 2006 audit had not been corrected at the end of our fiscal year 2007 audit. These weaknesses included having passwords that were not complex enough to avoid being guessed or cracked, not physically protecting sensitive computer resources, and not encrypting sensitive information, such as user IDs and passwords, as it is transferred across the network. The agency's procurement system was particularly at risk, with issues such as not (1) appropriately restricting access to sensitive programs, (2) logging security-relevant events to provide audit trails, and (3) applying vendor-supplied system patches in a timely manner to protect against known vulnerabilities. These outstanding weaknesses, along with the new weaknesses identified during our fiscal year 2007 financial audit, increase the risk that data processed by the agency's financial management systems are not reliable.

A key reason for the presence of these information security weaknesses in IRS's financial systems was that it has not yet fully implemented a security

# Exhibit K

## pg. 11

program[23] to ensure that controls are effectively established and maintained. Although IRS continues to make important progress in implementing such a program, it has not fully or consistently implemented program requirements for key information systems. For example, policies for monitoring security-relevant activities on the mainframe were not adequate to ensure that critical system changes were identified and authorized. In addition, IRS had not updated contingency plans for key general support systems, or documented that those plans were tested annually. Furthermore, the plans did not identify essential IRS business processes required to be restored if normal operations were disrupted. Until IRS takes additional steps to fully implement key elements of its information security program, its facilities, computing resources, and information will remain vulnerable to inappropriate use, modification, or disclosure, and agency management will have limited assurance of the integrity and reliability of its financial and taxpayer information.

The newly identified deficiencies in fiscal year 2007 and the unresolved deficiencies from prior audits represent a material weakness in IRS's internal controls over its financial systems. Collectively, these deficiencies reduce IRS's ability to secure its financial and sensitive taxpayer information and, in the absence of effective compensating procedures, increase the potential for undetected material misstatements in the agency's financial statements. We plan to issue a separate report on the newly identified deficiencies and the status of previously identified IRS information security deficiencies.

## Significant Deficiency

In addition to the material weaknesses previously discussed, we identified a significant deficiency concerning weaknesses in IRS's internal controls over hard-copy tax receipts and taxpayer information.

## Hard-Copy Tax Receipts and Taxpayer Information

IRS manually processes hundreds of billions of dollars of hard-copy taxpayer receipts and related taxpayer information at its service center campuses, field office taxpayer assistance centers, other field office units,

---

[23]In December 2002, Congress enacted the Federal Information Security Management Act of 2002 (FISMA), which requires agencies to develop, document, and implement an information security program. FISMA was enacted as title III of the E-Government Act of 2002 (Pub. L. No. 107-347, 116 Stat. 2946) (Dec. 17, 2002). This requirement was codified at 44 U.S.C. § 3544(b).

# Exhibit K
## pg. 12

location when document transmittal forms, which are used to specifically identify the contents of the packages shipped, remained unacknowledged by the recipient (at one service center campus, two taxpayer assistance centers, and five field office locations); (2) personally identifiable information, including federal taxpayer information, that is sent off-site was not encrypted (at four lockbox banks); and (3) there was no evidence documenting managerial review of transfer-related documents[28] (at one service center campus, seven taxpayer assistance centers, and one field office location).

IRS's progress in addressing these issues has been hampered by a lack of effective communication on newly implemented guidance and policies. Although IRS issued new guidance or revised existing requirements during fiscal year 2006 to address previously identified weaknesses, we often continued to find the same or similar weaknesses in fiscal year 2007 because IRS staff were unaware of the recent changes. For example, we found that most IRS employment office staff did not follow new juvenile hiring policies and requirements; taxpayer assistance center employees did not perform required payment and processing reviews; and, at one service center campus, a security analyst used an incorrect and outdated version of a security audit management checklist when performing a review. These internal control weaknesses increase IRS's vulnerability to theft or loss and expose taxpayers to increased risk of losses from financial crimes committed by individuals who inappropriately gain access to taxpayer receipts and confidential information entrusted to IRS.

## Compliance Issues

Our work on compliance with selected provisions of laws and regulations disclosed one instance of noncompliance that is reportable under U.S. generally accepted government auditing standards and OMB guidance. This instance relates to the release of federal tax liens against taxpayers' property. We also found that IRS's financial management systems do not substantially comply with the requirements of FFMIA.

---

[28]Transfer-related documents include courier, mail, and deposit logs and Forms 795 and 3210, which accompany taxpayer receipts and other information shipped to other IRS locations.

# Exhibit K

## pg. 13

## Release of Federal Tax Liens

The Internal Revenue Code grants IRS the power to file a lien against the property of any taxpayer who neglects or refuses to pay all assessed federal taxes. The lien becomes effective when it is filed with a designated office, such as a courthouse in the county where the taxpayer's property is located.[29] The lien serves to protect the interest of the federal government and as a public notice to current and potential creditors of the government's interest in the taxpayer's property. For example, federal tax liens are disclosed in credit reports of individuals. Under section 6325 of the Internal Revenue Code, IRS is required to release federal tax liens within 30 days after the date the tax liability is satisfied or has become legally unenforceable or the Secretary of the Treasury has accepted a bond for the assessed tax.

In our prior audits, we found that IRS did not always release the applicable federal tax lien within 30 days of the tax liability being either paid off or abated, as required by the Internal Revenue Code.[30] In response, IRS has taken a number of actions over the past several years to improve its lien processing. For example, IRS centralized all lien processing at its Cincinnati Service Center Campus in 2005. In addition, in July 2006, IRS enhanced various lien processing-related exception reports to include a cumulative list of unresolved lien releases, allowing it to more readily track the release status and take corrective action.

Despite the actions IRS has taken to date to improve its lien release process, our work in fiscal year 2007 continued to find that IRS did not always timely release all tax liens. In prior audits, we tested a statistical sample of tax cases with liens in which the taxpayers' total outstanding tax liabilities were either paid off or abated during the fiscal year under audit. Beginning in fiscal year 2006, IRS began performing its own test of the effectiveness of its lien release process as part of implementing the

---

[29] 26 U.S.C. §§ 6321, 6323.

[30] GAO-07-136.

# Exhibit K

## pg. 14

another case, IRS did not timely update the taxpayer's account to reflect that the taxpayer had been discharged of the taxes in bankruptcy court. In yet another case, IRS failed to timely resolve issues with the account when it showed up on an exception report. In the two remaining cases, IRS received the taxpayers' satisfying payments just prior to, or during, the annual 3 week period when IRS was scheduled to perform maintenance on its master files. During this period, IRS could not record the payment in the taxpayers' master file accounts, which delayed the initiation of the lien release process. This delay, in turn, resulted in IRS releasing the liens more than 30 days after receipt of the satisfying payments. However, the delays in these two cases exceeded the 30 day limit by only a few days.

These issues are similar to those we reported in prior audits.[33] We issued reports in January 2005 and May 2007 that discussed the factors contributing to IRS's failure to timely release federal tax liens, along with our recommendations to address those issues.[34] The continued failure to promptly release tax liens could cause undue hardship and burden to taxpayers who are attempting to sell property or apply for commercial credit.

## Financial Management Systems' Noncompliance With FFMIA

In fiscal year 2007, we continued to find that IRS's financial management systems did not substantially comply with the requirements of FFMIA. Specifically, IRS's systems did not substantially comply with FFMSR, federal accounting standards (U.S. generally accepted accounting principles), and the SGL at the transaction level. We found that IRS cannot rely solely on information from its general ledger to prepare its financial statements because the reported balance for taxes receivable, which accounted for over 83 percent of the assets reported by IRS on its balance sheet as of September 30, 2007, is the product of a complex statistical estimation process and is not supported by transaction detail or entered into IRACS. In addition, IRS (1) does not have an adequate audit trail from IRACS back to detailed records and transaction source documents for any of its material tax-related balances—tax revenues, tax refunds, and taxes receivable—and (2) cannot produce managerial cost information

---

[33]GAO-07-136.

[34]GAO, *Opportunities to Improve Timeliness of IRS Lien Releases*, GAO-05-26R (Washington, D.C.: Jan. 10, 2005), and *Management Report: Improvements Needed in IRS's Internal Controls*, GAO-07-689R (Washington, D.C.: May 11, 2007).

**Exhibit K**

**pg. 15**

consistent with Statement of Federal Financial Accounting Standards No 4, *Managerial Cost Accounting Standards.*

IRS's implementation of the first release of IFS represented a major step forward and has provided significant benefits, such as enhanced audit trails for nontax amounts and a cost module. However, IRS continues to rely on obsolete systems to process tax revenues, tax refunds, and unpaid tax assessments, including taxes receivable. IRS will need to address the limitations of these tax administration systems if it is to fully resolve many of its long-standing financial management challenges. In addition, since these systems do not interface with IFS—which accounts for and reports only IRS's nontax administrative activities—IRS will also need to determine how to overcome this separation to successfully apply the cost information in IFS to its tax-related transactions. As discussed earlier, IRS has initiated several pilot projects intended to explore ways of addressing this issue, but the ultimate solution remains unclear.

This noncompliance with FFMIA is a result of the material weaknesses discussed earlier in this report related to the inability of IRS's financial management systems to produce auditable financial statements and related disclosures that conform to U.S. generally accepted accounting principles without substantial compensating processes and significant adjustments, as well as IRS's continued inability to routinely accumulate and report the full cost of its activities. Since IRS's systems do not substantially comply with FFMSR, U.S. generally accepted accounting principles, and the SGL, they also do not comply with OMB Circular No. A-127, *Financial Management Systems* (revised Dec. 1, 2004). In its Federal Managers' Financial Integrity Act of 1982 assurance statement to Treasury, IRS reported that its financial management systems did not substantially comply with the requirements of FFMIA in fiscal year 2007.

IRS has established a remediation plan to address the conditions affecting its systems' inability to substantially comply with the requirements of FFMIA. This plan outlines the actions to be taken to resolve these issues, but because of the long-term nature of IRS's systems modernization efforts, which IRS expects will resolve many of the most serious issues, many of the planned time frames exceed the 3-year resolution period specified in FFMIA. OMB concurred with Treasury's determination that IRS could not bring its systems into substantial compliance within 3 years, and OMB

# Comments from the Internal Revenue Service

## Exhibit K

### pg. 16



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

DEPUTY COMMISSIONER

November 5, 2007

Mr. David M. Walker
Comptroller General
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Dear Mr. Walker:

Thank you for the opportunity to comment on the draft report titled, *Financial Audit: IRS's Fiscal Years 2007 and 2006 Financial Statements*. We are pleased that the Internal Revenue Service (IRS) received an unqualified opinion on the combined financial statements for the eighth consecutive year. The unqualified opinion demonstrates that the IRS accurately accounts for approximately $2.7 trillion in tax revenue receipts, $292 billion in tax refunds, and $11 billion in IRS appropriated funds.

The report recognizes the significant accomplishments the IRS made this year in addressing outstanding audit issues. It is also noteworthy that we implemented another phase of the Custodial Detail Data Base (CDDB) that created the interface between CDDB and Interim Revenue Accounting Control System (IRACS) for posting to IRACS summary unpaid assessment and accrual data.

We are dedicated to continuing to improve financial management at the IRS, as evidenced by the following additional FY 2007 achievements:

- Conducted A-123 activities by testing transaction processes material to Treasury's Consolidated Financial Statements, including 29 administrative processes related to $10 billion in administrative transactions and 6 custodial tax processes related to $2 trillion in tax revenues
- Completed required Federal Information Security Management Act activities, including contingency plan testing on 260 applications and systems and live disaster recovery testing for all major applications
- Improved the timely release of liens to 88 percent, a 19 percentage point increase from the 69 percent timeliness rate in FY 2006
- Achieved a 21 percent improvement in the Trust Fund Recovery Penalty accuracy rate through the use of CDDB to resolve issues
- Issued first published cost accounting policy
- Improved capability to capitalize or expense assets and properly account for Business System Modernization costs in internal use software
- Established the Custodial Financial Requirements Board to ensure that custodial financial requirements are included in Business System Modernization projects

**Exhibit K**

**pg. 17**

2

Improving information security continues to be a priority for the IRS. The IRS established the Office of Privacy, Information Protection, and Data Security to provide direction and oversight of the security and protection of sensitive information. We also developed an integrated Information Technology Security Schedule and Plan and a comprehensive IRS security strategy. We encrypted all laptop data and tapes used in electronic data exchange and implemented an enterprise anti-virus Internet gateway solution to detect and quarantine malicious content from invading systems.

I want to recognize the Government Accountability Office's support throughout the audit. While challenges remain, the IRS has established its ability to consistently produce accurate and reliable financial statements. We have a solid management team dedicated to promoting the highest standard of financial management, and we continue to increase the focus on information security and internal controls while improving financial reporting.

Sincerely,

Richard A. Spires

# Exhibit K
## pg. 18

| | |
|---|---|
| **GAO's Mission** | The Government Accountability Office, the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
| **Obtaining Copies of GAO Reports and Testimony** | The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's Web site (www.gao.gov). Each weekday, GAO posts newly released reports, testimony, and correspondence on its Web site. To have GAO e-mail you a list of newly posted products every afternoon, go to www.gao.gov and select "E-mail Updates." |
| Order by Mail or Phone | The first copy of each printed report is free. Additional copies are $2 each. A check or money order should be made out to the Superintendent of Documents. GAO also accepts VISA and Mastercard. Orders for 100 or more copies mailed to a single address are discounted 25 percent. Orders should be sent to:<br><br>U.S. Government Accountability Office<br>441 G Street NW, Room LM<br>Washington, D.C. 20548<br><br>To order by Phone:  Voice: (202) 512-6000<br>TDD:  (202) 512-2537<br>Fax:    (202) 512-6061 |
| **To Report Fraud, Waste, and Abuse in Federal Programs** | Contact:<br>Web site: www.gao.gov/fraudnet/fraudnet.htm<br>E-mail: fraudnet@gao.gov<br>Automated answering system: (800) 424-5454 or (202) 512-7470 |
| **Congressional Relations** | Gloria Jarmon, Managing Director, jarmong@gao.gov, (202) 512-4400<br>U.S. Government Accountability Office, 441 G Street NW, Room 7125<br>Washington, D.C. 20548 |
| **Public Affairs** | Chuck Young, Managing Director, youngc1@gao.gov, (202) 512-4800<br>U.S. Government Accountability Office, 441 G Street NW, Room 7149<br>Washington, D.C. 20548 |



PRINTED ON RECYCLED PAPER