**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| ROBERT A. MCNEIL,<br>       Plaintiff<br><br>    v.<br><br>COMMISSIONER, INTERNAL REVENUE,<br>*et al.*,<br>       Defendants |

Civil Action No. 15-1288 (CKK)

**MEMORANDUM OPINION**
(April 12, 2016)

Through this action, Plaintiff seeks to enjoin the Internal Revenue Service ("IRS"), the Attorney General, officials of the IRS and the Department of Justice, and other related persons from taking certain enumerated actions regarding the collection of taxes. All of these actions pertain to activities undertaken by the IRS or the Department of Justice in circumstances in which a person does not file a tax return. Before the Court is the United States' [4] Motion to Dismiss, filed on behalf of all of the defendants. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS Defendants' [4] Motion to Dismiss. As explained further below, the Court concludes that it has no jurisdiction over this action in light of the Anti-Injunction Act. Therefore, the Court concludes that there is no need to reach Defendants' other arguments in favor of dismissal. Furthermore, the

---

[1] The Court's consideration has focused on the following documents:

- Pl.'s Original Complaint ("Compl."), ECF No. 1;
- United States' Mot. to Dismiss ("Defs.' Mot."), ECF No. 4;
- Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 6 and
- United States' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply"), ECF No. 7.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

Court concludes that there is no basis for Plaintiff's [8] Motion to Resolve Fact Disputes. That motion is denied, as well, and this case is dismissed in its entirety.

## I. BACKGROUND

The Court limits its presentation of the background to the key facts that are necessary for the Court's resolution of the fundamental issue presented in the pending motion: whether the Court is deprived of jurisdiction over this action in light of the jurisdiction-stripping provision of the Anti-Injunction Act.

### A.  Statutory and Regulatory Scheme

Pursuant to Internal Revenue Code section 6020, "[i]f any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary [of the Treasury] shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise." 26 U.S.C. § 6020(b)(1). Furthermore, "[a]ny return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes." *Id.* § 6020(b)(2). In other words, if a person fails to file a tax return, the Government is required to produce a substitute return on behalf of the taxpayer, and that return may be used for other tax-related purposes. *See Byers v. C.I.R.*, 740 F.3d 668, 671 (D.C. Cir.), *cert. denied*, 135 S. Ct. 232, *reh'g denied,* 135 S. Ct. 887 (2014). Among other such purposes, substitute returns may be used for the assessment of deficiencies against the taxpayers. *See id.* ("If a taxpayer fails to file a return, the IRS may create a substitute tax form under 26 U.S.C. § 6020(b) and file a notice of deficiency for the total amount it calculates as due.").

The regulations promulgated by the Department of the Treasury further elaborate this scheme. Specifically, "[i]f no return is made, or if the return … does not show any tax, for the

2

purpose of the definition 'the amount shown as the tax by the taxpayer upon his return' shall be considered as zero." 26 C.F.R. § 301.6211-1(a). As a result, "if no deficiencies with respect to the tax have been assessed, or collected without assessment, and no rebates with respect to the tax have been made, the deficiency is the amount of the income tax imposed by subtitle A, the estate tax imposed by chapter 11, the gift tax imposed by chapter 12, or any excise tax imposed by chapter 41, 42, 43, or 44." *Id.* In short, if no return has been filed, no deficiencies have *already* been assessed or collected, and no tax has been paid via a rebate, the amount of the deficiency—i.e., the amount owed by the taxpayer—is the amount of taxes due that is calculated by the IRS. The IRS performs this calculation by creating a substitute return under section 6020(b).

The applicable regulations further lay out the process for producing these substitute returns. The regulations provide that the IRS and its agents "may make the return by gathering information and making computations through electronic, automated or other means to make a determination of the taxpayer's tax liability." 26 C.F.R. § 301.6020-1(b)(1). The regulations then set out the parameters of the process for creating such a return:

> **(2) Form of the return.** A document (or set of documents) signed by the Commissioner or other authorized Internal Revenue Officer or employee shall be a return for a person described in paragraph (b)(1) of this section if the document (or set of documents) identifies the taxpayer by name and taxpayer identification number, contains sufficient information from which to compute the taxpayer's tax liability, and purports to be a return. A Form 13496, "IRC Section 6020(b) Certification," or any other form that an authorized Internal Revenue Officer or employee signs and uses to identify a set of documents containing the information set forth in this paragraph as a section 6020(b) return, and the documents identified, constitute a return under section 6020(b). A return may be signed by the name or title of an Internal Revenue Officer or employee being handwritten, stamped, typed, printed or otherwise mechanically affixed to the return, so long as that name or title was placed on the document to signify that the Internal Revenue Officer or employee adopted the document as a return for the taxpayer. The document and signature may be in written or electronic form.

26 C.F.R. § 301.6020-1. Finally, as stated above, returns prepared in this manner by the IRS are "good and sufficient for all legal purposes." 26 C.F.R. § 301.6020-1(b)(3).

**B. Plaintiff's Claims and Relief Sought**

In his Complaint, Plaintiff essentially claims that the IRS falsifies records in the process of creating substitute returns and that the Government then uses the allegedly falsified records in taking legal action against Plaintiff and others. Plaintiff claims that the Government's actions violate the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the Fifth Amendment to the United States Constitution. The Court reserves any further presentation of facts underlying these claims, to the extent that they are material to the Court's resolution of issues raised by the pending motion, for the discussion below. However, the Court presents *in full* the relief requested by Plaintiff through the Complaint, as it pertains directly to the legal question before the Court. Plaintiff requests that the Court:

74. Enjoin IRS from presuming, in any case involving 1040 income taxes, that a zero amount due was shown on an imaginary return pursuant to any regulation, including §301.6211, or making any other improper assumptions/presumptions concerning Plaintiff as justification for falsifying IRS internal records;

75. Enjoin the Commissioner, his representatives, agents, employees, attorneys, those persons in active concert or participation with him, from directly or indirectly:

   a. Falsifying/manipulating, in the future, **any computer system of records** such as the IMF, NMF, AIMS, BMF, CADE2, (for examples), which might be or become associated with Plaintiff, by using any procedure associated with requests to IRS to perform a substitute for return at the request of a victim, when no such election was made, which precise act the Commissioner's employees committed, resulting in damage to Plaintiff;

   b. Falsifying/manipulating, in the future, **any computer system of records** to show IRS supposedly filed a substitute for return on a certain date, when no such substitute for return was actually prepared on that date, which precise act IRS committed, resulting in damage to Plaintiff;

   c. Making or inferring in **any single or series of "certifications"** that might reasonably be, or become, associated with Plaintiff, the false claims that a Substitute For Return was supposedly prepared on a date when it was not, which act the Commissioner may perform to damage Plaintiff, as he has concerning others;

4

d.   Creating "self-authenticating" certifications concerning records he maintains regarding Plaintiff to prevent IRS employees or expert witnesses from being cross-examined during tax court or district court cases regarding any system of IRS records, any individual income tax return, or any issue related thereto, which precise act the Commissioner commits routinely;

e.   **Knowingly using any falsified system of records** which might be, or might reasonably become, associated with Plaintiff, **for any purpose whatsoever,** which precise act the Commissioner committed, resulting in damage to Plaintiff;

f.   Creating or using a "dummy", blank pretended return to form the basis for later pretension of making "changes" thereto, to circumvent the Defendants' lack of authority to perform substitute 1040 income tax returns;

76.   Enjoin the Attorney General of the United States, her representatives, agents, employees, attorneys, those persons in active concert or participation with her, from directly or indirectly:

a.   Using any fraudulent "self-authenticating" IRS document to prevent the cross-examination of IRS witnesses concerning 1.) authority of IRS to take any action, 2.) authority of any individual IRS employee to take any action, or 3.) accuracy of internal records maintained by IRS concerning individuals and the individual income tax;

b.   Instructing United States Attorneys to conceal exculpatory evidence in IRS files concerning so-called non-filers, by using "self-authenticating", but falsified, documents, provided by IRS;

c.   Falsely stating or inferring in any document submitted, or to be submitted, to a United States Court, in cases involving "income tax non-filers", the false claim that the authority Congress delegated to the Secretary at §6020(b) extends beyond its limitation to employment, excise and partnership taxes;

d.   Submitting in any case before a United States Court, whether judicial or administrative, hearsay concerning IRS internal procedures which was procured by fraud of the IRS on United States tax court judges, which hearsay contradicts IRS actual internal practices;

77.   Enjoin any artifice, scheme, device, sham, presumption or procedure by IRS or DoJ as part of any conspiracy to bypass the rights of individuals in connection with income taxes, in violation of 28 USC §241;

78.   Grant Plaintiff such other relief, including court costs and cost of researching the scheme, as is just and equitable.

Pl.'s Compl. ¶¶ 74-78.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court begins with the presumption that it does not have subject matter jurisdiction over a case. *Id.* To survive a motion to dismiss pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.,* 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

## III. DISCUSSION

Defendants argue that this Court has no jurisdiction over any of the putative claims in this case because of the jurisdiction-stripping provision of the Anti-Injunction Act. As explained below, the Court agrees with Defendants that this Court is deprived of jurisdiction over this

action in its entirety by that statute. Therefore, the Court does not reach the Government's alternative argument that Plaintiff has no standing to bring this action. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999) (law does not require particular sequencing of jurisdictional issues). Moreover, in light of this conclusion, the Court *may not* address the Government's remaining argument that, even if the Court had jurisdiction over this case, the Complaint would fail to state a claim. *See Anderson v. Carter*, 802 F.3d 4, 9-10 (D.C. Cir. 2015) ("[O]nce we have established that we have no subject-matter jurisdiction, we can proceed no further.").

Under the Anti-Injunction Act, except as explicitly provided by the statute, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."[2] 26 U.S.C. § 7421(a). "The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund." *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962). "As the Supreme Court explained, the provision reflected 'appropriate concern about the ... danger that a multitude of spurious suits, or even suits with possible merit, would so interrupt the free flow of revenues as to jeopardize the Nation's fiscal stability.' " *Cohen v. United States*, 650 F.3d 717, 724 (D.C. Cir. 2011) (quoting *Alexander v. "Americans United" Inc.*, 416 U.S. 752, 769 (1974) (Blackmun, J., dissenting)).

While the Anti-Injunction Act does not bar all legal claims pertaining to taxation, it does bar "those suits seeking to restrain the assessment or collection of taxes." *Id.* (quoting *Bob Jones Univ. v. Simon*, 416 U.S. 725, 737 (1974)). Framing a claim that aims to restrain the assessment

---

[2] Plaintiff does not claim that this action falls under one of the statutorily enumerated exceptions to the jurisdiction-stripping provision.

or collection of taxes in constitutional terms does not open the courthouse door to such claims. *See We the People Found., Inc. v. United States*, 485 F.3d 140, 143 (D.C. Cir. 2007) (no jurisdiction over claim that seeks to "restrain the Government's collection of taxes, which is precisely what the Anti–Injunction Act prohibits, notwithstanding that plaintiffs have couched their tax collection claim in constitutional terms.").

This Anti-Injunction Act directly strips this Court of jurisdiction over this case. As the Court's recitation of the relief sought by Plaintiff above indicates, Plaintiff seeks to restrain various activities taken by the IRS, the Department of Justice, and associated government officials to facilitate the assessment and collection of taxes from individuals who have not filed tax returns. Plaintiff claims that he is not seeking to restrain the use of substitute returns, wholesale. Instead, he argues that he only seeks to restrain the particular actions taken by the Government to implement this scheme, which Plaintiff characterizes as fraudulent. *See* Pl.'s Opp'n at 8 ("Said differently, if Plaintiff WERE seeking to prevent IRS from performing substitute 1040 income tax returns, or using valid certifications, the AJA WOULD apply to bar the case. But since he only seeks to enjoin the precise falsifications identified above concerning IRS' IMF records and public facing certifications, the AJA has no arguable application whatsoever to this case."). But any such differences are of no consequence. All the actions of which Plaintiff complains and that are the bases for Plaintiff's request for relief are actions taken in the process of assessing and collecting taxes: from the presumption that the amount of taxes paid by a non-filer is zero, Compl. ¶ 74, to falsifying and/or modifying the IRS computer record system used to generate substitute returns, *id.* ¶ 75, to using those allegedly falsified returns and certifications in proceedings related to the assessment and collection of taxes, *id.* ¶ 76. In light of the relief requested, it is clear that this suit is barred by the Anti-Injunction Act in its entirety.

Nor does Plaintiff's claim that he only seeks to restrain *unlawful* activities constitute any answer to Defendants' jurisdictional argument. The Anti-Injunction Act strips this Court of jurisdiction to consider claims that seek to restrain the "assessment or collection" of taxes even if allegedly illegal acts serve as the bases for such a claim. Indeed, this very effect is the essence of a jurisdictional provision such as the one found in the Anti-Injunction Act. It strips a court of subject matter jurisdiction *regardless* of the supposed merits of a plaintiff's statutory or constitutional claim.

Indeed, in what appear to be a similar challenge to the creation and use of substitute returns, another district court judge also concluded that the Anti-Injunction Act withdrew the district court's subject matter jurisdiction. *See Ellis v. Comm'r of Internal Revenue Serv.*, 67 F. Supp. 3d 325, 333 (D.D.C. 2014), *aff'd sub nom. Ellis v. C.I.R.*, 622 F. App'x 2 (D.C. Cir. 2015) (Mem.). Furthermore, the judgment of the district court was affirmed by the United States Court of Appeals for the District of Columbia Circuit in an unpublished opinion. The Court of Appeals' decision rested wholly on its conclusion that "Appellant has not shown that the district court erred in concluding that his claims are barred by the Anti-Injunction Act, the purpose of which is to allow the government to assess and collect taxes without judicial interference." *Ellis*, 622 F. App'x at 3 (citations omitted). Insofar as Plaintiff argues that *Ellis* included different claims than those in this case, the Court notes that it appears, based on the district court's decision *Ellis*, that the facts and the claims in the two cases have a high degree of similarity. *See Ellis*, 67 F. Supp. 3d at 328-29, 332-33. In any event, any differences between the two cases are ultimately immaterial because the Court concludes the Anti-Injunction Act strips this Court of jurisdiction over all of the claims in this case.

9

Therefore, the Court dismisses this case for lack of subject matter jurisdiction, and the Court does not reach Defendants' alternative arguments as to why dismissal of this case is required. Because the putative factual disputes raised by Plaintiff [8] Motion to Resolve Fact Disputes are of no consequence to the resolution of the jurisdictional issues before the Court, the Court denies that motion. Concomitantly, the Court denies as moot Defendants' [9][10] Motion to Strike Improper Surreply, through which Defendants seek to strike the Plaintiff's submission filed under the caption "Motion to Resolve Fact Disputes."

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [4] Motion to Dismiss; DENIES Plaintiff's [8] Motion to Resolve Fact Disputes; and DENIES AS MOOT Defendants' [9][10] Motion to Strike Improper Surreply. This case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: April 12, 2016

                                        /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge