**In the District Court of the United States**
**For the District of Columbia**

| Robert A. McNeil, | § |
| Plaintiff | § |
| | § |
| V. | § | District Cause No. 1:15-CV-1288  *CKK* |
| | § |
| Commissioner, Internal Revenue | § |
| & United States Attorney General, | § |
| Defendants | § |

## MOTION TO ALTER/AMEND DISMISSAL
## AND FOR ORAL ARGUMENT
## with BRIEF in SUPPORT

**May it please the Court:**

As a preliminary, Plaintiff and his putative Co-Class Representatives appreciate the respect the Court has shown him, despite attempts by the Government to denigrate their efforts to enjoin commission by the government of <u>crimes</u> to enforce the so-called "income tax" exaction. The Court's even-handed treatment is duly noted.

**To the Merits:**

Pursuant to Rule 59(e), Plaintiff respectfully submits for the Court's candid consideration that it committed manifest error when holding that the Anti-Injunction Act (AIA) "strips" courts of jurisdiction in all cases related to the income tax. The Court appears to have failed to account for its power founded in equity.[1]

Equitable jurisdiction can be exercised when 1.) plaintiffs correctly relate exceptional or extraordinary facts, when 2.) no adequate remedy at law exists, 3.) when irreparable harm will

---

[1] Although law and equity were merged in 1938 with the adoption of the Federal Rules of Civil Procedure, equity lives, as shown in the Brief accompanying this Motion. Perhaps unfamiliar to modern ears, equitable jurisdiction exists in cases where certain justiciability requirements are met.



Mail Room

MAY 4 2016

result from failure of a Court to exercise that power, and when 4.) there is a 100% certainty a plaintiff will prevail.  If ever a case justified invocation of the Court's equity jurisdiction, this one does.

As shown in the accompanying Brief in Support of this Motion, the received wisdom that the AIA is "jurisdictional" relies upon the Supreme Court's past permissive use of the term "jurisdiction", from which jurisprudence the Court has recently backed away.  By examining the text, structure, context, early interpretation of the AIA and more recent cases, it becomes obvious the Act in truth merely governs the equitable power of the Court to ensure that, in garden variety tax matters, proper procedure is followed before a district court intervenes.

The AIA is not the absolute barrier to suits such as the class action to which Plaintiff's case belongs, despite conventional wisdom to the contrary.[2]  In fact, the traditional tools of statutory interpretation and holdings of the Supreme Court indicate the AIA is not "jurisdictional" at all, at least not in the traditional way held by this Court.  Equitable exceptions to the Act still exist, yet the Court inexplicably left its equity power unmentioned.

After reviewing the arguments presented in the Brief accompanying this Motion, which supports this Court's exercise of its equitable power in the teeth of the claimed insuperable barrier of the AIA, Plaintiff respectfully requests the Court set ORAL ARGUMENT at its earliest convenience to:

1. Confirm the Court does have equitable power which can be exercised in certain cases;

2. Determine whether Plaintiff (and his Co-Class Representatives) have pled "exceptional and extraordinary facts" tending to prove violation of their constitutionally protected Fourth and Fifth Amendment rights in relation to the "income tax" exaction;

---

[2]  Plaintiff is indebted to the excellent research and scholarship of Erin Morrow Hawley in her Article entitled "The Equitable Anti-Injunction Act", Notre Dame Law Review, 2014, Volume 90:1, pg. 81.

3. Determine whether Congress has provided any adequate alternative remedy at law to end the government's scheme to fabricate records (in violation of the criminal law and Plaintiff's vigilantly defended rights) for use as colorable justification to seize his property;

4. Determine whether the rights of Plaintiff and those similarly situated will continue to be irreparably harmed should the Court not exercise its equitable power;

5. Determine whether the evidence that the Government and its attorneys are committing and concealing <u>crimes</u>, offered by Plaintiff and his Co-Class members, guarantees a 100% "certainty of success" on the merits of their cases;

6. Reverse dismissal of the cause, and

7. Grant Plaintiff opportunity to present irrefutable IRS and DoJ internal documentation proving that unknown-named attorneys and IT staff at the highest levels of the IRS direct the criminal falsification of IRS records; that IRS and DoJ conceal and use IRS-falsified records to circumvent the fact the "income tax" exaction was never imposed by Congress on Americans in occupations of common right; that IRS and DoJ attorneys use the scheme to fraudulently compel the helpless to either create their own liability by filing income tax returns or suffer the destruction of their lives and property; and that attorneys employed by the Government "of the People, by the People and for the People" will never stop surreptitiously violating their People's rights until a Court with integrity terminates the scheme.

**In alternative**, and to prepare the case for appeal of the purely legal issues arising from the Court's

Order dismissing the case (and any further order denying Rule 59 relief),[3] the Court is requested

to:

---

[3]  For the information of the Court, when Plaintiff Ellis appealed to the D.C. Circuit the dismissal of *Ellis v. Commissioner* by the Honorable Amy Berman Jackson, (1:14-CV-471), the Circuit (15-5035) denied relief without any written order by a judge, without mentioning the standard of review used to dismiss that appeal, and without written application of the standard used to any issue raised on appeal.  In fact, the Circuit dismissal Order of 20 Nov. 2015 consisted of a single substantive sentence, inferring the Panel applied a clear error standard when it held "Appellant has not shown that the District Court erred by concluding his claims are barred by the Anti-Injunction Act...", despite the fact Ellis raised only purely legal questions on appeal.  His pure legal appellate issues suggested *de novo* review by the Circuit, not a burden placed on Ellis to prove anything.  Those inequities have given rise to satellite litigation in *Ellis v. Langer*, 1:16-CV-729.

Should this Rule 59 Motion be unavailing, Your Plaintiff wants to ensure no similar imprecision mars appeal of this case, which might become one of the most important in American history.  Again, respectfully stated, if the Court has made any determination of controverted facts in this case, or mixed questions of fact and law, Plaintiff requests the Court state in precise terms what those facts were, and how they were

1. Determine and state whether any factual controversy between the parties was resolved by the Court, or whether any mixed question of fact and law was resolved.  If so, which were resolved, and how?

2. State explicitly whether the Court determined that the right to a contested tax amount was before the Court and was decided;

3. If no fact questions or mixed questions of fact and law were resolved by the Court, and if no contested tax amount was before the Court, Plaintiff respectfully requests that any order denying Rule 59 relief state so clearly, e.g., that

   "No fact controversies were resolved by the Court";

   "No mixed questions of fact and law were resolved by the Court"; and

   "No contested tax amount was before the court, or was decided".

**Afterward**

By requesting the "**in alternative**" relief identified above, Plaintiff seeks to ensure the standard of review on appeal is "*de novo*" (not clear error) to review what he perceives to be purely legal (not factual, or mixed fact and law) errors contained in the Court's recent Order of dismissal, should no relief be granted pursuant to this Motion.

Plaintiff and those similarly situated in his Class are under no illusions as to the uphill nature of their battle against entrenched interests leading, defending and even now concealing the underlying IRS/DoJ record falsification scheme and use of its poisonous fruit, in personal violation of the criminal law, 18 USC §4.  Because the issues raised by Plaintiff and the Class are of national significance, they deserve plenary appellate consideration, no matter which way the Court rules on this Motion.  Accordingly, Plaintiff and his putative Co-Class Representatives seek assistance of this Court to ensure the legal issues this Motion is filed to resolve are properly preserved for appellate review, since appeal of the outcome of this Motion can be virtually guaranteed either way this Court rules.

---

resolved.  If not, appeal would be greatly facilitated by a precise statement from the Court that it resolved no factual issues, thus eliminating all possible questions concerning the standard of review.

It is respectfully so moved,

_Robert A. McNeil_
Robert A. McNeil
701 N. Hwy 281 Suite E #193
Marble Falls, Texas 78654

## Plaintiff's Declaration and Certificate of Service

Under penalties of perjury, pursuant to 28 USC §1746, Plaintiff affirms that every factual allegation made in his **"Rule 59(e) Motion to Alter..."** is absolutely true and correct, and that he mailed a copy of this Motion to the Defendants on **May 2, 2016**.


Respectfully submitted,


Robert A. McNeil
701 N. Hwy 281 Suite E #193
Marble Falls, Texas 78654
*Plaintiff, pro se*


Ms. Loretta Lynch
United States Attorney General
Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Mr. Channing D. Phillips
U.S. Attorney for the District of Columbia
Attn: Civil Process Clerk
555 Fourth Street, NW
Washington, D.C. 20530

Mr. Ryan O. McMonagle
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20444

Mr. John Koskinen
Commissioner, IRS
Attn: Office of Procedure and Administration
1111 Constitution Ave. NW, Room 5503
Washington, D.C. 20224

Ms. Caroline D. Ciraolo-Klepper
Acting Assistant Attorney General
Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20444

**In the District Court of the United States**
**For the District of Columbia**

| | |
|---|---|
| Robert A. McNeil,<br>Plaintiff | §<br>§<br>§ |
| V. | §   District Cause No. 1:15-CV-1288<br>§ |
| Commissioner, Internal Revenue<br>& United States Attorney General,<br>Defendants | §<br>§<br>§ |

## BRIEF IN SUPPORT OF
## MOTION TO ALTER/AMEND DISMISSAL
## AND FOR ORAL ARGUMENT

In the Motion this Brief supports, Plaintiff and his putative Co-Class Representatives respectfully request the Court reconsider its dismissal of his case, since the Court's decision was based solely and errantly on the supposed "stripping" by the Anti-Injunction Act of jurisdiction from federal courts in all cases concerning assessment or collection of taxes.  Reliance upon that conventional wisdom is shown herein to be completely misplaced; the Court's equity power still exists and should be exercised.

Accordingly, Plaintiff suggests that after due consideration of the legal authority presented below, i.e., that the Anti-Injunction Act (hereafter "AIA" or "the Act") governs the Court's equitable jurisdiction but does not "strip" it, his case should be reinstated to allow presentation of the irrefutable documentation furnished by IRS and DoJ proving their collusion to violate both the criminal law and the rights of Class members in order to enforce the so-called "income tax".

### Introduction

As shown below, the Court's equitable jurisdiction, although little understood, is alive and well, operating in the teeth of the AIA with particular force in this case because of (1.) the extraordinary

---

facts alleged, (2.) the lack of remedy provided at law for relief from the Government's hitherto concealed program to falsify, conceal and use falsified IRS records, (3.) the ongoing irreparable harm to protected rights Plaintiff and those similarly situated are suffering and will continue suffering should the Court fail to perform its equitable duty, and (4.) the 100% certainty Plaintiff and those similarly situated will prevail on the merits of this case, while "under no circumstances" can the Government justly prevail.

### Brief Organization

To buttress Plaintiff's claim that the Act did not "strip" courts of power to hear all causes related to assessment and collection of taxes, but merely conditioned the availability of equity to extraordinary circumstances such as those he and his Co-Class Representatives allege, Plaintiff will discuss (A.) his Class's extraordinary factual allegations, (B.) the ground upon which the Court dismissed with its dispositive omissions, (C.) the Supreme Court's recent retreat from the overly broad definition of "jurisdiction", (D.) the text, structure and context of the 1867 enactment of the AIA, as well as early interpretations of the Act, and (E.) Supreme Court decisions proving equity still provides relief in extraordinary cases such as the Class presents.

### A. Extraordinary Fact Allegations of Class

It is of overriding and dispositive significance to this case to realize Plaintiff and his putative co-Class Representatives seek to enjoin acts committed by IRS and DoJ which Congress has expressly proscribed as **crimes**.  In other words, the core acts the Class seeks to enjoin should not be carelessly summarized by the Court, as they have been in error, with euphemisms such as "certain enumerated actions", "various activities", "particular actions", "actions taken in the process of assessing and collecting taxes", etc., but should be correctly inferred to be, and recognized as **crimes** committed surreptitiously to defraud victims, defense counsel, judges and juries, while destroying the Rule of Law.

For examples, Plaintiff explicitly alleged and documented that:

- IRS seized his property after systematically and surreptitiously falsifying the Individual Master File (IMF) annual records it maintains concerning him (manipulating a related computer database to override the program parameters of the highly-restrictive IMF software) to reflect the pretended execution by IRS of "SFRs" on certain dates, when no such execution by IRS ever occurred, (falsifying government records is proscribed at 18 USC §1001) ; that

- IRS conceals that initial falsification of its IMF records by subsequently removing from view in each annual IMF module the transaction code whereby the baseless phrase "SFR" is injected into an IMF module, (the act of concealing the initial underlying crime is, itself, proscribed at 18 USC §4 as misprision of felony); that

- unknown-named IRS attorneys direct unwitting IRS employees to further conceal the underlying felonies by creating what IRS attorneys and expert witnesses publically claim to be "SFR packages", but which IRS concedes in its decoded internal documentation to be merely "additions to tax in modules that already have a return", (concealing underlying crime is proscribed at 18 USC§4) ; that

- IRS creates falsified paper "certifications" for use by the fully complicit DoJ in criminal trials to prevent discovery by defendants, their counsel, their judges and juries of the underlying falsified IRS IMF records, and which certifications falsely claim multiple contradictory dates when an "SFR" was supposedly executed, although no substitute income tax return was ever executed, (violations of both 18 USC §1001 and §4).

As shown below, it is reversible error to hold that the <u>crimes</u> by IRS and DoJ, of which complaint is made, are merely "activities" or "actions", but in utter disregard of their criminal nature. That error resulted in an incorrect dismissal, since although "equity will not lie to restrain collection on the sole ground that the tax is illegal", *California v. Latimer*, 305 U.S. 255 (1938), a "suit *could* be maintained where, in addition to illegality, the plaintiff alleged 'special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence'". *Miller v. Standard Nut Margarine Co.*, 284 U.S. 498 (1932).

Clearly, IRS and DoJ commission and concealment of <u>crimes</u> to enforce the so-called "income tax" are "special circumstances", since Congress cannot authorize commission of <u>crimes</u> by any government officer or employee.[1] So, Plaintiff correctly seeks exercise of the latent equitable power of this Court to enjoin those <u>crimes</u>, which, incidentally, irrefragably prove the income tax was not imposed by Congress, and is indeed the quintessential "exaction merely in the guise of a tax" identified by the Supreme Court, subject to equitable injunction.[2]

Restated and summarized: Criminal acts taken to enforce a "tax" prove it was never imposed on Americans, hence it is unarguably an "illegal" tax. And since no remedy at law exists to secure relief from the scheme, that factor, plus the confluence of an "illegal tax", "extraordinary acts", ongoing "irreparable harm" to the rights of Class members, and the 100% certainty the Class will prevail on the merits, justifies exercise by this Court of its rarely used power to provide pure equitable relief. In light of those factors, the AIA is irrelevant.

---

[1] "The acts of federal agents ... are limited and controlled by the Constitution of the United States", which "has not empowered Congress to authorize anyone to violate criminal laws". *Olmstead v. United States*, 277 U.S. 438, 482.

[2] As shown in Sections B. and E., *infra*, in *Enochs v. Williams Packing Co.*, 370 U.S. 1, the Supreme Court mentions the extant equitable exception to the AIA. *Enochs* is irrefutable, binding precedent showing the Act does not "strip" courts of jurisdiction in ALL cases involving assessment and collection activities of IRS and DoJ.

### B. Court Dismissal

The Court dismissed Plaintiff's case after ruling that, by enacting the AIA, Congress stripped federal courts of jurisdiction to hear ALL cases involving ANY acts by the government related to the assessment or collection of taxes.[3]  But, in addition to the issues surrounding the Court's misapprehension concerning its equitable jurisdiction, as explained below, multiple glaring, dispositive lacunas in the Order of dismissal support this reconsideration request.

**First**, as noted above, the Court inexplicably failed in its dismissal Order to mention that Plaintiff documented and seeks to enjoin commission of **crimes** by the Government.  That is, the Court repeatedly claims in its Order of dismissal to have reviewed "facts" or "key facts" "necessary for the Court's resolution of the fundamental issue presented", when in truth the Court instead simply presented at length the statutory scheme of enforcement and relief Plaintiff requested, but failed to make the mandatory inference that the explicit actual facts Plaintiff and Co-Class Representatives allege demonstrate that IRS and DoJ are committing crimes in the enforcement of the "income tax".  Incredibly, the word "**crime**" doesn't appear in the Order at all, despite the Court's correct citation of *Settles v. U.S. Parole Comm'n*, (429 F.3d 1098 (D.C. Cir. 2005), in which the Circuit held that "pro se complaints are to be construed ... to afford all possible inferences favorable to the pleader on allegations of fact".

Plaintiff respectfully contends that the inconceivable failure of the Court to incorporate into its dismissal Order the obvious determination as to how Government commission of crimes impacts its equity jurisdiction, leads to a well-founded conclusion the Court at least on some level is aware those inarguable crimes remove his case from the "garden variety" of suits seeking to enjoin merely unauthorized, a.k.a. "illegal", assessment or collection activities.

---

[3] "[T]he Court concludes the Anti-Injunction Act strips this Court of jurisdiction over all of the claims in this case.", Mem. Op., Pg. 8, last sentence.

Plaintiff is under no illusions, and wishes the Court to be fully apprised of the Class' intent. With all respect due this Honorable Court, should it refuse to amend that critical lacuna in response to this Rule 59 Motion, this purely legal question could be raised on appeal, subject to *de novo* review:

> Did the Court err by refusing to infer Plaintiff complains of acts by the Defendants which Congress has proscribed as <u>crimes</u>, and by refusing to consider the impact of those <u>crimes</u> on the Court's equity jurisdiction?

A **second** dispositive, critical omission in the Order of dismissal merits reconsideration. The Court failed to determine, pursuant to the <u>equitable exception</u> provided in *Enochs v. Williams Packing*, 370 U.S.1, whether a dispute over any putative tax due exists in this case, which is the required trigger for application of the AIA:

> "The manifest purpose of 7421(a) is to permit the United States to assess and collect taxes *alleged to be due* without judicial intervention, and to require that the legal *right to the disputed sums* be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. Nevertheless, if it is clear that under no circumstances could the Government ultimately prevail, **the central purpose of the Act is inapplicable**, and, under the *Nut Margarine* case, the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such situation the exaction is merely in 'the guise of a tax'". [Emphasis added]

Since no one has "alleged to be due" any amount in this case, since no "disputed sums" exist which might authorize either a tax court suit or a suit for refund in a district court, since no determination regarding any disputed sum has even been sought, the "central purpose of the Act is inapplicable" to this cause (or those raised by others similarly situated).[4]

Again, Plaintiff is under no illusions as to the uphill nature of the battle he and his Class are waging. With all the respect due this Honorable Court, should it refuse to address that lacuna in response

---

[4] Even if a sum due was imagined to exist in the Government's twisted imagination, after Plaintiff's revelation that IRS fabricates evidence to create the appearance of all pretended "deficiencies" he supposedly owes, it is clear that "under no circumstances could the Government ultimately prevail" in any case involving Plaintiff or others similarly situated.

to this Rule 59 Motion, a purely legal question on appeal, subject to *de novo* review, could be raised, similar to this:

Did the Court err by refusing to determine, pursuant to binding Supreme Court precedent, whether any disputed tax amount triggered application of the AIA to Plaintiff's suit?

A **third** dispositive lacuna in the Order is noted. "Courts must look at the primary purpose of a lawsuit in order to decide whether the suit is one brought to restrain the assessment and collection of taxes", *Bob Jones Univ. v. Simon*, 416, U.S. 725 at 738 (1974). Hence, it appears the Court is required to determine if the action is designed to "alter a [plaintiffs'] future tax liabilities", and therefore might be categorized as a suit "seeking to restrain the assessment or collection of taxes'" within the ambit of AIA prohibitions. See *Z Street, Inc. v. Koskinen*, 1:12-CV-401, Mem. Op., Doc. 49, Pg. 18, filed 5/27/14, citing *Cohen v. United States*, 578 F.3d 1 (D.C. Cir. 2009). That determination was not made by the Court, although Circuit precedent requires it. Plaintiff contends that had it been made as required, the Court would have learned from the decoded, hitherto concealed records of the Defendant Commissioner that so-called "non-filers" have "income tax" liability ONLY after IRS commits and conceals crimes (falsifies records) to first create the appearance of deficiencies. In other words, the Court would have been faced with the inescapable conclusion Plaintiff and those situated similarly owe nothing to the Treasury absent IRS crimes, and thus, are not seeking to "alter their future liability to the "income tax", since they never had any.

With all respect due this Honorable Court, should it fail to amend its dismissal order regarding this dispositive lacuna, a purely legal question similar to this could be raised on appeal:

Did the Court err by refusing to determine, pursuant to binding Circuit precedent, whether Plaintiff was seeking to change his future tax liability?

A **fourth** important, although not dispositive, lacuna in the Order deserves reconsideration. The Court failed to distinguish between the phrases "substitute <u>income tax</u> returns" and so-called "SFRs", IRS' acronym for "Substitute For Returns". When Government attorneys involved in income tax matters utter the phrase "SFR", they *infer,* without stating, that it includes "substitute <u>income tax</u> returns". That is, the duplicitous, drumming use by the Defendants of the misleading phrase "SFR" is meant to conceal IRS' *multiple public concessions* that its delegated authority to execute "SFRs" extends only to matters related to excise, employment and partnership cases, and that no cited Treasury Delegation Order authorizes execution of substitute <u>income tax</u> returns. Government use of the concealing phrase "SFR" is thus intended to shield IRS' utter lack of delegated authority to perform substitute <u>income tax</u> returns, and thus also concealing the underlying crimes committed to circumvent that lack.

Plaintiff respectfully requests the Court recognize that no place in its dismissal Order did it mention "<u>substitute *income tax* returns</u>", but always and repeatedly adopted the obscurant phrases "SFR", "substitute for return" and "substitute return" preferred by Government lawyers, to conceal underlying IRS and DoJ <u>crimes,</u> in personal violation of 18 USC §4.

He, thus, very respectfully requests the Court notice the difference between those phrases, refrain from using the misleading language "SFR" or any variant thereof, and use instead, in all appropriate instances, the fully descriptive phrase "substitute <u>income tax</u> return(s)", (which IRS never executes, but conjures illusions it does).[5]

---

[5] Plaintiff and his putative Co-Class Representatives will be careful to make the same distinction going forward, to eliminate all possible misunderstanding engendered by loose use of the disingenuous phrase "SFR", or its similarly deceptive relatives.

With full, proper respect due the Honor of this Court, if it should fail to address and amend this error in response to the "**Motion to Alter/Amend Dismissal….**", a purely legal question similar to the following may be raised on appeal:

> Did the Court err by refusing to determine whether IRS has authority to execute substitute <u>income tax</u> returns, and by concealing IRS' publicly conceded lack of such authority by the Court's adoption of deceptive language inferring such power exists?

Numerous other dispositive words were left unmentioned by the court, e.g. "equity", "equitable exceptions", "remedy at law", "irreparable injury", etc. But since those arise in the context of the jurisdiction "stripping" argument posited by the Court, they are discussed below.

### C. Supreme Court retreats from overly broad definition of "jurisdiction"[6]

In *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, (1998), the Supreme Court noted that the term "jurisdiction" had become a "word of many, too many, meanings". Because the Court had been over-inclusive in its use of the term, referring to non-jurisdictional provisions as jurisdictional, it has begun re-evaluating whether jurisdictional holdings were really jurisdictional at all.

In re-examining its past precedent, the Court has sought to distinguish between "claims-processing" rules and truly jurisdictional provisions. Jurisdictional statutes speak to the very power of the federal court to hear a case. In contrast, claims-processing rules simply "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times". *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, (2011). To

---

[6] Plaintiff and his Co-Class Representatives are HUGELY indebted to the excellent research and scholarship of Erin Morrow Hawley in her Article entitled "<u>The Equitable Anti-Injunction Act</u>", Notre Dame Law Review, 2014, Volume 90:1, pg. 81. That research is irrefutable: the Act merely governs the equitable jurisdiction of the federal courts, but does not terminate it. Her work is freely quoted herein, sometimes verbatim, in Sections C., D. and E., but no recognition he might give would provide sufficient thanks for her genius.

distinguish between claims-processing rules and jurisdictional limitations, the Supreme Court now

examines the text, structure and context of a so-called jurisdictional statute, a three-fold analysis

this Court is now requested to perform, regarding the AIA.

### D. The text, structure and context of the AIA[7]

### - Text

Although the text of the AIA is an unqualified prohibition of suit except for certain provided

circumstances, the Supreme Court has long recognized that a provision may be mandatory and

binding on litigants, yet stop short of requiring jurisdictional treatment. To begin, the text of the

AIA does not mention jurisdiction, which is in keeping with the claims-channeling nature of the

Act. The AIA establishes the method and timing of judicial review; it requires *litigants* to pay a

tax before disputing it in a refund action. In other words, the Act focuses on conditions which

must be fulfilled by typical litigants raising garden variety concerns in order to have their day in

court, not the adjudicatory authority of the federal courts. In sum, the text of the AIA does not

clearly indicate jurisdictional status, since it is addressed to private litigants, does not mention

jurisdiction, and is part of an exhaustion regime that eventually provides for federal court review.

With all respect due this Honorable Court, should it refuse to perform the required analysis of the

text of the AIA suggested by the Supreme Court's recent precedent, a purely legal question in that

regard could be raised on appeal:

> Did the Court err by refusing to consider the text of the AIA to determine whether
> it operates as a jurisdictional bar, rather than as a claims-channeling rule?

---

[7] Excerpts from, and in many instances verbatim quotations are taken in Section D. of this Brief, from Ms. Erin Hawley's excellent, exhaustive research presented in "The Equitable Anti-Injunction Act", Notre Dame Law Review, 2014, Volume 90:1, pg. 81, and are gratefully acknowledged by Plaintiff and his Co-Class Representatives.

- **Structure & Waiver of AIA defense**

The structure of the AIA similarly indicates the provision is a claims-processing rule directing litigants to a refund action, rather than a blanket jurisdictional bar on federal court review. The Act is not located in a jurisdiction-granting provision; it resides in a miscellaneous tax code section governing procedure and administration. The AIA is also littered with no less than fourteen statutory exceptions, the existence of which suggest Congress did not intend to limit the power of federal courts to hear **all** pre-enforcement challenges, but only to require taxpayers to follow the proper procedures before securing federal court review.

Further, the government itself has, at least three times, sought pre-enforcement review, explicitly waiving that "defense" under the AIA. *Helvering v. Davis*, 301 U.S. 619 (1937) (See Brief for Petitioners at 22), *Sunshine Anthracite Coal Co. V. Adkins*, 310 U.S. 3810 (1940) (Brief for the Appellee at 9), and *Pollack v. Farmers' Loan & Trust Co*, 157 U.S. 429 (1895). If the AIA had actually "stripped" courts of jurisdiction, it would in EVERY instance have precluded pre-enforcement review of cases. Yet, the Government disagrees with such stance.

With all respect due this Honorable Court, should it fail to address the <u>structure</u> of the AIA as impacting its equity jurisdiction, and the repeated waiver by the Government of the AIA defense, a purely legal question similar to this could be raised on appeal:

> Did the Court err by refusing to address the <u>structure</u> of the AIA, and the repeated waiver by the Government of the AIA defense, as impacting the Court's equity jurisdiction?

- **Context**

The context inquiry demonstrates most clearly that the AIA is not jurisdictional. Amazingly, the Supreme Court discovered that the AIA "apparently has no recorded legislative history". *Bob Jones Univ. V. Simon*, 416 U.S. at 736. But, at least we know that the AIA was proposed by

Senator Fessenden, Chairman of the Senate Finance Committee, as an amendment which originally precluded "a *suit in equity or otherwise* for the purpose of restraining the assessment or collection of tax maintained in any court". (Cong. Globe, 39th Cong. 2d Sess. 1933 (1867), emphasis added). Although we have no record of when or why the "in equity or otherwise" language was dropped from the Fessenden amendment, which became the Anti-Injunction Act, the bill reported out of conference no longer barring suits in equity.  See H.R. 1161, 39th Cong. (1867) (enacted).  (At that time the income tax system, established in 1862 during the depths of the Civil War, provided for equitable review of taxes in limited circumstances.)

If Congress had intended a new jurisdiction-stripping position at the AIA's 1867 enactment, such a drastic sea change should have precipitated House or Senate debates.  But not a word of debate is recorded in either journal on the subject.  And one would also expect leading tax experts of the day to have devoted tremendous effort to explain the effects of the new amendment.  But the leading authorities of the day don't even mention the AIA.[8]  No early interpretation of the Act exists, let alone any argument discussing the alleged "stripping" of the firmly entrenched equity jurisdiction from courts.

With all respect due the honor of this Court, should it refuse to determine from the historical context of the AIA's passage the impact that context may have upon the Court's equity jurisdiction, a purely legal question similar to this could be raised for *de novo* review on appeal:

> Did the Court err by refusing to determine from the legislative history and early interpretations of the AIA whether the Act purported to strip the Court from all exercise of its equity jurisdiction?

---

[8] Such as <u>A Treatise on the Law of Taxation</u>, Thomas M. Cooley, (Chicago, Callahan & co., 2d ed. 1881).

### E. Supreme Court Precedent: equity still exists ... in extraordinary cases[9]

Most importantly, the Supreme Court's case law is inconsistent with a jurisdictional reading of the AIA. **First**, the Court's early interpretation of the AIA as an equitable statue, culminated in its decision in *Miller v. Standard Nut Margarine Co.*, which cannot be reconciled with a traditional jurisdictional reading.

In *Miller*, the Court held the AIA did not apply because of "special and extraordinary facts and circumstances". *Id.* at 511. The AIA was merely "declaratory of the principle" that equity usually, but not always, disallows tax injunction suits. *Id.* at 509. As a result, "extraordinary and exceptional circumstances" – though not mentioned in the text of the AIA, "rendered its provisions inapplicable". *Id.* at 510. In sum, the Court explained that while earlier jurisprudence gave effect to the AIA in a number of cases, "[i]t ha[d] never held the rule to be absolute", as would be true of a jurisdictional statue. *Id.* at 510-11.

**Second**, judicially created exceptions to the AIA are well-established. The Supreme Court has long taken the view that the Act does not always apply to cases seemingly within its terms, consistently holding that it does not apply in certain "extraordinary circumstances", and is also inapplicable when the taxpayer has no alternative remedy at law. Such equitable exceptions are irreconcilable with the view the AIA is a jurisdictional statute.

For an excellent example, in *Enochs v. Williams Packing*, the Court wrote: ""[I]f it is clear that under no circumstances could the government ultimately prevail, the attempted collection may be enjoined if equity jurisdiction otherwise exists". The Court then examined the merits of the taxpayer's claim, which is decidedly not a jurisdictional sort of inquiry. And, in the Supreme

---

[9] Again, excerpts and in many instances verbatim quotations in Section E. of this Brief, are taken from Ms. Erin Hawley's excellent exhaustive research in "The Equitable Anti-Injunction Act", Notre Dame Law Review, 2014, Volume 90:1, pg. 81. Her ground-breaking work is gratefully acknowledged by the Class.

Court's most recent pronouncement on the matter, it described a two-factor exception to the "literal terms of §7421(a): first irreparable injury and second, certainty of success on the merits". See *Bob Jones*, at 745. Because the merits of Bob Jones University's claims were "debatable", the equitable exception to the AIA was held inapposite.  But such is not the case here.

As an important underlying consideration, the loss of a civil right usually means that damages at law are inadequate, because those rights are irreplaceable.  No matter the sum claimed in damages, a victim cannot use an award to replace the loss of his/her civil rights.  In application of the irreparable injury equitable exception to this case, Plaintiff cannot buy back his right to due process of law, which the government is *continually destroying* by concealing encoded falsified records concerning him.  Nor can he buy back his right to be free from another unreasonable seizure of his property perpetrated by IRS, based on fabricated records concerning him.  Since the Government at no time has stated its intent to stop falsifying IRS records and using them to damage Plaintiff, the damage to his rights is ONGOING and will not cease until a Court exercising equitable jurisdiction enjoins the Government's "income tax" exaction.

And, as far as the certainty of Plaintiff's success on the merits of this case, IRS and DoJ-furnished records irrefragably prove to a candid world that the Executive branch is engaged in a surreptitious, criminal collusion to violate and destroy the rights of those who don't voluntarily create their own "income tax" liability.  With that evidence, the only way the Government can prevail in any case involving Plaintiff, criminal or civil, is by perpetrating fraud on the Court, (which is no stretch, considering the fraud IRS and DoJ execute on victims daily).

Again, with all due respect to the integrity of this Court, should it fail to consider the impact of the judicially created exceptions to literal application of the AIA in his case, a pure legal question similar to this could be raised on appeal:

Did the Court refuse to consider ALL judicially created exceptions supporting the Court's exercise of its equitable power to enjoin extraordinary crimes committed by the Government, which irreparably damaged him, are continually damaging his right to due process of law, and may once again at any moment violate his right to be free from unreasonable seizure of his property, in light of the facts no remedy at law exists and the Government could NEVER prevail in any case involving Plaintiff?

## Summary

The 1867 Anti-Injunction Act governs the application of the Court's equity jurisdiction, but did not strip federal courts of equitable power. The implications are staggering.

This Court has, and always will have, jurisdiction to enjoin commission of crimes by government agents, the illusory "bar" of the AIA notwithstanding. Although this once-noble Nation has been degraded to "an administrative state gone deeply awry",[10] a window still remains to reclaim its former stature.

If the federal bar fears the People are not sufficiently enlightened to exercise a wholesome discretion in the management of our national affairs, *the remedy is not to take it from them, but to fully inform their discretion by education.* (Letter of Thomas Jefferson to William C. Jarvis, 1820.) Tell the People of any seemingly insuperable problem feared, should the "income tax" exaction be terminated. Together, we can weather any vicissitude.

---

[10] "Once upon a time, public law concerned itself with notions of what was morally right, not just what was minimally required. But as counsel for the Service has repeatedly reminded us throughout this litigation, those days are part of the dim (and not to be recaptured) past... Following the Service's reason to its logical conclusion, the more larcenously it behaves, the lighter its obligations to plundered taxpayers become. No doubt this is a sign of the times, but it seems more an artifact of an administrative state gone deeply awry." *In Re: Long-Distance Telephone Service Federal Excise Tax Refund Litigation, Gurola v. United States*, 12-5380, decided May 9, 2014, (Brown, J., dissenting)

Plaintiff, on behalf of his Class, respectfully requests the Court reconsider its refusal to exercise its latent equitable power.  Together, we can end the nightmare of the "income tax" exaction and set our children free from inherited slavery that binds our generation.

This question alone remains:

Will the Honorable Colleen Kollar-Kotelly join with the Class to terminate the commission of **crimes** by the Defendants, while surreptitiously destroying The Rule of Law?

It is Respectfully Requested.


*Robt A. McNil*

Robert A. McNeil
701 N. Hwy 281 Suite E #193
Marble Falls, Texas 78654

## Plaintiff's Declaration and Certificate of Service

Under penalties of perjury, pursuant to 28 USC §1746, Plaintiff affirms that every factual allegation made in his **"Brief in Support of Rule 59(e) Motion to Alter/Amend Dismissal...."** is absolutely true and correct, and that he mailed a copy of this Brief to the Defendants on **May 2, 2016,** via U.S. Mail.

Respectfully submitted,

*Robt A. M⁵Nl*

Robert A. McNeil
701 N. Hwy 281 Suite E #193
Marble Falls, Texas 78654
*Plaintiff, pro se*

Ms. Loretta Lynch
United States Attorney General
Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Mr. Channing D. Phillips
U.S. Attorney for the District of Columbia
Attn: Civil Process Clerk
555 Fourth Street, NW
Washington, D.C. 20530

Mr. Ryan O. McMonagle
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20444

Mr. John Koskinen
Commissioner, IRS
Attn: Office of Procedure and Administration
1111 Constitution Ave. NW, Room 5503
Washington, D.C. 20224

Ms. Caroline D. Ciraolo-Klepper
Acting Assistant Attorney General
Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20444

This envelope is made from post-consumer waste. Please recycle - again.

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SE

# PRIORITY
★ MAIL ★

▦ DATE OF DELIVERY SPECIFIED *

📶 USPS TRACKING™ INCLUDED *

$ INSURANCE INCLUDED *

🏠 PICKUP AVAILABLE

\* Domestic only

WHEN USED INTERNATIONALLY
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

Expected Delivery Day: 05/04/2016

USPS TRACKING NUMBER

9505 5148 3468 6123 0460 84

FROM:

Robert A. McNeil
701 N. Hwy 281 Suite E #193
Marble Falls, Texas 78654

Ms. Angela D. Caesar
U.S. District Court for the District of Columbia
Office of the Clerk of the Court
333 Constitution Ave., NW
Washington, D.C. 20001

P S 0 0 0 0 1 0 0 0 0 0 1 4

EP14F July 2013
OD: 12.5 x 9.5

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED S
POSTAL SE





1006

20001

U.S. POSTAGE
PAID
MARBLE FALLS, TX
78654
MAY 02 '16
AMOUNT
$6.45
R2304N118577-03



